# ORIGINAL

## IN THE SUPERIOR COURT OF FORSYTH COUNTY
## STATE OF GEORGIA

|  |  |  |
|---|---|---|
| SAMUEL S. OLENS, in his official capacity as the Attorney General of the State of Georgia, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | **CIVIL ACTION FILE NO. 12CV-1205** |
| H. FORD GRAVITT, individually and in his official capacity as Mayor of the City of Cumming, Georgia, and the CITY OF CUMMING, GEORGIA, | ) ) ) ) ) | |
| Defendants. | ) ) ) | |

FORSYTH COUNTY GEORGIA
FILED IN THIS OFFICE

JUL 1 9 2012

*CLERK SUPERIOR COURT*

## ANSWER and COUNTERCLAIM FOR DECLARATORY JUDGMENT

**COME NOW** H. Ford Gravitt, individually and in his official capacity as Mayor of the City of Cumming, Georgia, and the City of Cumming, Georgia, Defendants in the above-styled action (hereinafter "Defendants"), and file this *Answer and Counterclaim for Declaratory Judgment* to Plaintiff's *Complaint as Amended,* by showing the Court as follows:

## ANSWER

## FIRST DEFENSE

Plaintiff's Complaint is barred, in whole or in part, by qualified or official immunity.

## SECOND DEFENSE

Plaintiff's *Compliant* is barred, in whole or in part, by sovereign immunity.

## THIRD DEFENSE

Plaintiff's *Complaint* fails to state a claim upon which relief can be granted.

## FOURTH DEFENSE

12CV – 1205
ANSCC
Answer and Counterclaim
339174

Samuel S. Owens v. H. Ford Gravitt, et al.
Civil Action File No. 12CV-1205
*Answer & Counterclaim for Declaratory Judgment*

Page 1 of 18

Plaintiff's *Compliant* is barred by the unconstitutionality of the Georgia Open Meetings Act as more fully set forth in Defendants' *Counterclaim for Declaratory Judgment.*

## FIFTH DEFENSE

Without waiving any additional defenses, Defendants respond to each of the separately numbered paragraphs of the Plaintiff's *Complaint as amended* as follows:

1.

Defendants are without sufficient knowledge to admit or deny the allegations contained in Paragraph 1 of Plaintiff's *Complaint*, and as such the same are denied.

2.

Defendants admit the allegations that Mayor H. Ford Gravitt is the duly elected Mayor of the City of Cumming, Georgia, that he presides over the meetings of the City Council and that he may be served. Defendants are without sufficient knowledge to admit or deny the remaining allegations contained in Paragraph 2 of Plaintiff's *Complaint*, and as such the same are denied.

3.

Defendants admit the allegations contained in Paragraph 3 of Plaintiff's *Complaint.*

4.

Defendants admit that venue is proper. Defendants deny as pled the remaining allegations contained in Paragraph 4 of Plaintiff's *Complaint.*

## Georgia's Open Meetings Act

5.

Defendants admit the correct statement of law as codified, but to the extent it alleges liability on part of Defendants in Paragraph 5 of Plaintiff's *Complaint*, the same is denied.

Samuel S. Owens v. H. Ford Gravitt, et al.
Civil Action File No. 12CV-1205
*Answer & Counterclaim for Declaratory Judgment*

Page **2** of **18**

6.

Defendants admit the correct statement of law as codified, but to the extent it alleges liability on part of Defendants in Paragraph 6 of Plaintiff's *Complaint*, the same is denied.

7.

Defendants admit the cited provisions of the Open Meetings Act were in effect on April 17, 2012 and deny as pled the remaining allegations contained in Paragraph 7 of Plaintiff's *Complaint*.

## The April 17 Meeting of City of Cumming City Council

8.

Defendants deny as pled the allegations contained in Paragraph 8 of Plaintiff's *Complaint*.

9.

Defendants deny as pled the allegations contained in Paragraph 9 of Plaintiff's *Complaint*.

10.

Defendants admit the correctness of the statement alleged on April 17 and deny any remaining allegations contained in Paragraph 10 of Plaintiff's *Complaint*.

11.

Defendants admit the allegations contained in Paragraph 11 of Plaintiff's *Complaint*.

12.

Defendants admit that Tisdale protested and asserted she had the right to video. Defendants deny any remaining allegations contained in Paragraph 12 of Plaintiff's *Complaint*.

13.

Defendants deny as pled the allegations contained in Paragraph 13 of Plaintiff's *Complaint*.

14.

Defendants deny the allegations contained in Paragraph 14 of Plaintiff's *Complaint*.

15.

Defendants deny as pled the allegations contained in Paragraph 15 of Plaintiff's *Complaint*.

16.

Defendants admit that recordings exist, but deny any remaining allegations contained in Paragraph 16 of Plaintiff's *Complaint*.

17.

Defendants admit that Tisdale returned to the meeting after her camera was removed, but deny the remaining allegations contained in Paragraph 17 of Plaintiff's *Complaint*.

## COUNT I:
## VIOLATION OF GEORGIA'S OPEN MEETINGS ACT IN REFUSING TO PERMIT VIDEOTAPING OF MEETING

18.

Defendants re-allege and incorporate by reference their responses to the allegations contained in the prior paragraphs of Plaintiff's *Complaint* and deny any remaining allegations contained in Count 1, Paragraph 18 of Plaintiff's *Complaint*.

19.

Defendants deny the allegations contained in Paragraph 19 of Plaintiff's *Complaint*.

Samuel S. Owens v. H. Ford Gravitt, et al.
Civil Action File No. 12CV-1205
*Answer & Counterclaim for Declaratory Judgment*

Page 4 of 18

20.

Defendants deny the allegations contained in Paragraph 20 of Plaintiff's *Complaint*.

21.

Paragraph 21 of Plaintiff's *Complaint* is a statement of law without factual allegations; to the extent any factual allegations exist or liability is alleged, the same are denied.

22.

A portion of Paragraph 22 of Plaintiff's *Complaint* is a statement of law to which no response is required.  Defendants deny the remaining allegations of Paragraph 22 of Plaintiff's *Complaint*.

23.

Defendants deny the allegations contained in Paragraph 23 of Plaintiff's *Complaint*.

## COUNT II:
## VIOLATION OF GEORGIA'S OPEN MEETINGS ACT
## FOR THE FORCIBLE REMOVAL OF CITIZEN TISDALE

24.

Defendants re-allege and incorporate by reference their responses to the allegations contained in the prior paragraphs of Plaintiff's *Complaint* and deny any remaining allegations contained in Count 2, Paragraph 24 of Plaintiff's *Complaint*.

25.

Defendants deny the allegations contained in Paragraph 25 of Plaintiff's *Complaint*.

26.

Defendants deny the allegations contained in Paragraph 26 of Plaintiff's *Complaint*.

## COUNT III
## CLAIM FOR ATTORNEY'S FEES

Samuel S. Owens v. H. Ford Gravitt, et al.
Civil Action File No. 12CV-1205
Answer & Counterclaim for Declaratory Judgment

Page 5 of 18

27.

Defendants re-allege and incorporate by reference their responses to the allegations contained in the prior paragraphs of Plaintiff's *Complaint* and deny any remaining allegations contained in Count 3, Paragraph 27 of Plaintiff's *Complaint*.

28.

Paragraph 28 of Plaintiff's *Complaint* is a statement of law to which no response is required; to the extent it alleges liability on part of Defendants, the same is denied.

29.

Defendants deny the allegations contained in Paragraph 29 of Plaintiff's *Complaint*.

30.

Defendants deny the prayer as well as any remaining allegations contained in Plaintiff's *Complaint* not previously responded to herein, and further deny that Plaintiff is entitled to any relief requested whatsoever.

**WHEREFORE,** having fully answered and otherwise responded to Plaintiff's *Complaint*, Defendants pray that Plaintiff's *Complaint* be dismissed with costs cast against Plaintiff.

## COUNTERCLAIM FOR DECLARATORY JUDGMENT

**COME NOW** H. Ford Gravitt, individually and in his official capacity as Mayor of the City of Cumming, Georgia, and the City of Cumming, Georgia, Defendants in the above-styled action, (hereinafter "Defendants") and without waiving any of the foregoing defenses, but expressly incorporating the same, brings this *Counterclaim* against Plaintiff, showing this Court as follows:

Samuel S. Owens v. H. Ford Gravitt, et al.
Civil Action File No. 12CV-1205
*Answer & Counterclaim for Declaratory Judgment*

Page **6** of **18**

1.

The City of Cumming, Georgia ("City") is a Georgia Municipal Corporation with the capacity to sue and be sued in the Superior Courts of this State.

2.

H. Ford Gravitt is the duly elected Mayor of the City of Cumming Georgia ("Mayor Gravitt").

3.

Samuel S. Olens is the Attorney General and Chief Legal Officer of the State of Georgia, and is subject to the jurisdiction and venue of this Court by virtue of having brought this action in this tribunal against the City and Mayor Gravitt.

4.

In 2012, the Georgia General Assembly passed legislation known as House Bill 397, which had as its primary purpose the amendment of Title 50 of the Official Code of Georgia Annotated "regarding open meetings and open records." H.B. 397, 2011-2012 Regular Session, Georgia, Lines 2-3. A complete and accurate copy of House Bill 397 as the same was enacted by the Georgia General Assembly and signed by Governor Nathan Deal on April 17, 2012 is attached hereto as Exhibit "A".

5.

Among the revisions contained in House Bill 397 was a change to the enforcement provisions of the law, which under the revised law provide in pertinent part:

> a civil penalty may be imposed by the court in any civil action brought pursuant
> to this chapter against any person who negligently violates the terms of this
> chapter in an amount not to exceed $1,000.00 for the first violation.  A civil

Samuel S. Owens v. H. Ford Gravitt, et al.
Civil Action File No. 12CV-1205
Answer & Counterclaim for Declaratory Judgment

Page 7 of 18

penalty . . . not to exceed $2,500.00 per violation may be imposed for each additional violation that the violator commits within a 12 month period from the date that the first penalty or fine was imposed.

(O.C.G.A. § 50-14-6; 50-18-74(a)).

6.

The enforcement provisions of House Bill 397 provide for the imposition of a civil penalty through a civil action regardless of whether the action of the "person" against whom enforcement is sought was a ministerial or official function.

7.

House Bill 397 additionally provides for the imposition of "attorney's fees and other litigation costs" in conjunction with an enforcement action regardless of whether the enforcement action is brought with respect to a ministerial or official function. H.B. 397, 2011-2012 Regular Session, Georgia, Lines 315-319.

8.

All of the enforcement provisions of House Bill 397 are silent with respect to the issue of sovereign immunity.

9.

Article I, Section 2, Paragraph IX of the Constitution of the State of Georgia provides for the doctrine of sovereign immunity of, *inter alia*, the state, its agencies, subdivisions, and officials.

10.

Both the City of Cumming and Mayor Gravitt fall within the penumbra of sovereign immunity provided for by the Georgia Constitution.

Samuel S. Owens v. H. Ford Gravitt, et al.
Civil Action File No. 12CV-1205
*Answer & Counterclaim for Declaratory Judgment*

Page **8** of **18**

11.

With respect to the sovereign immunity of the City of Cumming, the Georgia Constitution provides, in pertinent part: "[t]he sovereign immunity of the state and its departments and agencies can only be waived by an Act of the General Assembly *which specifically provides that sovereign immunity is thereby waived and the extent of such waiver.*" Ga. Const. Art. I, § 2, ¶ IX (emphasis added).

12.

With respect to the official immunity of Mayor Gravitt, the Georgia Constitution provides, in pertinent part:

all officers and employees of the state or its departments and agencies may be subject to suit and may be liable *for injuries and damages* caused by the *negligent performance of, or negligent failure to perform, their ministerial functions* and may be liable *for injuries and damages* if they act with *actual malice or with actual intent to cause injury in the performance of their official functions.* Except as provided in this subparagraph, officers and employees of the state or its departments and agencies *shall not be subject to suit or liability, and no judgment shall be entered against them,* for the performance or nonperformance of their official functions. *The provisions of this subparagraph shall not be waived.*

Ga. Const. art. I, § 2, ¶ IX (emphasis added)

13.

In presiding over a meeting of the governing authority of the City of Cumming, Mayor Gravitt engages in an official function.

Samuel S. Owens v. H. Ford Gravitt, et al.
Civil Action File No. 12CV-1205
*Answer & Counterclaim for Declaratory Judgment*

Page **9** of **18**

14.

In determining whether or not the City has complied with General Statutes, Mayor Gravitt engages in an official function.

15.

In determining the meaning of legislation – and especially newly revised legislation – Mayor Gravitt engages in an official function.

16.

The legal proceeding purportedly authorized by House Bill 397 and brought by the Attorney General provides for the imposition of a "civil penalty" as well as "attorneys fees and other litigation costs;" it does not provide for the redress of injuries or damages.

17.

House Bill 397 lacks a severability clause.

18.

House Bill 397's civil penalty provisions are a key provision of the Bill.

19.

House Bill 397's attorney's fees and other litigation costs are a key provision of the Bill.

20.

The City and Mayor Gravitt have been sued by the Attorney General in a civil action under the newly enacted House Bill 397 despite their Sovereign and Official Immunities. The parties are uncertain and insecure with respect to their rights and obligations in this matter.

21.

As the Attorney General has filed a lawsuit to impose a "civil penalty", the City and Mayor show that there is an actual and justiciable controversy between them and the Attorney

General.

22.

In cases of actual controversy, this Court has the power, upon petition or other appropriate pleading, to declare the rights and other legal relations of these parties. O.C.G.A. § 9-4-2.

23.

The City and Mayor show that the controversy necessitates a determination by the Court as to the Constitutionality of House Bill 397.

## COUNT I
## FACIAL UNCONSTITUTIONALITY BY VIRTUE OF SOVEREIGN IMMUNITY AS TO THE CITY OF CUMMING

24.

The City and Mayor Gravitt incorporate the previous paragraphs of this *Counterclaim* as if expressly set forth herein.

25.

For the General Assembly to waive the sovereign immunity of the City of Cumming, it must do so expressly, setting forth the extent to which the immunity is waived.   *See e.g.* O.C.G.A. § 33-24-51 (expressly providing for the waiver of sovereign immunity and the extent of the waiver); O.C.G.A. § 50-21-23 (expressly providing for the waiver of sovereign immunity and the extent of the waiver).

26.

House Bill 397 is completely silent with respect to the waiver of sovereign immunity.

Samuel S. Owens v. H. Ford Gravitt, et al.
Civil Action File No. 12CV-1205
Answer & Counterclaim for Declaratory Judgment

Page 11 of 18

27.

Legislative acts in violation of the Georgia Constitution or the Constitution of the United States are void, and the judiciary shall so declare them. Ga. Const. Article I, § 2, ¶ 5.

28.

The City and Mayor Gravitt show this Court that House Bill 397 attempts to impose a civil fine and liability for attorneys fees and other litigation costs against the City in violation of the Constitution of the State of Georgia, Article I, § 2, ¶ IX, and it is therefore void.

29.

This Court should enter a declaratory judgment that House Bill 397 is unconstitutional.

## COUNT II
## FACIAL UNCONSTITUTIONALITY UNDER SOVEREIGN IMMUNITY AS TO MAYOR GRAVITT FOR LACK OF INJURY OR DAMAGE

30.

The City and Mayor Gravitt incorporate the previous paragraphs of this *Counterclaim* as if expressly set forth herein.

31.

Under limited circumstances, officials such as Mayor Gravitt may be liable for injuries and damages as a result of their actions as public officials.

32.

House Bill 397 provides for the imposition of a "civil penalty" through a civil action against any person who negligently violates the terms of House Bill 397 without regard to whether the alleged violation created an injury or damage.

33.

House Bill 397 additionally provides for the imposition of attorney's fees and other litigation costs without regard to whether the alleged violation created an injury or damage.

34.

Legislative acts in violation of the Georgia Constitution or the Constitution of the United States are void, and the judiciary shall so declare them.  Ga. Const. Article I, § 2, ¶ 5.

35.

The City and Mayor Gravitt show this Court that through this suit and House Bill 397, the Attorney General is attempting to impose a civil penalty against Mayor Gravitt in violation of the Constitution of the State of Georgia, Article I, § 2, ¶ IX, and it is therefore void.

36.

This Court should enter a declaratory judgment that House Bill 397 is unconstitutional.

## COUNT III
## FACIAL UNCONSTITUTIONALITY UNDER SOVEREIGN IMMUNITY AS TO MAYOR GRAVITT FOR BASED UPON UNAUTHORIZED WAIVER OF OFFICAL IMMUNITY

37.

The City and Mayor Gravitt incorporate the previous paragraphs of this *Counterclaim* as if expressly set forth herein.

38.

Officials such as Mayor Gravitt may be liable for injuries and damages for ministerial acts performed negligently or for official acts performed with actual malice or actual intent to cause injury.

39.

House Bill 397 is written so that it imposes a civil penalty through the vehicle of a civil suit for negligent performance of its purported mandates regardless of whether the action is ministerial or official.

Samuel S. Owens v. H. Ford Gravitt, et al.
Civil Action File No. 12CV-1205
*Answer & Counterclaim for Declaratory Judgment*

Page 13 of 18

40.

House Bill 397 also imposes attorney's fees and reasonable costs regardless of whether the action complained of was ministerial or official.

41.

Legislative acts in violation of the Georgia Constitution or the Constitution of the United States are void, and the judiciary shall so declare them. Ga. Const. Article I, § 2, ¶ 5.

42.

House Bill 397 is unconstitutional on its face because it imposes liability on public officials for negligent action regardless of whether the acts at issue were ministerial or official.

43.

This Court should enter a declaratory judgment that House Bill 397 is unconstitutional.

**COUNT IV**
**AS APPLIED UNCONSTITUTIONALITY UNDER SOVEREIGN IMMUNITY AS TO MAYOR GRAVITT FOR BASED UPON UNAUTHORIZED WAIVER OF OFFICAL IMMUNITY**

44.

The City and Mayor Gravitt incorporate the previous paragraphs of this *Counterclaim* as if expressly set forth herein.

45.

House Bill 397 was signed into law by Governor Nathan Deal on April 17, 2012, and it was effective upon said signature.

46.

The City of Cumming routinely records its own meetings for preservation and for, upon request, public consumption.

47.

The prior version of Georgia's law concerning recording of open meetings created three types of recording options, and provided as follows: "[v]isual, sound, and visual and sound recording during open meetings shall be permitted."

48.

With the passage of House Bill 397, Georgia's law concerning recording of open meetings provides changed. Said law now provides as follows: "[v]isual, ~~sound, and visual~~ and sound recording during open meetings shall be permitted." H.B. 397, 2011-2012 Regular Session, Georgia, Lines 98-99.

49.

The version of House Bill 397 attached hereto as Exhibit A was the only version of the law available on April 17, 2012 – the law was not yet codified in the Official Code of Georgia Annotated.

50.

House Bill 397 deleted certain specific language from Georgia's law concerning the recording of open meetings, and in deleting such language the General Assembly cannot be deemed to have performed a useless act. *Holcomb. v. Gray*, 234 Ga. 7, 8 (1975). Some signification must be given to the General Assembly's action.

51.

Officials such as Mayor Gravitt may be liable for injuries and damages for ministerial acts performed negligently or for official acts performed with actual malice or actual intent to cause injury.

Samuel S. Owens v. H. Ford Gravitt, et al.
Civil Action File No. 12CV-1205
*Answer & Counterclaim for Declaratory Judgment*

Page 15 of 18

52.

An act is ministerial, permitting liability for negligent performance, when it "is simple, absolute, and definite, arising under conditions admitted or proved to exist, and requiring merely the execution of a specific duty." *Golden v. Vickery*, 285 Ga. App. 216, 217-18 (2007).

53.

In determining the meaning of the newly enacted House Bill 397, while assessing the City's compliance and presiding over a meeting of the City of Cumming's governing authority, Mayor Gravitt was engaged in an official function.

54.

There is no allegation in the Attorney General's *Complaint* which sets forth in any regard "actual malice or actual intent to cause injury," and as such the Attorney General is attempting to use the imposition of a civil penalty through this lawsuit to punish Mayor Gravitt for the alleged negligent performance of an official function in violation of the Constitution of the State of Georgia.

55.

Legislative acts in violation of the Georgia Constitution or the Constitution of the United States are void, and the judiciary shall so declare them. Ga. Const. Article I, § 2, ¶ 5.

56.

House Bill 397 is unconstitutional as applied in this case because it would impose liability on Mayor Gravitt for an official action based upon a standard of mere negligence.

## COUNT V
## UNAUTHORIZED APPLICATION TO THE CITY OF CUMMING

Samuel S. Owens v. H. Ford Gravitt, et al.
Civil Action File No. 12CV-1205
*Answer & Counterclaim for Declaratory Judgment*

Page 16 of 18

57.

The City and Mayor Gravitt incorporate the previous paragraphs of this *Counterclaim* as if expressly set forth herein.

58.

Under House Bill 397, the City of Cumming is an "agency."    H.B. 397, 2011-2012 Regular Session, Georgia, Lines 23-24.

59.

House Bill 397 does not treat municipal corporations such as the City of Cumming as "persons," but instead draws distinctions between persons, agencies, and other non-natural entities. *Id.* At 311-12; 322.

60.

The "civil penalty" which the *Complaint* seeks to impose against the City only calls for application against "persons."

61.

As the City of Cumming is not a person pursuant to House Bill 397, this Court should enter a declaratory judgment that its "civil penalty" provisions do not apply to the City of Cumming.

WHEREFORE, the City of Cumming and Mayor H. Ford Gravitt pray that this Court

(a) enter a Declaratory Judgment that House Bill 397 is unconstitutional, both facially and as applied for violation of Article 1, § 2, Paragraph 9 of the Georgia Constitution regarding the City's Sovereign Immunity and the Official Immunity of Mayor Gravitt; and

Samuel S. Owens v. H. Ford Gravitt, et al.
Civil Action File No. 12CV-1205
*Answer & Counterclaim for Declaratory Judgment*

Page 17 of 18

(b) enter a Declaratory Judgment that the subject civil penalty of House Bill 397

has no application to the City of Cumming as the City of Cumming is not a

"person" under House Bill 397.

This _19th_ day of July, 2012.

**MILES PATTERSON HANSFORD TALLANT, LLC**
Attorneys for the Defendants

By: _____

Dana B. Miles
Georgia Bar No. 505613
Kevin J. Tallant
Georgia Bar No. 696690
Lauren C. Giles
Georgia Bar No. 095880

202 Tribble Gap Road
Suite 200
Cumming, Georgia   30040
Telephone: (770) 781-4100
Facsimile: (770) 781-9191
dmiles@mphtlaw.com
ktallant@mphtlaw.com
lgiles@mphtlaw.com

Samuel S. Owens v. H. Ford Gravitt, et al.
Civil Action File No. 12CV-1205
Answer & Counterclaim for Declaratory Judgment

Page 18 of 18

12                                                      HB 397/AP

House Bill 397 (AS PASSED HOUSE AND SENATE)

By: Representatives Powell of the 171st, Bearden of the 68th, Powell of the 29th, Greene of the 149th, Baker of the 78th, and others

A BILL TO BE ENTITLED

AN ACT

1    To amend Title 50 of the Official Code of Georgia Annotated, relating to state government,
2    so as to comprehensively revise the provisions of law regarding open meetings and open
3    records; to provide definitions relating to open meetings; to provide for the manner of closing
4    meetings; to provide for open meetings; to provide for remedies for improperly closing
5    meetings; to provide for notice of meetings; to provide for exceptions; to provide for certain
6    privileges; to provide for sanctions; to provide for related matters; to provide for legislative
7    intent regarding open records; to provide for definitions relating to open records; to provide
8    for applicability; to provide for procedures regarding disclosure and enforcement of
9    disclosure provisions; to provide for fees and the amount and manner of collection thereof;
10   to provide for exceptions and exemptions; to provide for sanctions; to provide for related
11   matters; to conform certain cross references; to provide for an effective date and
12   applicability; to repeal conflicting laws; and for other purposes.

13          BE IT ENACTED BY THE GENERAL ASSEMBLY OF GEORGIA:

14                              **SECTION 1.**
15   Title 50 of the Official Code of Georgia Annotated, relating to state government, is amended
16   by revising Chapter 14, relating to open and public meetings, as follows:

17                              "CHAPTER 14

18   50-14-1.
19   (a) As used in this chapter, the term:
20   (1) 'Agency' means:
21   (A)  Every state department, agency, board, bureau, <u>office,</u> commission, public
22   corporation, and authority;
23   (B)  Every county, municipal corporation, school district, or other political subdivision
24   of this state;



25 -   (C) Every department, agency, board, bureau, <u>office,</u> commission, authority, or similar

26     body of each such county, municipal corporation, or other political subdivision of the

27     state;

28     (D) Every city, county, regional, or other authority established pursuant to the laws of

29     this state; and

30     (E) Any nonprofit organization to which there is a direct allocation of tax funds made

31     by the governing ~~authority~~ <u>body</u> of any agency as defined in this paragraph ~~and~~ which

32     ~~allocation~~ constitutes more than 33 1/3 percent of the funds from all sources of such

33     organization; provided, however, that this subparagraph shall not include hospitals,

34     nursing homes, dispensers of pharmaceutical products, or any other type organization,

35     person, or firm furnishing medical or health services to a citizen for which they receive

36     reimbursement from the state whether directly or indirectly; nor shall this term include

37     a subagency or affiliate of such a nonprofit organization from or through which the

38     allocation of tax funds is made.

39     (2) <u>'Executive session' means a portion of a meeting lawfully closed to the public.</u>

40     <u>(3)(A)</u> 'Meeting' means ~~the~~<u>:</u>

41     <u>(i) The</u> gathering of a quorum of the members of the governing body of an agency

42     <u>at which any official business, policy, or public matter of the agency is formulated,</u>

43     <u>presented, discussed, or voted upon;</u> or

44     <u>(ii) The gathering of a quorum</u> of any committee of ~~it's~~ <u>the</u> members <u>of the governing</u>

45     <u>body of an agency or a quorum of any committee</u> created by ~~such~~ <u>the</u> governing body~~;~~

46     ~~whether standing or special, pursuant to schedule, call, or notice of or from such~~

47     ~~governing body or committee or an authorized member, at a designated time and~~

48     ~~place at which any public matter, official business, or policy of the agency is to be~~

49     ~~discussed or presented or at which official action is to be taken or, in the case of a~~

50     ~~committee, recommendations on any public matter,~~ <u>at which any</u> official business, ~~or~~

51     policy ~~to the governing body are to be,~~ <u>or public matter of the committee is</u>

52     formulated, presented, ~~or~~ discussed<u>, or voted upon.</u>

53     <u>(B) 'Meeting' shall not include:</u>

54     <u>(i)</u> The ~~assembling together~~ <u>gathering</u> of a quorum of the members of a governing

55     body or committee for the purpose of making inspections of physical facilities <u>or</u>

56     <u>property</u> under the jurisdiction of such agency ~~or for the purposes of meeting with the~~

57     ~~governing bodies, officers, agents, or employees of other agencies at places outside~~

58     ~~the geographical jurisdiction of an agency and~~ at which no ~~final~~ <u>other official business</u>

59     <u>of the agency is to be discussed or</u> official action is to be taken ~~shall not be deemed~~

60     ~~a 'meeting.';~~

12                                                                                            HB 397/AP

61      (ii)  The gathering of a quorum of the members of a governing body or committee for

62      the purpose of attending state-wide, multijurisdictional, or regional meetings to

63      participate in seminars or courses of training on matters related to the purpose of the

64      agency or to receive or discuss information on matters related to the purpose of the

65      agency at which no official action is to be taken by the members;

66      (iii)  The gathering of a quorum of the members of a governing body or committee for

67      the purpose of meeting with officials of the legislative or executive branches of the

68      state or federal government at state or federal offices and at which no official action

69      is to be taken by the members;

70      (iv)  The gathering of a quorum of the members of an agency for

71      the purpose of traveling to a meeting or gathering as otherwise authorized by this

72      subsection so long as no official business, policy, or public matter is formulated,

73      presented, discussed, or voted upon by the quorum; or

74      (v)  The gathering of a quorum of the members of a governing body of an agency at

75      social, ceremonial, civic, or religious events so long as no official business, policy,

76      or public matter is formulated, presented, discussed, or voted upon by the quorum.

77      This subparagraph's exclusions from the definition of the term 'meeting' shall not apply

78      if it is shown that the primary purpose of the gathering or gatherings is to evade or

79      avoid the requirements for conducting a meeting while discussing or conducting official

80      business.

81      (b)(1)  Except as otherwise provided by law, all meetings as defined in subsection (a) of

82      this Code section shall be open to the public.  All votes at any meeting shall be taken in

83      public after due notice of the meeting and compliance with the posting and agenda

84      requirements of this chapter.

85      (2)  Any resolution, rule, regulation, ordinance, or other official action of an agency

86      adopted, taken, or made at a meeting which is not open to the public as required by this

87      chapter shall not be binding.  Any action contesting a resolution, rule, regulation,

88      ordinance, or other formal action of an agency based on an alleged violation of this

89      provision must shall be commenced within 90 days of the date such contested action was

90      taken, provided that or, if the meeting was held in a manner not permitted by law, within

91      90 days from the date the party alleging the violation knew or should have known about

92      the alleged violation so long as such date is not more than six months after the date the

93      contested action was taken.

94      (3)  Notwithstanding the provisions of paragraph (2) of this subsection, any action under

95      this chapter contesting a zoning decision of a local governing authority shall be

96      commenced within the time allowed by law for appeal of such zoning decision.

97   (c) The public at all times shall be afforded access to meetings declared open to the public

98   pursuant to subsection (b) of this Code section.  Visual, ~~sound, and visual~~ and sound

99   recording during open meetings shall be permitted.

100  (d)(1) Every agency subject to this chapter shall prescribe the time, place, and dates of

101  regular meetings of the agency.  Such information shall be available to the general public

102  and a notice containing such information shall be posted at least one week in advance and

103  maintained in a conspicuous place available to the public at the regular ~~meeting~~ place of

104  ~~the~~ an agency or committee meeting subject to this chapter as well as on the agency's

105  website, if any.  Meetings shall be held in accordance with a regular schedule, but nothing

106  in this subsection shall preclude an agency from canceling or postponing any regularly

107  scheduled meeting.

108  (2) For any meeting, other than a regularly scheduled meeting of the agency for which

109  notice has already been provided pursuant to this chapter, ~~Whenever any meeting~~

110  ~~required to be open to the public is to be held at a time or place other than at the time and~~

111  ~~place prescribed for regular meetings, the agency shall give due notice thereof.  'Due~~

112  ~~notice' shall be the posting of a written notice for at least 24 hours at the place of regular~~

113  ~~meetings and giving of~~ written or oral notice shall be given at least 24 hours in advance

114  of the meeting to the legal organ in which notices of sheriff's sales are published in the

115  county where regular meetings are held or at the option of the agency to a newspaper

116  having a general circulation in ~~said~~ such county at least equal to that of the legal organ;

117  provided, however, that, in counties where the legal organ is published less often than

118  four times weekly ~~'due notice',~~ sufficient notice shall be the posting of a written notice

119  for at least 24 hours at the place of regular meetings and, upon written request from any

120  local broadcast or print media outlet whose place of business and physical facilities are

121  located in the county, notice by telephone ~~or,~~ facsimile, or e-mail to that requesting media

122  outlet at least 24 hours in advance of the called meeting.  Whenever notice is given to a

123  legal organ or other newspaper, that publication shall immediately or as soon as

124  practicable make the information available upon inquiry to any member of the public.

125  Upon written request from any local broadcast or print media outlet, a copy of the

126  meeting's agenda shall be provided by facsimile, e-mail, or mail through a self-addressed,

127  stamped envelope provided by the requestor.

128  (3) When special circumstances occur and are so declared by an agency, that agency may

129  hold a meeting with less than 24 hours' notice upon giving such notice of the meeting and

130  subjects expected to be considered at the meeting as is reasonable under the

131  circumstances, including notice to ~~said~~ the county legal organ or a newspaper having a

132  general circulation in the county at least equal to that of the legal organ, in which event

133  the reason for holding the meeting within 24 hours and the nature of the notice shall be

134    recorded in the minutes. ~~Whenever notice is given to a legal organ or other newspaper,~~
135    ~~that publication shall immediately make the information available upon inquiry to any~~
136    ~~member of the public. Any oral notice required or permitted by this subsection may be~~
137    ~~given by telephone.~~ Such reasonable notice shall also include, upon written request
138    within the previous calendar year from any local broadcast or print media outlet whose
139    place of business and physical facilities are located in the county, notice by telephone,
140    facsimile, or e-mail to that requesting media outlet.
141    (e)(1)  Prior to any meeting, the agency or committee holding such meeting shall make
142    available an agenda of all matters expected to come before the agency or committee at
143    such meeting.  The agenda shall be available upon request and shall be posted at the
144    meeting site, as far in advance of the meeting as reasonably possible, but shall not be
145    required to be available more than two weeks prior to the meeting and shall be posted,
146    at a minimum, at some time during the two-week period immediately prior to the
147    meeting. Failure to include on the agenda an item which becomes necessary to address
148    during the course of a meeting shall not preclude considering and acting upon such item.
149    (2)(A)  A summary of the subjects acted on and those members present at a meeting of
150    any agency shall be written and made available to the public for inspection within two
151    business days of the adjournment of a meeting ~~of any agency~~.
152    (B)  The regular minutes of a meeting ~~of any agency~~ subject to this chapter shall be
153    promptly recorded and such records shall be open to public inspection once approved
154    as official by the agency or its committee, but in no case later than immediately
155    following ~~the~~ its next regular meeting ~~of the agency~~; provided, however, that nothing
156    contained in this chapter shall prohibit the earlier release of minutes, whether approved
157    by the agency or not.  Such ~~Said~~ minutes shall, ~~as~~ at a minimum, include the names of
158    the members present at the meeting, a description of each motion or other proposal
159    made, the identity of the persons making and seconding the motion or other proposal,
160    and a record of all votes.  ~~In the case of a roll-call vote the~~ The name of each person
161    voting for or against a proposal shall be recorded ~~and in all other cases it.~~ It shall be
162    presumed that the action taken was approved by each person in attendance unless the
163    minutes reflect the name of the persons voting against the proposal or abstaining.
164    (C)  Minutes of executive sessions shall also be recorded but shall not be open to the
165    public. Such minutes shall specify each issue discussed in executive session by the
166    agency or committee.  In the case of executive sessions where matters subject to the
167    attorney-client privilege are discussed, the fact that an attorney-client discussion
168    occurred and its subject shall be identified, but the substance of the discussion need not
169    be recorded and shall not be identified in the minutes. Such minutes shall be kept and

170    preserved for in camera inspection by an appropriate court should a dispute arise as to

171    the propriety of any executive session.

172    (f)  An agency with state-wide jurisdiction or committee of such an agency shall be

173    authorized to conduct meetings by ~~telecommunications conference~~ teleconference,

174    provided that any such meeting is conducted in compliance with this chapter.

175    (g) Under circumstances necessitated by emergency conditions involving public safety or

176    the preservation of property or public services, agencies or committees thereof not

177    otherwise permitted by subsection (f) of this Code section to conduct meetings by

178    teleconference may meet by means of teleconference so long as the notice required by this

179    chapter is provided and means are afforded for the public to have simultaneous access to

180    the teleconference meeting.  On any other occasion of the meeting of an agency or

181    committee thereof, and so long as a quorum is present in person, a member may participate

182    by teleconference if necessary due to reasons of health or absence from the jurisdiction so

183    long as the other requirements of this chapter are met.  Absent emergency conditions or the

184    written opinion of a physician or other health professional that reasons of health prevent

185    a member's physical presence, no member shall participate by teleconference pursuant to

186    this subsection more than twice in one calendar year.


187    50-14-2.

188    This chapter shall not be construed so as to repeal in any way:

189    (1)  The attorney-client privilege recognized by state law to the extent that a meeting

190    otherwise required to be open to the public under this chapter may be closed in order to

191    consult and meet with legal counsel pertaining to pending or potential litigation,

192    settlement, claims, administrative proceedings, or other judicial actions brought or to be

193    brought by or against the agency or any officer or employee or in which the agency or

194    any officer or employee may be directly involved; provided, however, the meeting may

195    not be closed for advice or consultation on whether to close a meeting; and

196    (2)  Those tax matters which are otherwise made confidential by state law.


197    50-14-3.

198    (a)  This chapter shall not apply to the following:

199    (1)  Staff meetings held for investigative purposes under duties or responsibilities

200    imposed by law;

201    (2)  The deliberations and voting of the State Board of Pardons and Paroles; and in

202    addition ~~said~~ such board may close a meeting held for the purpose of receiving

203    information or evidence for or against clemency or in revocation proceedings if it

12                                                                    HB 397/AP

204    determines that the receipt of such information or evidence in open meeting would

205    present a substantial risk of harm or injury to a witness;

206    (3) Meetings of the Georgia Bureau of Investigation or any other law enforcement or

207    prosecutorial agency in the state, including grand jury meetings;

208    (4) Adoptions and proceedings related thereto;

209    (5) Gatherings involving an agency and one or more neutral third parties in mediation

210    of a dispute between the agency and any other party.  In such a gathering, the neutral

211    party may caucus jointly or independently with the parties to the mediation to facilitate

212    a resolution to the conflict, and any such caucus shall not be subject to the requirements

213    of this chapter.  Any decision or resolution agreed to by an agency at any such caucus

214    shall not become effective until ratified in a public meeting and the terms of any such

215    decision or resolution are disclosed to the public.  Any final settlement agreement,

216    memorandum of agreement, memorandum of understanding, or other similar document,

217    however denominated, in which an agency has formally resolved a claim or dispute shall

218    be subject to the provisions of Article 4 of Chapter 18 of this title;

219    (6) Meetings:

220    (A) Of any medical staff committee of a public hospital;

221    (B) Of the governing authority of a public hospital or any committee thereof when

222    performing a peer review or medical review function as set forth in Code Section

223    31-7-15, Articles 6 and 6A of Chapter 7 of Title 31, or under any other applicable

224    federal or state statute or regulation; and

225    (C) Of the governing authority of a public hospital or any committee thereof in which

226    the granting, restriction, or revocation of staff privileges or the granting of abortions

227    under state or federal law is discussed, considered, or voted upon;

228    (7) Incidental conversation unrelated to the business of the agency; or

229    (8) E-mail communications among members of an agency; provided, however, that such

230    communications shall be subject to disclosure pursuant to Article 4 of Chapter 18 of this

231    title.

232    (b) Subject to compliance with the other provisions of this chapter, executive sessions shall

233    be permitted for:

234    (4)(1) Meetings when any agency is discussing the future acquisition of real estate,

235    except that such meetings shall be subject to the requirements of this chapter for the

236    giving of the notice of such a meeting to the public and preparing the minutes of such a

237    meeting; provided, however, the disclosure of such portions of the minutes as would

238    identify real estate to be acquired may be delayed until such time as the acquisition of the

239    real estate has been completed, terminated, or abandoned or court proceedings with

240    respect thereto initiated; or voting to:

241     (A)  Authorize the settlement of any matter which may be properly discussed in

242     executive session in accordance with paragraph (1) of Code Section 50-14-2;

243     (B)  Authorize negotiations to purchase, dispose of, or lease property;

244     (C) Authorize the ordering of an appraisal related to the acquisition or disposal of real

245     estate;

246     (D) Enter into a contract to purchase, dispose of, or lease property subject to approval

247     in a subsequent public vote; or

248     (E) Enter into an option to purchase, dispose of, or lease real estate subject to approval

249     in subsequent public vote.

250     No vote in executive session to acquire, dispose of, or lease real estate, or to settle

251     litigation, claims, or administrative proceedings, shall be binding on an agency until a

252     subsequent vote is taken in an open meeting where the identity of the property and the

253     terms of the acquisition, disposal, or lease are disclosed before the vote or where the

254     parties and principal settlement terms are disclosed before the vote;

255     (5) Meetings of the governing authority of a public hospital or any committee thereof

256     when discussing the granting, restriction, or revocation of staff privileges or the granting

257     of abortions under state or federal law;

258     (6)(2)  Meetings when discussing or deliberating upon the appointment, employment,

259     compensation, hiring, disciplinary action or dismissal, or periodic evaluation or rating of

260     a public officer or employee but not when receiving evidence or interviewing applicants

261     for the position of the executive head of an agency. This exception shall not apply to the

262     receipt of evidence or when hearing argument on charges filed to determine personnel

263     matters, including whether to impose disciplinary action or dismissal of dismiss a public

264     officer or employee or when considering or discussing matters of policy regarding the

265     employment or hiring practices of the agency. The vote on any matter covered by this

266     paragraph shall be taken in public and minutes of the meeting as provided in this chapter

267     shall be made available.  Meetings by an agency to discuss or take action on the filling

268     of a vacancy in the membership of the agency itself shall at all times be open to the public

269     as provided in this chapter;

270     (7) Adoptions and proceedings related thereto;

271     (8)(3)  Meetings of the board of trustees or the investment committee of any public

272     retirement system created by or subject to Title 47 when such board or committee is

273     discussing matters pertaining to investment securities trading or investment portfolio

274     positions and composition; and

275     (9)(4) Portions of meetings during which that portion of a record made Meetings when

276     discussing any records that are exempt from public inspection or disclosure pursuant to

277     paragraph (15) of subsection (a) of Code Section 50-18-72, when discussing any

278    ~~information a record of which would be exempt from public inspection or disclosure~~
279    ~~under said paragraph, or when reviewing or discussing any security plan under~~
280    ~~consideration pursuant to paragraph (10) of subsection (a) of Code Section 15-16-10~~
281    Article 4 of Chapter 18 of this title is to be considered by an agency and there are no
282    reasonable means by which the agency can consider the record without disclosing the
283    exempt portions if the meeting were not closed.

284    50-14-4.
285    (a) When any meeting of an agency is closed to the public pursuant to any provision of this
286    chapter, the specific reasons for such closure shall be entered upon the official minutes, the
287    meeting shall not be closed to the public except by a majority vote of a quorum present for
288    the meeting, the minutes shall reflect the names of the members present and the names of
289    those voting for closure, and that part of the minutes shall be made available to the public
290    as any other minutes.  Where a meeting of an agency is devoted in part to matters within
291    the exceptions provided by law, any portion of the meeting not subject to any such
292    exception, privilege, or confidentiality shall be open to the public, and the minutes of such
293    portions not subject to any such exception shall be taken, recorded, and open to public
294    inspection as provided in subsection (e) of Code Section 50-14-1.
295    (b)(1)  When any meeting of an agency is closed to the public pursuant to subsection (a)
296    of this Code section, the ~~chairperson or other~~ person presiding over such meeting or, if
297    the agency's policy so provides, each member of the governing body of the agency
298    attending such meeting, shall execute and file with the official minutes of the meeting a
299    notarized affidavit stating under oath that the subject matter of the meeting or the closed
300    portion thereof was devoted to matters within the exceptions provided by law and
301    identifying the specific relevant exception.
302    (2)  In the event that one or more persons in an executive session initiates a discussion
303    that is not authorized pursuant to Code Section 50-14-3, the presiding officer shall
304    immediately rule the discussion out of order and all present shall cease the questioned
305    conversation.  If one or more persons continue or attempt to continue the discussion after
306    being ruled out of order, the presiding officer shall immediately adjourn the executive
307    session.

308    50-14-5.
309    (a) The superior courts of this state shall have jurisdiction to enforce compliance with the
310    provisions of this chapter, including the power to grant injunctions or other equitable relief.
311    In addition to any action that may be brought by any person, firm, corporation, or other
312    entity, the Attorney General shall have authority to bring enforcement actions, either civil

12                                                        HB 397/AP

313    or criminal, in his or her discretion as may be appropriate to enforce compliance with this

314    chapter.

315    (b)  In any action brought to enforce the provisions of this chapter in which the court

316    determines that an agency acted without substantial justification in not complying with this

317    chapter, the court shall, unless it finds that special circumstances exist, assess in favor of

318    the complaining party reasonable attorney's fees and other litigation costs reasonably

319    incurred.  Whether the position of the complaining party was substantially justified shall

320    be determined on the basis of the record as a whole which is made in the proceeding for

321    which fees and other expenses are sought.

322    (c)  Any agency or person who provides access to information in good faith reliance on the

323    requirements of this chapter shall not be liable in any action on account of having provided

324    access to such information.


325    50-14-6.

326    Any person knowingly and willfully conducting or participating in a meeting in violation

327    of this chapter shall be guilty of a misdemeanor and upon conviction shall be punished by

328    a fine not to exceed $500.00 $1,000.00.  Alternatively, a civil penalty may be imposed by

329    the court in any civil action brought pursuant to this chapter against any person who

330    negligently violates the terms of this chapter in an amount not to exceed $1,000.00 for the

331    first violation.  A civil penalty or criminal fine not to exceed $2,500.00 per violation may

332    be imposed for each additional violation that the violator commits within a 12 month

333    period from the date that the first penalty or fine was imposed.  It shall be a defense to any

334    criminal action under this Code section that a person has acted in good faith in his or her

335    actions.'


336                                 **SECTION 2.**

337    Said title is further amended by revising Article 4 of Chapter 18, relating to inspection of

338    public records, as follows:


339                                 'ARTICLE 4


340    50-18-70.

341    (a)  The General Assembly finds and declares that the strong public policy of this state is

342    in favor of open government; that open government is essential to a free, open, and

343    democratic society; and that public access to public records should be encouraged to foster

344    confidence in government and so that the public can evaluate the expenditure of public

345    funds and the efficient and proper functioning of its institutions.  The General Assembly

346   further finds and declares that there is a strong presumption that public records should be
347   made available for public inspection without delay.  This article shall be broadly construed
348   to allow the inspection of governmental records.  The exceptions set forth in this article,
349   together with any other exception located elsewhere in the Code, shall be interpreted
350   narrowly to exclude only those portions of records addressed by such exception.
351   (a)(b)  As used in this article, the term:
352   (1)  'Agency' shall have the same meaning as in Code Section 50-14-1 and shall
353   additionally include any association, corporation, or other similar organization that has
354   a membership or ownership body composed primarily of counties, municipal
355   corporations, or school districts of this state, their officers, or any combination thereof
356   and derives more than 33 1/3 percent of its general operating budget from payments from
357   such political subdivisions.
358   (2) 'Public record' means 'public record' shall mean all documents, papers, letters, maps,
359   books, tapes, photographs, computer based or generated information, data, data fields, or
360   similar material prepared and maintained or received by an agency or by a private person
361   or entity in the performance of a service or function for or on behalf of an agency or when
362   such documents have been transferred to a private person or entity by an agency for
363   storage or future governmental use. in the course of the operation of a public office or
364   agency. 'Public record' shall also mean such items received or maintained by a private
365   person or entity on behalf of a public office or agency which are not otherwise subject to
366   protection from disclosure; provided, however, this Code section shall be construed to
367   disallow an agency's placing or causing such items to be placed in the hands of a private
368   person or entity for the purpose of avoiding disclosure. Records received or maintained
369   by a private person, firm, corporation, or other private entity in the performance of a
370   service or function for or on behalf of an agency, a public agency, or a public office shall
371   be subject to disclosure to the same extent that such records would be subject to
372   disclosure if received or maintained by such agency, public agency, or public office. As
373   used in this article, the term 'agency' or 'public agency' or 'public office' shall have the
374   same meaning and application as provided for in the definition of the term 'agency' in
375   paragraph (1) of subsection (a) of Code Section 50-14-1 and shall additionally include
376   any association, corporation, or other similar organization which: (1) has a membership
377   or ownership body composed primarily of counties, municipal corporations, or school
378   districts of this state or their officers or any combination thereof; and (2) derives a
379   substantial portion of its general operating budget from payments from such political
380   subdivisions.
381   (b) All public records of an agency as defined in subsection (a) of this Code section,
382   except those which by order of a court of this state or by law are prohibited or specifically

12                                                                                          HB 397/AP

383   exempted from being open to inspection by the general public, shall be open for a personal
384   inspection by any citizen of this state at a reasonable time and place; and those in charge
385   of such records shall not refuse this privilege to any citizen.
386   (c)  Any computerized index of a county real estate deed records shall be printed for
387   purposes of public inspection no less than every 30 days and any correction made on such
388   index shall be made a part of the printout and shall reflect the time and date that said index
389   was corrected.
390   (d)  No public officer or agency shall be required to prepare reports, summaries, or
391   compilations not in existence at the time of the request.
392   (e)  In a pending proceeding under Chapter 13 of this title, the 'Georgia Administrative
393   Procedure Act,' or under any other administrative proceeding authorized under Georgia
394   law, a party may not access public records pertaining to the subject of the proceeding
395   pursuant to this article without the prior approval of the presiding administrative law judge,
396   who shall consider such open record request in the same manner as any other request for
397   information put forth by a party in such a proceeding. This subsection shall not apply to
398   any proceeding under Chapter 13 of this title, relating to the revocation, suspension,
399   annulment, withdrawal, or denial of a professional education certificate, as defined in Code
400   Section 20-2-200, or any personnel proceeding authorized under Part 7 and Part 11 of
401   Article 17 and Article 25 of Chapter 2 of Title 20.
402   (f)  The individual in control of such public record or records shall have a reasonable
403   amount of time to determine whether or not the record or records requested are subject to
404   access under this article and to permit inspection and copying. In no event shall this time
405   exceed three business days. Where responsive records exist but are not available within
406   three business days of the request, a written description of such records, together with a
407   timetable for their inspection and copying, shall be provided within that period; provided,
408   however, that records not subject to inspection under this article need not be made available
409   for inspection and copying or described other than as required by subsection (h) of Code
410   Section 50-18-72, and no records need be made available for inspection or copying if the
411   public officer or agency in control of such records shall have obtained, within that period
412   of three business days, an order based on an exception in this article of a superior court of
413   this state staying or refusing the requested access to such records.
414   (g)  At the request of the person, firm, corporation, or other entity requesting such records,
415   records maintained by computer shall be made available where practicable by electronic
416   means, including Internet access, subject to reasonable security restrictions preventing
417   access to nonrequested or nonavailable records.

12                                                                    HB 397/AP

418    50-18-71.

419    (a)  All public records shall be open for personal inspection and copying, except those

420    which by order of a court of this state or by law are specifically exempted from disclosure.

421    Records shall be maintained by agencies to the extent and in the manner required by Article

422    5 of this chapter.  ~~In all cases where an interested member of the public has a right to~~

423    ~~inspect or take extracts or make copies from any public records, instruments, or documents,~~

424    ~~any such person shall have the right of access to the records, documents, or instruments for~~

425    ~~the purpose of making photographs or reproductions of the same while in the possession,~~

426    ~~custody, and control of the lawful custodian thereof, or his authorized deputy. Such work~~

427    ~~shall be done under the supervision of the lawful custodian of the records, who shall have~~

428    ~~the right to adopt and enforce reasonable rules governing the work. The work shall be done~~

429    ~~in the room where the records, documents, or instruments are kept by law. While the work~~

430    ~~is in progress, the custodian may charge the person making the photographs or~~

431    ~~reproductions of the records, documents, or instruments at a rate of compensation to be~~

432    ~~agreed upon by the person making the photographs and the custodian for his services or the~~

433    ~~services of a deputy in supervising the work.~~

434    (b)(1)(A)  Agencies shall produce for inspection all records responsive to a request

435    within a reasonable amount of time not to exceed three business days of receipt of a

436    request; provided, however, that nothing in this chapter shall require agencies to

437    produce records in response to a request if such records did not exist at the time of the

438    request. In those instances where some, but not all, records are available within three

439    business days, an agency shall make available within that period those records that can

440    be located and produced.  In any instance where records are unavailable within three

441    business days of receipt of the request, and responsive records exist, the agency shall,

442    within such time period, provide the requester with a description of such records and

443    a timeline for when the records will be available for inspection or copying and provide

444    the responsive records or access thereto as soon as practicable.  ~~Where fees for certified~~

445    ~~copies or other copies or records are specifically authorized or otherwise prescribed by~~

446    ~~law, such specific fee shall apply.~~

447    (B)  A request made pursuant to this article may be made to the custodian of a public

448    record orally or in writing.  An agency may, but shall not be obligated to, require that

449    all written requests be made upon the responder's choice of one of the following: the

450    agency's director, chairperson, or chief executive officer, however denominated; the

451    senior official at any satellite office of an agency; a clerk specifically designated by an

452    agency as the custodian of agency records; or a duly designated open records officer of

453    an agency; provided, however, that the absence or unavailability of the designated

454    agency officer or employee shall not be permitted to delay the agency's response.  At

455   the time of inspection, any person may make photographic copies or other electronic

456   reproductions of the records using suitable portable devices brought to the place of

457   inspection.  Notwithstanding any other provision of this chapter, an agency may, in its

458   discretion, provide copies of a record in lieu of providing access to the record when

459   portions of the record contain confidential information that must be redacted.

460   (2)  Any agency that designates one or more open records officers upon whom requests

461   for inspection or copying of records may be delivered shall make such designation in

462   writing and shall immediately provide notice to any person upon request, orally or in

463   writing, of those open records officers.  If the agency has elected to designate an open

464   records officer, the agency shall so notify the legal organ of the county in which the

465   agency's principal offices reside and, if the agency has a website, shall also prominently

466   display such designation on the agency's website.  In the event an agency requires that

467   requests be made upon the individuals identified in subparagraph (B) of paragraph (1) of

468   this subsection, the three-day period for response to a written request shall not begin to

469   run until the request is made in writing upon such individuals.  An agency shall permit

470   receipt of written requests by e-mail or facsimile transmission in addition to any other

471   methods of transmission approved by the agency, provided such agency uses e-mail or

472   facsimile in the normal course of its business.

473   (3)  The enforcement provisions of Code Sections 50-18-73 and 50-18-74 shall be

474   available only to enforce compliance and punish noncompliance when a written request

475   is made consistent with this subsection and shall not be available when such request is

476   made orally.

477   (c)(1) An agency may impose a reasonable charge for the search, retrieval, redaction, and

478   production or copying costs for the production of records pursuant to this article.  An

479   agency shall utilize the most economical means reasonably calculated to identify and

480   produce responsive, nonexcluded documents.  Where fees for certified copies or other

481   copies or records are specifically authorized or otherwise prescribed by law, such specific

482   fee shall apply when certified copies or other records to which a specific fee may apply

483   are sought.  In all other instances, the charge for the search, retrieval, or redaction of

484   records shall not exceed the prorated hourly salary of the lowest paid full-time employee

485   who, in the reasonable discretion of the custodian of the records, has the necessary skill

486   and training to perform the request; provided, however, that no charge shall be made for

487   the first quarter hour.  ~~Where no fee is otherwise provided by law, the agency may charge~~

488   ~~and collect a uniform copying fee not to exceed 25¢ per page.~~

489   (2)  In addition to a charge for the search, retrieval, or redaction of records, an agency

490   may charge a fee for the copying of records or data, not to exceed 10¢ per page for letter

491   or legal size documents or, in the case of other documents, the actual cost of producing

12                                                                                      HB 397/AP

492   the copy.  In the case of electronic records, the agency may charge the actual cost of the
493   media on which the records or data are produced.
494   (3)  Whenever any person has requested to inspect or copy a public record and does not
495   pay the cost for search, retrieval, redaction, or copying of such records when such charges
496   have been lawfully estimated and agreed to pursuant to this article, and the agency has
497   incurred the agreed-upon costs to make the records available, regardless of whether the
498   requester inspects or accepts copies of the records, the agency shall be authorized to
499   collect such charges in any manner authorized by law for the collection of taxes, fees, or
500   assessments by such agency.
501   (d)  In any instance in which an agency is required to or has decided to withhold all or part
502   of a requested record, the agency shall notify the requester of the specific legal authority
503   exempting the requested record or records from disclosure by Code section, subsection, and
504   paragraph within a reasonable amount of time not to exceed three business days or in the
505   event the search and retrieval of records is delayed pursuant to this paragraph or pursuant
506   to subparagraph (b)(1)(A) of this Code section, then no later than three business days after
507   the records have been retrieved.  In any instance in which an agency will seek costs in
508   excess of $25.00 for responding to a request, the agency shall notify the requester within
509   a reasonable amount of time not to exceed three business days and inform the requester of
510   the estimate of the costs, and the agency may defer search and retrieval of the records until
511   the requester agrees to pay the estimated costs unless the requester has stated in his or her
512   request a willingness to pay an amount that exceeds the search and retrieval costs.  In any
513   instance in which the estimated costs for production of the records exceeds $500.00, an
514   agency may insist on prepayment of the costs prior to beginning search, retrieval, review,
515   or production of the records.  Whenever any person who has requested to inspect or copy
516   a public record has not paid the cost for search, retrieval, redaction, or copying of such
517   records when such charges have been lawfully incurred, an agency may require prepayment
518   for compliance with all future requests for production of records from that person until the
519   costs for the prior production of records have been paid or the dispute regarding payment
520   resolved.  In addition, a reasonable charge may be collected for search, retrieval, and other
521   direct administrative costs for complying with a request under this Code section.  The
522   hourly charge shall not exceed the salary of the lowest paid full-time employee who, in the
523   discretion of the custodian of the records, has the necessary skill and training to perform
524   the request; provided, however, that no charge shall be made for the first quarter hour.
525   (e)  Requests by civil litigants for records that are sought as part of or for use in any
526   ongoing civil or administrative litigation against an agency shall be made in writing and
527   copied to counsel of record for that agency contemporaneously with their submission to
528   that agency.  The agency shall provide, at no cost, duplicate sets of all records produced

529   in response to the request to counsel of record for that agency unless the counsel of record

530   for that agency elects not to receive the records. An agency shall utilize the most

531   economical means available for providing copies of public records.

532   (f) As provided in this subsection, an agency's use of electronic record-keeping systems

533   must not erode the public's right of access to records under this article.  Agencies shall

534   produce electronic copies of or, if the requester prefers, printouts of electronic records or

535   data from data base fields that the agency maintains using the computer programs that the

536   agency has in its possession.  An agency shall not refuse to produce such electronic

537   records, data, or data fields on the grounds that exporting data or redaction of exempted

538   information will require inputting range, search, filter, report parameters, or similar

539   commands or instructions into an agency's computer system so long as such commands or

540   instructions can be executed using existing computer programs that the agency uses in the

541   ordinary course of business to access, support, or otherwise manage the records or data.

542   A requester may request that electronic records, data, or data fields be produced in the

543   format in which such data or electronic records are kept by the agency, or in a standard

544   export format such as a flat file electronic American Standard Code for Information

545   Interchange (ASCII) format, if the agency's existing computer programs support such an

546   export format. In such instance, the data or electronic records shall be downloaded in such

547   format onto suitable electronic media by the agency.  Where information requested is

548   maintained by computer, an agency may charge the public its actual cost of a computer

549   disk or tape onto which the information is transferred and may charge for the

550   administrative time involved as set forth in subsection (d) of this Code section.

551   (g) Requests to inspect or copy electronic messages, whether in the form of e-mail, text

552   message, or other format, should contain information about the messages that is reasonably

553   calculated to allow the recipient of the request to locate the messages sought, including, if

554   known, the name, title, or office of the specific person or persons whose electronic

555   messages are sought and, to the extent possible, the specific data bases to be searched for

556   such messages.  Whenever any person has requested one or more copies of a public record

557   and such person does not pay the copying charges and charges for search, retrieval, or other

558   direct administrative costs in accordance with the provisions of this Code section:

559   (1) A county or a department, agency, board, bureau, commission, authority, or similar

560   body of a county is authorized to collect such charges in any manner authorized by law

561   for the collection of taxes, fees, or assessments owed to the county;

562   (2) A municipal corporation or a department, agency, board, bureau, commission,

563   authority, or similar body of a municipal corporation is authorized to collect such charges

564   in any manner authorized by law for the collection of taxes, fees, or assessments owed

565   to the municipal corporation;

12                                                                    HB 397/AP

566     (3) A consolidated government or a department, agency, board, bureau, commission,
567     authority, or similar body of a consolidated government is authorized to collect such
568     charges in any manner authorized by law for the collection of taxes, fees, or assessments
569     owed to the consolidated government;
570     (4) A county school board or a department, agency, board, bureau, commission,
571     authority, or similar body of a county school board is authorized to collect such charges
572     in any manner authorized by law for the collection of taxes, fees, or assessments owed
573     to the county;
574     (5) An independent school board or a department, agency, board, bureau, commission,
575     authority, or similar body of an independent school board is authorized to collect such
576     charges in any manner authorized by law for the collection of taxes, fees, or assessments
577     owed to the municipal corporation; and
578     (6) A joint or regional authority or instrumentality which serves one or more counties
579     and one or more municipal corporations, two or more counties, or two or more municipal
580     corporations is authorized to collect such charges in any manner authorized by law for
581     the collection of taxes, fees, or assessments owed to the county if a county is involved
582     with the authority or instrumentality or in any manner authorized by law for the collection
583     of taxes, fees, or assessments owed to the municipal corporation if a municipal
584     corporation is involved with the authority or instrumentality.
585     This subsection shall apply whether or not the person requesting the copies has appeared
586     to receive the copies.
587     (h)  In lieu of providing separate printouts or copies of records or data, an agency may
588     provide access to records through a website accessible by the public.  However, if an
589     agency receives a request for data fields, an agency shall not refuse to provide the
590     responsive data on the grounds that the data is available in whole or in its constituent parts
591     through a website if the requester seeks the data in the electronic format in which it is kept.
592     Additionally, if an agency contracts with a private vendor to collect or maintain public
593     records, the agency shall ensure that the arrangement does not limit public access to those
594     records and that the vendor does not impede public record access and method of delivery
595     as established by the agency or as otherwise provided for in this Code section.
596     (i) Any computerized index of county real estate deed records shall be printed for purposes
597     of public inspection no less than every 30 days, and any correction made on such index
598     shall be made a part of the printout and shall reflect the time and date that such index was
599     corrected.
600     (j)  No public officer or agency shall be required to prepare new reports, summaries, or
601     compilations not in existence at the time of the request.

12                                                                    HB 397/AP

602   50-18-71.1.
603   (a) Notwithstanding any other provision of this article, an exhibit tendered to the court as
604   evidence in a criminal or civil trial shall not be open to public inspection without approval
605   of the judge assigned to the case or, if no judge has been assigned, approval of the chief
606   judge or, if no judge has been designated chief judge, approval of the judge most senior in
607   length of service on the court.
608   (b) Except as provided in subsection (d) of this Code section, in the event inspection is not
609   approved by the court, in lieu of inspection of such an exhibit, the custodian of such an
610   exhibit shall, upon request, provide one or more of the following representations of the
611   exhibit:
612      (1) A photograph;
613      (2) A photocopy;
614      (3) A facsimile; or
615      (4) Another reproduction.
616   (c) The provisions of subsections (b), (c), (d), and (e) of Code Section 50-18-71 shall apply
617   to fees, costs, and charges for providing a photocopy of such an exhibit. Fees for providing
618   a photograph, facsimile, or other reproduction of such an exhibit shall not exceed the cost
619   of materials or supplies and a reasonable charge for time spent producing the photograph,
620   facsimile, or other reproduction, in accordance with subsections (d) and (e) of Code
621   Section 50-18-71.
622   (d) Any physical evidence that is evidence of a violation of Part 2 of Article 3 of
623   Chapter 12 of Title 16, that is used as an exhibit in a criminal or civil trial, shall not be
624   open to public inspection except as provided in subsection (a) of this Code section. If the
625   judge approves inspection of such physical evidence, the judge shall designate, in writing,
626   the location where such physical evidence may be inspected, which location shall be in a
627   facility owned or operated by an agency of state or local government. If the judge permits
628   inspection, such property or material shall not be photographed, copied, or reproduced by
629   any means. Any person who violates the provisions of this subsection shall be guilty of a
630   felony and, upon conviction thereof, shall be punished by imprisonment for not less than
631   one nor more than 20 years and by a fine of not more than $100,000.00, or both.

632   50-18-71.2.
633   Any agency receiving a request for public records shall be required to notify the party
634   making the request of the estimated cost of the copying, search, retrieval, and other
635   administrative fees authorized by Code Section 50-18-71 as a condition of compliance with
636   the provisions of this article prior to fulfilling the request as a condition for the assessment

637   of any fee; provided, however, that no new fees other than those directly attributable to
638   providing access shall be assessed where records are made available by electronic means.

639   50-18-72.

640   (a) Public disclosure shall not be required for records that are:

641   (1) Specifically required by federal statute or regulation to be kept confidential;

642   (2) Medical or veterinary records and similar files, the disclosure of which would be an
643   invasion of personal privacy;

644   (3) Except as otherwise provided by law, records compiled for law enforcement or
645   prosecution purposes to the extent that production of such records would is reasonably
646   likely to disclose the identity of a confidential source, disclose confidential investigative
647   or prosecution material which would endanger the life or physical safety of any person
648   or persons, or disclose the existence of a confidential surveillance or investigation;

649   (4) Records of law enforcement, prosecution, or regulatory agencies in any pending
650   investigation or prosecution of criminal or unlawful activity, other than initial police
651   arrest reports and initial incident reports; provided, however, that an investigation or
652   prosecution shall no longer be deemed to be pending when all direct litigation involving
653   said such investigation and prosecution has become final or otherwise terminated; and
654   provided, further, that this paragraph shall not apply to records in the possession of an
655   agency that is the subject of the pending investigation or prosecution;

656   (4.1)(5) Individual Georgia Uniform Motor Vehicle Accident Reports, except upon the
657   submission of a written statement of need by the requesting party, such statement to be
658   provided to the custodian of records and to set forth the need for the report pursuant to
659   this Code section; provided, however, that any person or entity whose name or
660   identifying information is contained in a Georgia Uniform Motor Vehicle Accident
661   Report shall be entitled, either personally or through a lawyer or other representative, to
662   receive a copy of such report; and provided, further, that Georgia Uniform Motor Vehicle
663   Accident Reports shall not be available in bulk for inspection or copying by any person
664   absent a written statement showing the need for each such report pursuant to the
665   requirements of this Code section. For the purposes of this subsection, the term 'need'
666   means that the natural person or legal entity who is requesting in person or by
667   representative to inspect or copy the Georgia Uniform Motor Vehicle Accident Report:

668   (A) Has a personal, professional, or business connection with a party to the accident;

669   (B) Owns or leases an interest in property allegedly or actually damaged in the
670   accident;

671   (C) Was allegedly or actually injured by the accident;

672   (D) Was a witness to the accident;

673    (E) Is the actual or alleged insurer of a party to the accident or of property actually or
674    allegedly damaged by the accident;

675    (F) Is a prosecutor or a publicly employed law enforcement officer;

676    (G) Is alleged to be liable to another party as a result of the accident;

677    (H) Is an attorney stating that he or she needs the requested reports as part of a criminal
678    case, or an investigation of a potential claim involving contentions that a roadway,
679    railroad crossing, or intersection is unsafe;

680    (I) Is gathering information as a representative of a news media organization;

681    (J) Is conducting research in the public interest for such purposes as accident
682    prevention, prevention of injuries or damages in accidents, determination of fault in an
683    accident or accidents, or other similar purposes; provided, however, ~~that~~ this
684    subparagraph ~~will~~ shall apply only to accident reports on accidents that occurred more
685    than 30 days prior to the request and which shall have the name, street address,
686    telephone number, and driver's license number redacted; or

687    (K) Is a governmental official, entity, or agency, or an authorized agent thereof,
688    requesting reports for the purpose of carrying out governmental functions or legitimate
689    governmental duties;

690    ~~(4.2)~~(6) Jury list data, including, but not limited to, persons' names, dates of birth,
691    addresses, ages, race, gender, telephone numbers, social security numbers, and when it
692    is available, the person's ethnicity, and other confidential identifying information that is
693    collected and used by the Council of Superior Court Clerks of Georgia for creating,
694    compiling, and maintaining state-wide master jury lists and county master jury lists for
695    the purpose of establishing and maintaining county jury source lists pursuant to the
696    provisions of Chapter 12 of Title 15; provided, however, that when ordered by the judge
697    of a court having jurisdiction over a case in which a challenge to the array of the grand
698    or trial jury has been filed, the Council of Superior Court Clerks of Georgia or the clerk
699    of the county board of jury commissioners of any county shall provide data within the
700    time limit established by the court for the limited purpose of such challenge. Neither the
701    Council of Superior Court Clerks of Georgia nor the clerk of a county board of jury
702    commissioners shall be liable for any use or misuse of such data;

703    ~~(5)~~(7) Records ~~that consist~~ consisting of confidential evaluations submitted to, or
704    examinations prepared by, a governmental agency and prepared in connection with the
705    appointment or hiring of a public officer or employee; ~~and records~~

706    (8) Records consisting of material obtained in investigations related to the suspension,
707    firing, or investigation of complaints against public officers or employees until ten days
708    after the same has been presented to the agency or an officer for action or the

709    investigation is otherwise concluded or terminated, provided that this paragraph shall not

710    be interpreted to make such investigatory records privileged;

711    (6)(A)(9)  Real estate appraisals, engineering or feasibility estimates, or other records

712    made for or by the state or a local agency relative to the acquisition of real property until

713    such time as the property has been acquired or the proposed transaction has been

714    terminated or abandoned; ~~and~~

715    (B)(10)  Pending ~~Engineers' cost estimates and pending~~, rejected, or deferred sealed bids

716    or sealed proposals and detailed cost estimates related thereto until such time as the final

717    award of the contract is made, ~~or the project is terminated or abandoned. The provisions~~

718    ~~of this subparagraph shall apply whether the bid or proposal is received or prepared by~~

719    ~~the Department of Transportation pursuant to Article 4 of Chapter 2 of Title 32, by a~~

720    ~~county pursuant to Article 3 of Chapter 4 of Title 32, by a municipality pursuant to~~

721    ~~Article 4 of Chapter 4 of Title 32, or by a governmental entity pursuant to Article 2 of~~

722    ~~Chapter 91 of Title 36~~, or the agency in possession of the records takes a public vote

723    regarding the sealed bid or sealed proposal, whichever comes first;

724    (7)(11)  Records which ~~Notwithstanding any other provision of this article, an agency~~

725    ~~shall not be required to release those portions of records which would~~ identify persons

726    applying for or under consideration for employment or appointment as executive head of

727    an agency ~~as that term is defined in paragraph (1) of subsection (a) of Code Section~~

728    ~~50-14-1~~, or of a unit of the University System of Georgia; provided, however, that at least

729    14 calendar days prior to the meeting at which final action or vote is to be taken on the

730    position ~~the agency shall release~~ of executive head of an agency or five business days

731    prior to the meeting at which final action or vote is to be taken on the position of

732    president of a unit of the University System of Georgia, all documents ~~which came into~~

733    ~~its possession with respect to as many as~~ concerning as many as three persons under

734    consideration whom the agency has determined to be the best qualified for the position

735    ~~and from among whom the agency intends to fill the position~~ shall be subject to

736    inspection and copying.  Prior to the release of these documents, an agency may allow

737    such a person to decline being considered further for the position rather than have

738    documents pertaining to ~~the~~ such person released.  In that event, the agency shall release

739    the documents of the next most qualified person under consideration who does not

740    decline the position.  If an agency has conducted its hiring or appointment process ~~open~~

741    ~~to the public~~ without conducting interviews or discussing or deliberating in executive

742    session in a manner otherwise consistent with Chapter 14 of this title, it shall not be

743    required to delay ~~14 days to take~~ final action on the position.  The agency shall not be

744    required to release such records ~~with respect to~~ of other applicants or persons under

745    consideration, except at the request of any such person.  Upon request, the hiring agency

746     shall furnish the number of applicants and the composition of the list by such factors as

747     race and sex. The agency shall not be allowed to avoid the provisions of this paragraph

748     by the employment of a private person or agency to assist with the search or application

749     process;

750     (8)(12) Related to the provision of staff services to individual members of the General

751     Assembly by the Legislative and Congressional Reapportionment Office, the Senate

752     Research Office, or the House Budget and Research Office, provided that this exception

753     shall not have any application with respect to records related to the provision of staff

754     services to any committee or subcommittee or to any records which are or have been

755     previously publicly disclosed by or pursuant to the direction of an individual member of

756     the General Assembly;

757     (9)(13) Records that are of historical research value which are given or sold to public

758     archival institutions, public libraries, or libraries of a unit of the Board of Regents of the

759     University System of Georgia when the owner or donor of such records wishes to place

760     restrictions on access to the records. No restriction on access, however, may extend more

761     than 75 years from the date of donation or sale. This exemption shall not apply to any

762     records prepared in the course of the operation of state or local governments of the State

763     of Georgia;

764     (10)(14) Records that contain information from the Department of Natural Resources

765     inventory and register relating to the location and character of a historic property or of

766     historic properties as those terms are defined in Code Sections 12-3-50.1 and 12-3-50.2

767     if the Department of Natural Resources through its Division of Historic Preservation

768     determines that disclosure will create a substantial risk of harm, theft, or destruction to

769     the property or properties or the area or place where the property or properties are

770     located;

771     (10.1)(15)   Records of farm water use by individual farms as determined by

772     water-measuring devices installed pursuant to Code Section 12-5-31 or 12-5-105;

773     provided, however, that compilations of such records for the 52 large watershed basins

774     as identified by the eight-digit United States Geologic Survey hydrologic code or an

775     aquifer that do not reveal farm water use by individual farms shall be subject to

776     disclosure under this article;

777     (10.2)(16) Agricultural or food system records, data, or information that are considered

778     by the Georgia Department of Agriculture to be a part of the critical infrastructure,

779     provided that nothing in this paragraph shall prevent the release of such records, data, or

780     information to another state or federal agency if the release of such records, data, or

781     information is necessary to prevent or control disease or to protect public health, safety,

782     or welfare. As used in this paragraph, the term 'critical infrastructure' shall have the same

783    meaning as in 42 U.S.C. Section 5195c(e).  Such records, data, or information shall be

784    subject to disclosure only upon the order of a court of competent jurisdiction;

785    (10.3)(17) Records, data, or information collected, recorded, or otherwise obtained that

786    is deemed confidential by the Georgia Department of Agriculture for the purposes of the

787    national animal identification system, provided that nothing in this paragraph shall

788    prevent the release of such records, data, or information to another state or federal agency

789    if the release of such records, data, or information is necessary to prevent or control

790    disease or to protect public health, safety, or welfare.  As used in this paragraph, the term

791    'national animal identification program' means a national program intended to identify

792    animals and track them as they come into contact with or commingle with animals other

793    than herdmates from their premises of origin.  Such records, data, or information shall be

794    subject to disclosure only upon the order of a court of competent jurisdiction;

795    (11)(18) Records that contain site specific site-specific information regarding the

796    occurrence of rare species of plants or animals or the location of sensitive natural habitats

797    on public or private property if the Department of Natural Resources determines that

798    disclosure will create a substantial risk of harm, theft, or destruction to the species or

799    habitats or the area or place where the species or habitats are located; provided, however,

800    that the owner or owners of private property upon which rare species of plants or animals

801    occur or upon which sensitive natural habitats are located shall be entitled to such

802    information pursuant to this article;

803    (11.1) An individual's social security number and insurance or medical information in

804    personnel records, which may be redacted from such records;

805    (11.2)(19) Records that would reveal the names, home addresses, telephone numbers,

806    security codes, e-mail addresses, or any other data or information developed, collected,

807    or received by counties or municipalities in connection with neighborhood watch or

808    public safety notification programs or with the installation, servicing, maintaining,

809    operating, selling, or leasing of burglar alarm systems, fire alarm systems, or other

810    electronic security systems; provided, however, that initial police reports and initial

811    incident reports shall remain subject to disclosure pursuant to paragraph (4) of this

812    subsection;

813    (11.3)(20)(A) Records that reveal an An individual's social security number, mother's

814    birth name, credit card information, debit card information, bank account information,

815    account number, including a utility account number, password used to access his or her

816    account, financial data or information, and insurance or medical information in all

817    records, and unlisted telephone number if so designated in a public record, personal

818    e-mail address or cellular telephone number, if technically feasible at reasonable cost;

819    day and month of birth, which and information regarding public utility, television,

820    Internet, or telephone accounts held by private customers, provided that nonitemized
821    bills showing amounts owed and amounts paid shall be available.  Items exempted by
822    this subparagraph shall be redacted prior to disclosure of any record requested pursuant
823    to this article; provided, however, that such information shall not be redacted from such
824    records if the person or entity requesting such records requests such information in a
825    writing signed under oath by such person or a person legally authorized to represent
826    such entity which states that such person or entity is gathering information as a
827    representative of a news media organization for use in connection with news gathering
828    and reporting; and provided, further, that such access shall be limited to social security
829    numbers and day and month of birth; and provided, further, that this the news media
830    organization exception for access to social security numbers and day and month of birth
831    and the other protected information set forth in this subparagraph shall not apply to
832    teachers, employees of a public school, or public employees as set forth in paragraph
833    (13.1) (21) of this subsection.  For purposes of this subparagraph, the term 'public
834    employee' means any nonelected employee of the State of Georgia or its agencies,
835    departments, or commissions or any county or municipality or its agencies,
836    departments, or commissions.
837    (B)  This paragraph shall have no application to:
838    (i)  The disclosure of information contained in the records or papers of any court or
839    derived therefrom including without limitation records maintained pursuant to
840    Article 9 of Title 11;
841    (ii)  The disclosure of information to a court, prosecutor, or publicly employed law
842    enforcement officer, or authorized agent thereof, seeking records in an official
843    capacity;
844    (iii)  The disclosure of information to a public employee of this state, its political
845    subdivisions, or the United States who is obtaining such information for
846    administrative purposes, in which case, subject to applicable laws of the United
847    States, further access to such information shall continue to be subject to the provisions
848    of this paragraph;
849    (iv)  The disclosure of information as authorized by the order of a court of competent
850    jurisdiction upon good cause shown to have access to any or all of such information
851    upon such conditions as may be set forth in such order;
852    (v)  The disclosure of information to the individual in respect of whom such
853    information is maintained, with the authorization thereof, or to an authorized agent
854    thereof; provided, however, that the agency maintaining such information shall
855    require proper identification of such individual or such individual's agent, or proof of
856    authorization, as determined by such agency;

857   (vi)  The disclosure of the day and month of birth and mother's birth name of a

858   deceased individual;

859   (vii)  The disclosure by an agency of credit or payment information in connection

860   with a request by a consumer reporting agency as that term is defined under the

861   federal Fair Credit Reporting Act (15 U.S.C. Section 1681, et seq.);

862   (viii) The disclosure by an agency of information in its records in connection with the

863   agency's discharging or fulfilling of its duties and responsibilities, including, but not

864   limited to, the collection of debts owed to the agency or individuals or entities whom

865   the agency assists in the collection of debts owed to the individual or entity;

866   (ix)  The disclosure of information necessary to comply with legal or regulatory

867   requirements or for legitimate law enforcement purposes; or

868   (x)  The disclosure of the date of birth within criminal records.

869   (C) Records and information disseminated pursuant to this paragraph may be used only

870   by the authorized recipient and only for the authorized purpose.  Any person who

871   obtains records or information pursuant to the provisions of this paragraph and

872   knowingly and willfully discloses, distributes, or sells such records or information to

873   an unauthorized recipient or for an unauthorized purpose shall be guilty of a

874   misdemeanor of a high and aggravated nature and upon conviction thereof shall be

875   punished as provided in Code Section 17-10-4.  Any person injured thereby shall have

876   a cause of action for invasion of privacy.  ~~Any prosecution pursuant to this paragraph~~

877   ~~shall be in accordance with the procedure in subsection (b) of Code Section 50-18-74.~~

878   (D)  In the event that the custodian of public records protected by this paragraph has

879   good faith reason to believe that a pending request for such records has been made

880   fraudulently, under false pretenses, or by means of false swearing, such custodian shall

881   apply to the superior court of the county in which such records are maintained for a

882   protective order limiting or prohibiting access to such records.

883   (E)  This paragraph shall supplement and shall not supplant, overrule, replace, or

884   otherwise modify or supersede any provision of statute, regulation, or law of the federal

885   government or of this state as now or hereafter amended or enacted requiring,

886   restricting, or prohibiting access to the information identified in subparagraph (A) of

887   this paragraph and shall constitute only a regulation of the methods of such access

888   where not otherwise provided for, restricted, or prohibited;

889   <u>(21)  Records concerning public employees that reveal the public employee's home</u>

890   <u>address, home telephone number, day and month of birth, social security number,</u>

891   <u>insurance or medical information, mother's birth name, credit card information, debit card</u>

892   <u>information, bank account information, account number, utility account number,</u>

893   <u>password used to access his or her account, financial data or information other than</u>

894    compensation by a government agency, unlisted telephone number if so designated in a
895    public record, and the identity of the public employee's immediate family members or
896    dependents.  This paragraph shall not apply to public records that do not specifically
897    identify public employees or their jobs, titles, or offices.  For the purposes of this
898    paragraph, the term 'public employee' means any officer, employee, or former employee
899    of:
900    (A)  The State of Georgia or its agencies, departments, or commissions;
901    (B)  Any county or municipality or its agencies, departments, or commissions;
902    (C)  Other political subdivisions of this state;
903    (D)  Teachers in public and charter schools and nonpublic schools; or
904    (E)  Early care and education programs administered through the Department of Early
905    Care and Learning;
906    (22)  Records of the Department of Early Care and Learning that contain the:
907    (A)  Names of children and day and month of each child's birth;
908    (B)  Names, addresses, telephone numbers, or e-mail addresses of parents, immediate
909    family members, and emergency contact persons; or
910    (C)  Names or other identifying information of individuals who report violations to the
911    department;
912    (12)(23) Public records containing information that would disclose or might lead to the
913    disclosure of any component in the process used to execute or adopt an electronic
914    signature, if such disclosure would or might cause the electronic signature to cease being
915    under the sole control of the person using it.  For purposes of this paragraph, the term
916    'electronic signature' has the same meaning as that term is defined in Code
917    Section 10-12-2;
918    (13)  Records that would reveal the home address or telephone number, social security
919    number, or insurance or medical information of employees of the Department of
920    Revenue, law enforcement officers, firefighters as defined in Code Section 25-4-2,
921    judges, emergency medical technicians and paramedics, scientists employed by the
922    Division of Forensic Sciences of the Georgia Bureau of Investigation, correctional
923    employees, and prosecutors or identification of immediate family members or dependents
924    thereof;
925    (13.1)  Records that reveal the home address, the home telephone number, the e-mail
926    address, or the social security number of or insurance or medical information about public
927    employees or teachers and employees of a public school.  For the purposes of this
928    paragraph, the term 'public school' means any school which is conducted within this state
929    and which is under the authority and supervision of a duly elected county or independent
930    board of education.  Public disclosure shall also not be required for records that reveal the

931 home address, the home telephone address, the e-mail address, or the social security
932 number of or insurance or medical information about employees or teachers of a
933 nonpublic school;

934 (13.2) Records that are kept by the probate court pertaining to guardianships and
935 conservatorships except as provided in Code Section 29-9-18;

936 (14)(24) Records acquired Acquired by an agency for the purpose of establishing or
937 implementing, or assisting in the establishment or implementation of, a carpooling or
938 ridesharing program, to the extent such records would reveal the name, home address,
939 employment address, home telephone number, employment telephone number, or hours
940 of employment of any individual or would otherwise identify any individual who is
941 participating in, or who has expressed an interest in participating in, any such program.
942 As used in this paragraph, the term 'carpooling or ridesharing program' means and
943 includes including, but is not limited to, the formation of carpools, vanpools, or buspools,
944 the provision of transit routes, rideshare research, and the development of other demand
945 management strategies such as variable working hours and telecommuting;

946 (15)(25)(A)  Records; the disclosure of which would compromise security against
947 sabotage or criminal or terrorist acts and the nondisclosure of which is necessary for the
948 protection of life, safety, or public property, which shall be limited to the following:

949 (i)  Security plans and vulnerability assessments for any public utility, technology
950 infrastructure, building, facility, function, or activity in effect at the time of the
951 request for disclosure or pertaining to a plan or assessment in effect at such time;

952 (ii) Any plan for protection against terrorist or other attacks, which plan that depends
953 for its effectiveness in whole or in part upon a lack of general public knowledge of its
954 details;

955 (iii) Any document relating to the existence, nature, location, or function of security
956 devices designed to protect against terrorist or other attacks, which devices that
957 depend for their effectiveness in whole or in part upon a lack of general public
958 knowledge;

959 (iv) Any plan, blueprint, or other material which if made public could compromise
960 security against sabotage, criminal, or terroristic acts; and

961 (v) Records of any government sponsored programs concerning training relative to
962 governmental security measures which would identify persons being trained or
963 instructors or would reveal information described in divisions (i) through (iv) of this
964 subparagraph.

965 (B) In the event of litigation challenging nondisclosure pursuant to this paragraph by
966 an agency of a document covered by this paragraph, the court may review the
967 documents in question in camera and may condition, in writing, any disclosure upon

968    such measures as the court may find to be necessary to protect against endangerment

969    of life, safety, or public property.

970    (C) As used in ~~divisions~~ division (i) ~~and (iv)~~ of subparagraph (A) of this paragraph, the

971    term 'activity' means deployment or surveillance strategies, actions mandated by

972    changes in the federal threat level, motorcades, contingency plans, proposed or

973    alternative motorcade routes, executive and dignitary protection, planned responses to

974    criminal or terrorist actions, after-action reports still in use, proposed or actual plans

975    and responses to bioterrorism, and proposed or actual plans and responses to requesting

976    and receiving the National Pharmacy Stockpile;

977    ~~(16)~~(26)  Unless the request is made by the accused in a criminal case or by his or her

978    attorney, public records of an emergency 9-1-1 system, as defined in paragraph (3) of

979    Code Section 46-5-122, containing information which would reveal the name, address,

980    or telephone number of a person placing a call to a public safety answering point~~, which~~.

981    Such information may be redacted from such records if necessary to prevent the

982    disclosure of the identity of a confidential source, to prevent disclosure of material which

983    would endanger the life or physical safety of any person or persons, or to prevent the

984    disclosure of the existence of a confidential surveillance or investigation;

985    ~~(17)~~(27)  Records of athletic or recreational programs, available through the state or a

986    political subdivision of the state, that include information identifying a child or

987    children 12 years of age or under by name, address, telephone number, or emergency

988    contact, unless such identifying information has been redacted;

989    ~~(18)~~(28)  Records of the State Road and Tollway Authority which would reveal the

990    financial accounts or travel history of any individual who is a motorist upon ~~such~~ any toll

991    project. ~~Such financial records shall include but not be limited to social security number,~~

992    ~~home address, home telephone number, e-mail address, credit or debit card information,~~

993    ~~and bank account information but shall not include the user's name;~~

994    ~~(19)~~(29)  Records maintained by public postsecondary educational institutions in this

995    state and associated foundations of such institutions that contain personal information

996    concerning donors or potential donors to such institutions or foundations; provided,

997    however, that the name of any donor and the amount of donation made by such donor

998    shall be subject to disclosure if such donor or any entity in which such donor has a

999    substantial interest transacts business with the public postsecondary educational

1000    institution to which the donation is made within three years of the date of such donation.

1001    As used in this paragraph, the term 'transact business' means to sell or lease any personal

1002    property, real property, or services on behalf of oneself or on behalf of any third party as

1003    an agent, broker, dealer, or representative in an amount in excess of $10,000.00 in the

1004    aggregate in a calendar year; and the term 'substantial interest' means the direct or indirect

1005    ownership of more than 25 percent of the assets or stock of an entity;

1006    (20)(30) Records of the Metropolitan Atlanta Rapid Transit Authority or of any other

1007    transit system that is connected to that system's TransCard, or SmartCard, or successor

1008    or similar system which would reveal the financial records or travel history of any

1009    individual who is a purchaser of a TransCard, or SmartCard, or successor or similar fare

1010    medium.  Such financial records shall include, but not be limited to, social security

1011    number, home address, home telephone number, e-mail address, credit or debit card

1012    information, and bank account information but shall not include the user's name;

1013    (21)(31) Building mapping information produced and maintained pursuant to Article 10

1014    of Chapter 3 of Title 38;

1015    (22)(32) Notwithstanding the provisions of paragraph (4) of this subsection, any physical

1016    evidence or investigatory materials that are evidence of an alleged violation of Part 2 of

1017    Article 3 of Chapter 12 of Title 16, which and are in the possession, custody, or control

1018    of law enforcement, prosecution, or regulatory agencies; or

1019    (23)(33) Records that are expressly exempt from public inspection pursuant to Code

1020    Sections 47-1-14 and 47-7-127.;

1021    (34) Any trade secrets obtained from a person or business entity that are required by law,

1022    regulation, bid, or request for proposal to be submitted to an agency.  An entity

1023    submitting records containing trade secrets that wishes to keep such records confidential

1024    under this paragraph shall submit and attach to the records an affidavit affirmatively

1025    declaring that specific information in the records constitute trade secrets pursuant to

1026    Article 27 of Chapter 1 of Title 10.  If such entity attaches such an affidavit, before

1027    producing such records in response to a request under this article, the agency shall notify

1028    the entity of its intention to produce such records as set forth in this paragraph.  If the

1029    agency makes a determination that the specifically identified information does not in fact

1030    constitute a trade secret, it shall notify the entity submitting the affidavit of its intent to

1031    disclose the information within ten days unless prohibited from doing so by an

1032    appropriate court order.  In the event the entity wishes to prevent disclosure of the

1033    requested records, the entity may file an action in superior court to obtain an order that

1034    the requested records are trade secrets exempt from disclosure.  The entity filing such

1035    action shall serve the requestor with a copy of its court filing.  If the agency makes a

1036    determination that the specifically identified information does constitute a trade secret,

1037    the agency shall withhold the records, and the requester may file an action in superior

1038    court to obtain an order that the requested records are not trade secrets and are subject to

1039    disclosure;

1040    (b)  This article shall not be applicable to:

12                                                                   HB 397/AP

1041    (1)(35)  Data Any trade secrets obtained from a person or business entity which are of a

1042    privileged or confidential nature and required by law to be submitted to a government

1043    agency or to data, records, or information of a proprietary nature, produced or collected

1044    by or for faculty or staff of state institutions of higher learning, or other governmental

1045    agencies, in the conduct of, or as a result of, study or research on commercial, scientific,

1046    technical, or scholarly issues, whether sponsored by the institution alone or in conjunction

1047    with a governmental body or private concern, where such data, records, or information

1048    has not been publicly released, published, copyrighted, or patented;

1049    (2)(36)  Any data, records, or information developed, collected, or received by or on

1050    behalf of faculty, staff, employees, or students of an institution of higher education or any

1051    public or private entity supporting or participating in the activities of an institution of

1052    higher education in the conduct of, or as a result of, study or research on medical,

1053    scientific, technical, scholarly, or artistic issues, whether sponsored by the institution

1054    alone or in conjunction with a governmental body or private entity, until such information

1055    is published, patented, otherwise publicly disseminated, or released to an agency

1056    whereupon the request must be made to the agency.  This subsection applies paragraph

1057    shall apply to, but is shall not be limited to, information provided by participants in

1058    research, research notes and data, discoveries, research projects, methodologies,

1059    protocols, and creative works; or

1060    (37) Any record that would not be subject to disclosure, or the disclosure of which would

1061    jeopardize the receipt of federal funds, under 20 U.S.C. Section 1232g or its

1062    implementing regulations;

1063    (3)(38)  Unless otherwise provided by law, contract, bid, or proposal, records consisting

1064    of questions, scoring keys, and other materials constituting a test that derives value from

1065    being unknown to the test taker prior to administration, which is to be administered by

1066    an agency, including, but not limited to, any public school, any unit of the Board of

1067    Regents of the University System of Georgia, any public technical school, the State

1068    Board of Education, the Office of Student Achievement, the Professional Standards

1069    Commission, or a local school system, if reasonable measures are taken by the owner of

1070    the test to protect security and confidentiality; provided, however, that the State Board

1071    of Education may establish procedures whereby a person may view, but not copy, such

1072    records if viewing will not, in the judgment of the board, affect the result of

1073    administration of such test. These limitations shall not be interpreted by any court of law

1074    to include or otherwise exempt from inspection the records of any athletic association or

1075    other nonprofit entity promoting intercollegiate athletics.;

1076    (c)(1) All public records of hospital authorities shall be subject to this article except for

1077    those otherwise excepted by this article or any other provision of law.

H. B. 397
- 30 -

12                                                                    HB 397/AP

1078    (2)(39)  Records disclosing All state officers and employees shall have a privilege to
1079    refuse to disclose the identity or personally identifiable information of any person
1080    participating in research on commercial, scientific, technical, medical, scholarly, or
1081    artistic issues conducted by the Department of Community Health, the Department of
1082    Public Health, the Department of Behavioral Health and Developmental Disabilities, or
1083    a state institution of higher education whether sponsored by the institution alone or in
1084    conjunction with a governmental body or private entity.  Personally identifiable
1085    information shall mean any information which if disclosed might reasonably reveal the
1086    identity of such person including but not limited to the person's name, address, and social
1087    security number.  The identity of such informant shall not be admissible in evidence in
1088    any court of the state unless the court finds that the identity of the informant already has
1089    been disclosed otherwise.;
1090    (d)(40)  Any This article shall not be applicable to any application submitted to or any
1091    permanent records maintained by a judge of the probate court pursuant to Code Section
1092    16-11-129, relating to weapons carry licenses, or pursuant to any other requirement for
1093    maintaining records relative to the possession of firearms.  This subsection shall not
1094    preclude law enforcement agencies from obtaining, except to the extent that such records
1095    relating to licensing and possession of firearms are sought by law enforcement agencies
1096    as provided by law.;
1097    (e)  This article shall not be construed to repeal:
1098    (1)(41)  Records containing communications subject to the The attorney-client privilege
1099    recognized by state law to the extent that a record pertains to the requesting or giving of
1100    legal advice or the disclosure of facts concerning or pertaining to pending or potential
1101    litigation, settlement, claims, administrative proceedings, or other judicial actions brought
1102    or to be brought by or against the agency or any officer or employee; provided, however,
1103    attorney-client information; provided, however, that this paragraph shall not apply to the
1104    factual findings, but shall apply to the legal conclusions, of an attorney conducting an
1105    investigation on behalf of an agency so long as such investigation does not pertain to
1106    pending or potential litigation, settlement, claims, administrative proceedings, or other
1107    judicial actions brought or to be brought by or against the agency or any officer or
1108    employee; and provided, further, that such investigations conducted by hospital
1109    authorities to ensure compliance with federal or state law, regulations, or reimbursement
1110    policies shall be exempt from disclosure if such investigations are otherwise subject to
1111    the attorney-client privilege. Attorney-client communications, however, may be obtained
1112    in a proceeding under Code Section 50-18-73 to prove justification or lack thereof in
1113    refusing disclosure of documents under this Code section provided the judge of the court
1114    in which said such proceeding is pending shall first determine by an in camera

12                                                                    HB 397/AP

1115    examination that such disclosure would be relevant on that issue. In addition, when an
1116    agency withholds information subject to this paragraph, any party authorized to bring a
1117    proceeding under Code Section 50-18-73 may request that the judge of the court in which
1118    such proceeding is pending determine by an in camera examination whether such
1119    information was properly withheld;
1120    (2)(42)  Confidential The confidentiality of attorney work product; provided, however,
1121    that this paragraph shall not apply to the factual findings, but shall apply to the legal
1122    conclusions, of an attorney conducting an investigation on behalf of an agency so long
1123    as such investigation does not pertain to pending or potential litigation, settlement,
1124    claims, administrative proceedings, or other judicial actions brought or to be brought by
1125    or against the agency or any officer or employee; and provided, further, that such
1126    investigations conducted by hospital authorities to ensure compliance with federal or state
1127    law, regulations, or reimbursement policies shall be exempt from disclosure if such
1128    investigations are otherwise subject to confidentiality as attorney work product.  In
1129    addition, when an agency withholds information subject to this paragraph, any party
1130    authorized to bring a proceeding under Code Section 50-18-73 may request that the judge
1131    of the court in which such proceeding is pending determine by an in camera examination
1132    whether such information was properly withheld; or
1133    (3)(43) Records containing State laws making certain tax matters or tax information that
1134    is confidential. under state or federal law;
1135    (f)(1)  As used in this article, the term:
1136       (A) 'Computer program' means a set of instructions, statements, or related data that, in
1137       actual or modified form, is capable of causing a computer or computer system to
1138       perform specified functions.
1139       (B) 'Computer software' means one or more computer programs, existing in any form,
1140       or any associated operational procedures, manuals, or other documentation.
1141    (2)(44)  Records consisting of This article shall not be applicable to any computer
1142    program or computer software used or maintained in the course of operation of a public
1143    office or agency; provided, however, that data generated, kept, or received by an agency
1144    shall be subject to inspection and copying as provided in this article;
1145    (45)  Records pertaining to the rating plans, rating systems, underwriting rules, surveys,
1146    inspections, statistical plans, or similar proprietary information used to provide or
1147    administer liability insurance or self-insurance coverage to any agency;
1148    (46) Documents maintained by the Department of Economic Development pertaining to
1149    an economic development project until the economic development project is secured by
1150    binding commitment, provided that any such documents shall be disclosed upon proper
1151    request after a binding commitment has been secured or the project has been terminated.

12                                                                        HB 397/AP

1152   No later than five business days after the Department of Economic Development secures
1153   a binding commitment and the department has committed the use of state funds from the
1154   OneGeorgia Authority or funds from Regional Economic Business Assistance for the
1155   project pursuant to Code Section 50-8-8, or other provisions of law, the Department of
1156   Economic Development shall give notice that a binding commitment has been reached
1157   by posting on its website notice of the project in conjunction with a copy of the
1158   Department of Economic Development's records documenting the bidding commitment
1159   made in connection with the project and the negotiation relating thereto and by publishing
1160   notice of the project and participating parties in the legal organ of each county in which
1161   the economic development project is to be located.  As used in this paragraph, the term
1162   'economic development project' means a plan or proposal to locate a business, or to
1163   expand a business, that would involve an expenditure of more than $25 million by the
1164   business or the hiring of more than 50 employees by the business; or
1165   (47)  Records related to a training program operated under the authority of Article 3 of
1166   Chapter 4 of Title 20 disclosing an economic development project prior to a binding
1167   commitment having been secured, relating to job applicants, or identifying proprietary
1168   hiring practices, training, skills, or other business methods and practices of a private
1169   entity.  As used in this paragraph, the term 'economic development project' means a plan
1170   or proposal to locate a business, or to expand a business, that would involve an
1171   expenditure of more than $25 million by the business or the hiring of more than 50
1172   employees by the business.
1173   (g)(b)  This Code section shall be interpreted narrowly so as to exclude from disclosure
1174   only that portion of a public record to which an exclusion is directly applicable.  It shall be
1175   the duty of the agency having custody of a record to provide all other portions of a record
1176   for public inspection or copying.
1177   (h)  Within the three business days applicable to response to a request for access to records
1178   under this article, the public officer or agency having control of such record or records, if
1179   access to such record or records is denied in whole or in part, shall specify in writing the
1180   specific legal authority exempting such record or records from disclosure, by Code section,
1181   subsection, and paragraph.  No addition to or amendment of such designation shall be
1182   permitted thereafter or in any proceeding to enforce the terms of this article; provided,
1183   however, that such designation may be amended or supplemented one time within five days
1184   of discovery of an error in such designation or within five days of the institution of an
1185   action to enforce this article, whichever is sooner; provided, further, that the right to amend
1186   or supplement based upon discovery of an error may be exercised on only one occasion.
1187   In the event that such designation includes provisions not relevant to the subject matter of

12                                                                    HB 397/AP

1188    the request, costs and reasonable attorney's fees may be awarded pursuant to Code Section

1189    50-18-73.

1190    (c)(1)  Notwithstanding any other provision of this article, an exhibit tendered to the court

1191    as evidence in a criminal or civil trial shall not be open to public inspection without

1192    approval of the judge assigned to the case.

1193    (2)  Except as provided in subsection (d) of this Code section, in the event inspection is

1194    not approved by the court, in lieu of inspection of such an exhibit, the custodian of such

1195    an exhibit shall, upon request, provide one or more of the following:

1196    (A)  A photograph;

1197    (B)  A photocopy;

1198    (C)  A facsimile; or

1199    (D)  Another reproduction.

1200    (3)  The provisions of this article regarding fees for production of a record, including, but

1201    not limited to, subsections (c) and (d) of Code Section 50-18-71, shall apply to exhibits

1202    produced according to this subsection.

1203    (d)  Any physical evidence that is used as an exhibit in a criminal or civil trial to show or

1204    support an alleged violation of Part 2 of Article 3 of Chapter 12 of Title 16 shall not be

1205    open to public inspection except by court order.  If the judge approves inspection of such

1206    physical evidence, the judge shall designate, in writing, the facility owned or operated by

1207    an agency of the state or local government where such physical evidence may be inspected.

1208    If the judge permits inspection, such property or material shall not be photographed,

1209    copied, or reproduced by any means.  Any person who violates the provisions of this

1210    subsection shall be guilty of a felony and, upon conviction thereof, shall be punished by

1211    imprisonment for not less than one nor more than 20 years, a fine of not more than

1212    $100,000.00, or both.


1213    50-18-73.

1214    (a)  The superior courts of this state shall have jurisdiction in law and in equity to entertain

1215    actions against persons or agencies having custody of records open to the public under this

1216    article to enforce compliance with the provisions of this article.  Such actions may be

1217    brought by any person, firm, corporation, or other entity.  In addition, the Attorney General

1218    shall have authority to bring such actions, either civil or criminal, in his or her discretion

1219    as may be appropriate to enforce compliance with this article and to seek either civil or

1220    criminal penalties or both.

1221    (b)  In any action brought to enforce the provisions of this chapter in which the court

1222    determines that either party acted without substantial justification either in not complying

1223    with this chapter or in instituting the litigation, the court shall, unless it finds that special

1224   circumstances exist, assess in favor of the complaining party reasonable attorney's fees and

1225   other litigation costs reasonably incurred.  Whether the position of the complaining party

1226   was substantially justified shall be determined on the basis of the record as a whole which

1227   is made in the proceeding for which fees and other expenses are sought.

1228   (c) Any agency or person who provides access to information in good faith reliance on the

1229   requirements of this chapter shall not be liable in any action on account of ~~having provided~~

1230   ~~access to such information~~ such decision.


1231   50-18-74.

1232   (a) Any person or entity knowingly and willfully violating the provisions of this article by

1233   failing or refusing to provide access to records not subject to exemption from this article,

1234   ~~or by~~ knowingly and willingly failing or refusing to provide access to such records within

1235   the time limits set forth in this article, or by knowingly and willingly frustrating or

1236   attempting to frustrate the access to records by intentionally making records difficult to

1237   obtain or review shall be guilty of a misdemeanor and upon conviction shall be punished

1238   by a fine not to exceed $1,000.00 for the first violation. Alternatively, a civil penalty may

1239   be imposed by the court in any civil action brought pursuant to this article against any

1240   person who negligently violates the terms of this article in an amount not to exceed

1241   ~~$100.00~~ $1,000.00 for the first violation. A civil penalty or criminal fine not to exceed

1242   $2,500.00 per violation may be imposed for each additional violation that the violator

1243   commits within a 12 month period from the date the first penalty or fine was imposed. It

1244   shall be a defense to any criminal action under this Code section that a person has acted in

1245   good faith in his or her actions. In addition, persons or entities that destroy records for the

1246   purpose of preventing their disclosure under this article may be subject to prosecution

1247   under Code Section 45-11-1.

1248   (b)  A prosecution under this Code section may only be commenced by issuance of a

1249   citation in the same manner as an arrest warrant for a peace officer pursuant to Code

1250   Section 17-4-40~~, which~~; such citation shall be personally served upon the accused. The

1251   defendant shall not be arrested prior to the time of trial, except that a defendant who fails

1252   to appear for arraignment or trial may thereafter be arrested pursuant to a bench warrant

1253   and required to post a bond for his or her future appearance.


1254   50-18-75.

1255   Communications between the Office of Legislative Counsel and the following persons shall

1256   be privileged and confidential: members of the General Assembly, the Lieutenant

1257   Governor, and persons acting on behalf of such public officers; and such communications,

1258   and records and work product relating to such communications, shall not be subject to

1290                                   **SECTION 4.**

1291    Said title is further amended by revising paragraph (10) of subsection (a) of Code

1292    Section 15-16-10 of the Official Code of Georgia Annotated, relating to duties of sheriffs,

1293    as follows:

1294        "(10)  To develop and implement a comprehensive plan for the security of the county

1295        courthouse and any courthouse annex.  Prior to the implementation of any security plan,

1296        the plan shall be submitted to the chief judge of the superior court of the circuit wherein

1297        the courthouse or courthouse annex is located for review.  The chief judge shall have 30

1298        days to review the original or any subsequent security plan.  The chief judge may make

1299        modifications to the original or any subsequent security plan.  The sheriff shall provide

1300        to the county governing authority the estimated cost of any security plan and a schedule

1301        for implementation 30 days prior to adoption of any security plan.  A comprehensive plan

1302        for courthouse security shall be considered a confidential matter of public security.

1303        Review of a proposed security plan by the governing authority shall be excluded from the

1304        requirements of Code Section 50-14-1 ~~and any such review shall take place as provided~~

1305        ~~in Code Section 50-14-3~~.  Such security plan shall also be excluded from public

1306        disclosure pursuant to paragraph ~~(15)~~ (25) of subsection (a) of Code Section 50-18-72.

1307        The sheriff shall be the official custodian of the comprehensive courthouse security plan

1308        and shall determine who has access to such plan and any such access and review shall

1309        occur in the sheriff's office or at a meeting of the county governing authority held as

1310        provided in paragraph ~~(9)~~ (4) of subsection (b) of Code Section 50-14-3; provided,

1311        however, that the sheriff shall make the original security plan available upon request for

1312        temporary, exclusive review by any judge whose courtroom or chambers is located within

1313        the courthouse or courthouse annex or by any commissioner of the county in which the

1314        courthouse or courthouse annex is located.  The sheriff shall be responsible to conduct

1315        a formal review of the security plan not less than every four years."

1316                                   **SECTION 5.**

1317    Title 20 of the Official Code of Georgia Annotated, relating to education, is amended by

1318    revising paragraph (2) of subsection (a) of Code Section 20-2-55, relating to per diem,

1319    insurance, and expenses of local board members, as follows:

1320        "(2)  In any local school system for which no local Act is passed, members of the local

1321        board of education shall, when approved by the local board affected, receive a per diem

1322        of $50.00 for each day of attendance at a meeting, as defined in paragraph ~~(2)~~ (3) of

1323        subsection (a) of Code Section 50-14-1, of the board, plus reimbursement for actual

1324        expenses necessarily incurred in connection therewith; provided, however, that in any

1325        independent school system with a full-time equivalent (FTE) program count of less than

1326    4,000 students for which no local Act is passed, members of the local board of education

1327    may, when approved by the affected local board, receive a per diem of not less than

1328    $50.00 and not more than $100.00 for each day of attendance at a meeting, as defined in

1329    paragraph (2) (3) of subsection (a) of Code Section 50-14-1, of the board, plus

1330    reimbursement for actual expenses.  The accounts for such service and expenses shall be

1331    submitted for approval to the local school superintendent.  In all school districts, the

1332    compensation of members of local boards shall be paid only from the local tax funds

1333    available to local boards for educational purposes.  This paragraph shall apply only to

1334    local board of education members elected or appointed on or after July 1, 2010."

1335                             **SECTION 6.**

1336    Title 31 of the Official Code of Georgia Annotated, relating to health, is amended by revising

1337    subsection (b) of Code Section 31-7-402, relating to content and form of notice to Attorney

1338    General, retention of experts, and payment of costs and expenses, as follows:

1339    "(b)  The Attorney General may prescribe a form of notice to be utilized by the seller or

1340    lessor and the acquiring entity and may require information in addition to that specified in

1341    this article if the disclosure of such information is determined by the Attorney General to

1342    be in the public interest.  The notice to the Attorney General required by this article and all

1343    documents related thereto shall be considered public records pursuant to Code Section

1344    50-18-70 Article 4 of Chapter 18 of Title 50."

1345                             **SECTION 7.**

1346    Said title is further amended by revising subsection (a) of Code Section 31-7-405, relating

1347    to public hearing, expert or consultant required to testify, testimony, and representative of

1348    acquiring entity to testify, as follows:

1349    "(a)  Within 60 days after receipt of the notice under this article, the Attorney General shall

1350    conduct a public hearing regarding the proposed transaction in the county in which the

1351    main campus of the hospital is located.  At such hearing, the Attorney General shall

1352    provide an opportunity for those persons in favor of the transaction, those persons opposed

1353    to the transaction, and other interested persons to be heard.  The Attorney General shall

1354    also receive written comments regarding the transaction from any interested person, and

1355    such written comments shall be considered public records pursuant to Code Section

1356    50-18-70 Article 4 of Chapter 18 of Title 50."

1357                             **SECTION 8.**

1358    Title 33 of the Official Code of Georgia Annotated, relating to insurance, is amended by

1359    revising subsection (c) of Code Section 33-2-8.1, relating to purpose of Code section,

12                                                                              HB 397/AP

1360   preparation by Commissioner of supplemental report on property and casualty insurance,
1361   contents of report, and request for information, as follows:
1362      "(c)  The Commissioner shall investigate every licensed property and casualty insurer that
1363   is designated by the National Association of Insurance Commissioners as needing
1364   immediate or targeted regulatory attention and shall include in his report the number of
1365   such insurers which his investigation confirms are in need of immediate or targeted
1366   regulatory attention and the names of such insurers which are in formal rehabilitation,
1367   liquidation, or conservatorship.  The Commissioner shall obtain from the National
1368   Association of Insurance Commissioners the necessary information to implement this
1369   subsection and, notwithstanding the provisions of ~~Code Section 50-18-70~~ Article 4 of
1370   Chapter 18 of Title 50, shall withhold from public inspection any such information
1371   received from the National Association of Insurance Commissioners under an expectation
1372   of confidentiality."


1373                                     **SECTION 9.**
1374   Title 36 of the Official Code of Georgia Annotated, relating to local government, is amended
1375   by revising subsection (d) of Code Section 36-76-6, relating to franchise fees, as follows:
1376      "(d)  The statements made pursuant to subsection (b) of this Code section and any records
1377   or information furnished or disclosed by a cable service provider or video service provider
1378   to an affected local governing authority pursuant to subsection (c) of this Code section shall
1379   be exempt from public inspection under ~~Code Section 50-18-70~~ Article 4 of Chapter 18 of
1380   Title 50."


1381                                    **SECTION 10.**
1382   Code Section 38-3-152 of the Official Code of Georgia Annotated, relating to creation and
1383   operation of building mapping information system, availability to government agencies, rules
1384   and regulations, federal funding sources, exemption of information from public disclosure,
1385   recommendations for training guidelines, and limitations, is amended by revising
1386   subsection (f) as follows:
1387      "(f)  Information provided to the agency under this article shall be exempt from public
1388   disclosure to the extent provided in paragraph ~~(21)~~ (31) of subsection (a) of Code Section
1389   50-18-72."


1390                                    **SECTION 11**
1391   Code Section 40-5-2 of the Official Code of Georgia Annotated, relating to keeping of
1392   records of applications for licenses and information on licensees and furnishing of
1393   information, is amended by revising subsection (b) as follows:

12                                                            HB 397/AP

1394    "(b)  The records maintained by the department on individual drivers are exempt from any
1395    law of this state requiring that such records be open for public inspection; provided,
1396    however, that initial arrest reports, incident reports, and the records pertaining to
1397    investigations or prosecutions of criminal or unlawful activity shall be subject to disclosure
1398    pursuant to paragraph (4) of subsection (a) of Code Section 50-18-72 and related
1399    provisions.  Georgia Uniform Motor Vehicle Accident Reports shall be subject to
1400    disclosure pursuant to paragraph (4.1) (5) of subsection (a) of Code Section 50-18-72. The
1401    department shall not make records or personal information available on any driver except
1402    as otherwise provided in this Code section or as otherwise specifically required by 18
1403    U.S.C. Section 2721."

1404                              **SECTION 12.**
1405    Title 43 of the Official Code of Georgia Annotated, relating to professions and businesses,
1406    is amended by revising paragraph (4) of Code Section 43-34-7, relating to maintenance of
1407    roster by Georgia Composite Medical Board and confidentiality, as follows:
1408    "(4)  The deliberations of the board with respect to an application, an examination, a
1409    complaint, an investigation, or a disciplinary proceeding, except as may be contained in
1410    official board minutes; provided, however, that such deliberations may be released only
1411    to another state or federal enforcement agency or lawful licensing authority.  Releasing
1412    the documents pursuant to this paragraph shall not subject any otherwise privileged
1413    documents to the provisions of Code Section 50-18-70 Article 4 of Chapter 18 of
1414    Title 50."

1415                              **SECTION 13.**
1416    Code Section 45-6-6 of the Official Code of Georgia Annotated, relating to office property
1417    kept by officers subject to inspection by citizens, is amended by revising such Code section
1418    as follows:
1419    "45-6-6.
1420    All books, papers, and other office property kept by any public officer under the laws of
1421    this state shall be subject to the inspection of all the citizens of this state within office hours
1422    every day except Sundays and holidays may be copied or inspected subject to the
1423    requirements of Article 4 of Chapter 18 of Title 50."

1424                              **SECTION 14.**
1425    Title 46 of the Official Code of Georgia Annotated, relating to public utilities, is amended
1426    by revising paragraph (13) of subsection (b) of Code Section 46-5-1, relating to exercise of
1427    power of eminent domain by telephone and telegraph companies; placement of posts and

12                                                                                          HB 397/AP

1428   other fixtures; regulation of construction of fixtures, posts, and wires near railroad tracks;
1429   liability of telegraph and telephone companies for damages; required information; and due
1430   compensation, as follows:
1431        "(13)  The information provided pursuant to paragraph (1) of this subsection and any
1432        records or information furnished or disclosed by a telegraph or telephone company to an
1433        affected municipal authority pursuant to paragraph (12) of this subsection shall be exempt
1434        from public inspection under ~~Code Section 50-18-70~~ Article 4 of Chapter 18 of Title 50.
1435        It shall be the duty of such telegraph or telephone company to mark all such documents
1436        as exempt from ~~Code Section 50-18-70, et seq.~~ Article 4 of Chapter 18 of Title 50, and
1437        the telegraph or telephone company shall defend, indemnify, and hold harmless any
1438        municipal authority and any municipal officer or employee in any request for, or in any
1439        action seeking, access to such records."

1440                                             **SECTION 15.**
1441   Title 50 of the Official Code of Georgia Annotated, relating to state government, is amended
1442   by revising subsection (b) of Code Section 50-1-5, relating to meetings by teleconference or
1443   other similar means, as follows:
1444        "(b)  Nothing in this Code section shall eliminate any otherwise applicable requirement for
1445        giving notice of any meeting.  Likewise, nothing in this Code section shall create a
1446        requirement for giving notice of any meeting where it does not otherwise exist. The notice
1447        shall list each location where any member of the board, body, or committee plans to
1448        participate in the meeting if the meeting is otherwise open to the public; provided,
1449        however, it shall not be grounds to contest any actions of the board, body, or committee as
1450        provided in Code Section 50-14-1 if a member participates from a location other than the
1451        location listed in the notice.  At a minimum, the notice shall list one specific location where
1452        the public can participate in the meeting if the meeting is otherwise open to the public. The
1453        notice shall further conform with the notice provisions of ~~'due notice' as provided in~~ Code
1454        Section 50-14-1. Any meeting which is otherwise required by law to be open to the public
1455        shall be open to the public at each location listed in the notice or where any member of the
1456        board, body, or committee participates in the meeting."

1457                                             **SECTION 16.**
1458   Said title is further amended by revising subsection (c) of Code Section 50-17-22, relating
1459   to the State Financing and Investment Commission, as follows:
1460        "(c)  **Meetings.**  The commission shall hold regular meetings as it deems necessary, but,
1461        in any event, not less than one meeting shall be held in each calendar quarter.  The
1462        commission shall meet at the call of the chairperson, vice chairperson, or secretary and

1463    treasurer or a majority of the members of the commission.  Meetings of the commission
1464    shall be subject to Chapter 14 of this title, and its records shall be subject to ~~Code Sections~~
1465    ~~50-18-70 and 50-18-71~~ Article 4 of Chapter 18 of Title 50.  The commission shall approve
1466    the issuance of public debt, as hereinafter provided, adopt and amend bylaws, and establish
1467    salaries and wages of employees of the commission only upon the affirmative vote of a
1468    majority of its members; all other actions of the commission may be taken upon the
1469    affirmative vote of a majority of a quorum present.  A quorum shall consist of a majority
1470    of the members of the commission.  If any vote is less than unanimous, the vote shall be
1471    recorded in the minutes of the commission."

1472                                   **SECTION 17.**
1473    Said title is further amended by revising subsection (a) of Code Section 50-29-2, relating to
1474    authority of public agencies that maintain geographic information systems to contract for the
1475    provision of services, fees, and contract provisions, as follows:
1476    "(a) Notwithstanding ~~subsection (f) of Code Section 50-18-71 or Code Section 50-18-71.2~~
1477    the provisions of Article 4 of Chapter 18 of Title 50, a county or municipality of the State
1478    of Georgia, a regional commission, or a local authority created by local or general law that
1479    has created or maintains a geographic information system in electronic form may contract
1480    to distribute, sell, provide access to, or otherwise market records or information maintained
1481    in such system and may license or establish fees for providing such records or information
1482    or providing access to such system."

1483                                   **SECTION 18.**
1484    This Act shall become effective upon its approval by the Governor or upon its becoming law
1485    without such approval, and the provisions of paragraph (47) of subsection (a) of Code
1486    Section 50-18-72 as enacted by this Act shall apply to any request for public records made
1487    prior to the effective date of this Act.  Agencies shall be permitted to assert the provisions
1488    of paragraph (47) of subsection (a) of Code Section 50-18-72 as enacted by this Act as a
1489    basis for withholding documents covered by that paragraph in any pending or subsequently
1490    filed litigation regarding a request that occurred prior to the effective date of this Act.

1491                                   **SECTION 19.**
1492    All laws and parts of laws in conflict with this Act are repealed.

## IN THE SUPERIOR COURT OF FORSYTH COUNTY
## STATE OF GEORGIA

SAMUEL S. OLENS, in his official capacity )
as the Attorney General of the State of )
Georgia, )
                                )
      Plaintiff, )
                                )
v. )      **CIVIL ACTION FILE**
                                )       **NO. 12CV-1205**
H. FORD GRAVITT, individually and in his )
official capacity as Mayor of the City of )
Cumming, Georgia, and the CITY OF )
CUMMING, GEORGIA, )
                                )
      Defendants. )

## <u>VERIFICATION</u>

**PERSONALLY APPEARING** before the undersigned officer duly authorized to administer oaths, comes **H. FORD GRAVITT** who, after first being duly sworn, was deposed and states that the facts contained in the Defendants' *Answer and Counterclaim for Declaratory Judgment* are true and correct to the best of his knowledge and belief.

This _19th_ day of July, 2012.

                                             _H. Ford Gravitt_
                                             H. Ford Gravitt

Sworn to and subscribed before me
this _19th_ day of July, 2012.

_____
Notary Public
My Commission expires

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing *Answer and Counterclaim for Declaratory Judgment* has been served upon all parties by United States mail with sufficient postage affixed to ensure delivery to:

Stefan E. Ritter
Senior Assistant Attorney General
40 Capitol Square, S.W.
Atlanta, GA 30334-1300

This _19th_ day of July, 2012.

MILES PATTERSON HANSFORD TALLANT, LLC
Attorneys for the Defendants

By: _____

Dana B. Miles
Georgia Bar No. 505613
Kevin J. Tallant
Georgia Bar No. 696690

202 Tribble Gap Road
Suite 200
Cumming, Georgia   30040
Telephone: (770) 781-4100
Facsimile: (770) 781-9191
dmiles@mphtlaw.com
ktallant@mphtlaw.com

Samuel S. Olens

-vs -

H. Ford Gravitt

GEORGIA FORSYTH COUNTY

I, Greg G. Allen, Clerk Superior Court in and for said
county, do hereby certify that this is a true and correct
copy of the original that appears on record _12CV·1205_
_Answer and Counterclaim for_
_Declaratory Judgment_ this office
Given under my official signature and the seal of said Court,
this _16th_ day of _August_ 20 _12_
By: _____ Deputy Clerk
Forsyth Superior Court