IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

NYDIA TISDALE, )
)
    Plaintiff, )       CIVIL ACTION
)       NO. 2:12-CV-00145-RWS
v. )
)
MAYOR H. FORD GRAVITT, et al., )
)
    Defendants. )
_____)

## MEMORANDUM OF LAW IN SUPPORT
## OF MOTION FOR SUMMARY JUDGMENT

COME NOW defendants and file the following memorandum of law in support of their motion for summary judgment.

## I.  INTRODUCTION

This litigation comes before the Court as the result of an exchange between plaintiff Tisdale, the Mayor of the City of Cumming, and two of the city's police officers. Due to safety and decorum concerns, Tisdale was prevented from filming a meeting of the Cumming City Council. Tisdale was never removed from the meeting, but her camera was moved to the back of the Council chambers by a police officer (while still being held by Tisdale). The entire exchange lasted less than two minutes. Plaintiff now brings claims alleging that her constitutional

rights were violated and that torts have been committed against her. She seeks to recover for pain caused by alleged touching (though no marks were made and no treatment was sought) and for the humiliation she suffered as a result of the exchange (though she instantly uploaded the video of the exchange to the internet and notified and was voluntarily interviewed by news outlets concerning the exchange). The State Attorney General filed suit against the City alleging a violation of Georgia's Open Meetings Act and, consequently, plaintiff's Open Meetings Act claims asserted in this litigation have been stayed by this Court. For the reasons discussed below, defendants are entitled to summary judgment on plaintiff's remaining claims.

## II.  STATEMENT OF MATERIAL FACTS

Nydia Tisdale is a resident of Roswell, Georgia who travels to Forsyth County, Georgia for the purpose of filming public meetings and putting them on her webpage. (Deposition of Nydia Tisdale ("Tisdale Depo."), pp. 6, 35-36).[1] The City of Cumming independently videotapes its own Council meetings. (Deposition

---

[1] The original transcript of the deposition of Nydia Tisdale is being filed contemporaneously herewith. Also being filed contemporaneously herewith are the original transcripts of the deposition of Aldo Nahed and Karen Duffy.

of H. Ford Gravitt ("Gravitt Depo."), p. 62).[2]  On April 17, 2012, Tisdale attended the Cumming City Council meeting.  (Tisdale Depo., p. 35).  She set up her tripod with a video camera in the middle of the center aisle of the Council chamber.  (Tisdale Depo., pp. 55-56, Ex. 1).  Tisdale did not ask anyone prior to placing the tripod if this would be an acceptable location.  (Tisdale Depo., p. 42).  Before this incident, the City had no written policy on the video taping of Council meetings and prior to this meeting no other private citizen had attempted to film a meeting.  (Gravitt Depo., pp. 69-70; 103; Deposition of Casey Tatum ("Tatum Depo."), p. 38).

Mayor H. Ford Gravitt witnessed the camera and believed its location in the middle of an aisle could create a safety hazard and that Tisdale's act of filming could be disruptive to the decorum of the meeting.  (Gravitt Depo., pp. 85, 88).  In fact, another attendee of the City Council meeting thought the same thing.  (Deposition of Patricia Hamby ("Hamby Depo."), p. 22).[3]  At the start of the meeting, Mayor Gravitt instructed that the camera be removed from the Council

---

[2] Contemporaneous with the filing of this deposition, defendants are requesting that plaintiff file the original transcript of the deposition of Gravitt, the deposition of Chief Tatum, the deposition of Patricia Hamby, and the deposition of Jeff Davis.

[3] Specifically, Hamby testified:  "I walked into the meeting that night, and where the camera was located was in an aisle.  And my first thought was gosh, if something happened somebody might could get hurt trying to get out . . . because it was in an exit pattern."  (Hamby Depo., pg. 22).

chamber. (Tisdale Depo., p. 42). He believed he had the right to give such an order under the circumstances. (Gravitt Depo., p. 83). Despite the instruction to remove the camera from the Council chamber, the Mayor indicated that Tisdale would be permitted to audio record the meeting and take notes of the meeting. (Gravitt Depo., Ex. 4).

Although the Mayor believed he had a right to provide the instruction about video recording, pursuant to the City Charter, the Mayor is not the final policy maker. (City Charter, § 20).[4] Instead, the Charter provides the Mayor with the authority to enforce existing rules and policies, but does not give him the authority to create new rules or policies. (Id.).

In response to the Mayor's directive, Cumming Police Chief Casey Tatum approached Tisdale and put his hands on a leg of the tripod of her camera in order to move it. (Tisdale Depo., p. 43; Tatum Depo., pp. 53-55). Tisdale responded by arguing loudly with the Mayor and resisting the effort to remove the camera. (Gravitt Depo., Ex. 4). An attendee of the meeting described Tisdale as "agitated" during this exchange and testified that Tisdale "escalated the tension" in the room and was "not [] respectful of the Mayor." (Deposition of Karen Duffy, pp. 22; 28).

---

[4] A certified copy of the City Charter is attached hereto as an Exhibit. Defendants request that this Court take judicial notice of the City Charter. See Biasella v. City of Naples, Florida, 2:04-CV-320-FTM29DNF, 2005 WL 1925705 (M.D. Fla. Aug. 11, 2005).

Tisdale claims that during this exchange Chief Tatum grabbed her arm even though Chief Tatum denies it and other witnesses who viewed the exchange denied Chief Tatum touched Tisdale. (Tisdale Depo., pp. 43, 47-48; Tatum Depo., p. 58; Affidavit of Jeff Davis, ¶¶ 6-8; Deposition of Patricia Hamby, p. 18; Affidavit of Patricia Hamby, ¶¶ 6-7). However, Tisdale was photographed placing her hand over top of Chief Tatum's hand on the tripod. (Tisdale Depo., p. 71; Tatum Depo., pp. 55-56; Deposition of Aldo Nahed, Ex. 2).

Deputy Chief Walter Cook approached Tisdale and Chief Tatum to see if he could be of assistance. Tisdale also claims that Deputy Chief Cook grabbed her arm even though he denies it and other witnesses who viewed the exchange also deny it. (Tisdale Depo., pp. 43, 47-48; Affidavit of Clyde Cook, ¶ 9; Affidavit of Jeff Davis, ¶¶ 6-8; Deposition of Patricia Hamby, p. 18; Affidavit of Patricia Hamby, ¶¶ 6-7).[5] Chief Deputy Cook, on the other hand, testified that he walked about a foot or two behind Chief Tatum and Tisdale as they both held the tripod of Tisdale's camera and walked to the back of the Council chamber. (Deposition of Walter Cook, p. 24). Tisdale had no bruising or marks from this alleged touching and required no medical treatment for it. (Tisdale Depo., p. 48, 93, 135).

[5] Copies of the Affidavits of Chief Tatum, Deputy Chief Cook, Jeff Davis, and Patricia Hamby which were filed in related but separate litigation are attached as exhibits to their depositions taken in this case. Contemporaneous with this filing, defendants are requesting plaintiff file those original transcripts.

Chief Tatum escorted Tisdale to the back of the room. (Tisdale Depo., p. 43; Exhibit 1). Eventually Tisdale stopped objecting to being told she could not film. (Tisdale Depo., p. 43). At that time, Chief Tatum removed his hands from Tisdale's tripod, Tisdale placed the camera in the corner of the room, and she voluntarily left the Council chambers. (Tisdale Depo., pp. 44; 54). Despite the allegations in her Complaint, Tisdale specifically admits that she was not personally "kicked out" of the meeting, rather, she was simply not permitted to film. (Audio Recording of Tisdale).[6] Tisdale then re-entered the Council chambers without incident where she was allowed to stay despite her utilization of a different camera. (Tisdale Depo., pp. 66-67). Tisdale went home and that same night uploaded footage of the exchange to her You Tube channel. (Tisdale Depo., p. 63).

---

[6] Tisdale produced in discovery an audio recording of herself after the City Council meeting at issue during which she admits that she was not personally removed from the meeting. Plaintiff's admission is around the 3:30 mark of the audio. A copy of this audio is being submitted as an exhibit in support of this motion. See Sklar v. Clough, CIVA 106-CV-0627-JOF, 2007 WL 2049698 (N.D. Ga. July 6, 2007) (finding that emails produced by an opposing party in discovery are deemed authenticated when proffered by a party opponent).

# III.   ARGUMENT AND CITATION OF AUTHORITY

## A.   Summary Judgment Standard

Summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. Proc. 56(c).  The Eleventh Circuit has repeatedly held that, "the mere existence of a scintilla of evidence in support of the position will be insufficient; there must be evidence on which the jury could reasonably find for the non-moving party."  Johnson v. Bd. of Regents of the Univ. of Ga., 263 F.3d 1234, 1243 (11th Cir. 2001) (citations omitted).  In determining whether this evidentiary threshold has been met, the trial court "must view the evidence presented through the prism of the substantive evidentiary burden applicable to the particular cause of action before it."  Id.

"[T]he plain language of Rule 56(c) mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Id.

**B.** **Plaintiff's Federal Claims Against the City Fail Because There Was No Policy or Custom Which Prohibited Video Recording**

It is well settled that a municipality cannot be liable for the actions of its officers under 42 U.S.C. 1983 under the doctrine of *respondeat superior* unless the violation was inflicted pursuant to a governmental policy or custom. Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 691, 98 S. Ct. 2018, 2036, 56 L. Ed. 2d 611 (1978). In fact, it is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality. Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown, 520 U.S. 397, 404, 117 S. Ct. 1382, 1388, 137 L. Ed. 2d 626 (1997). The plaintiff must also demonstrate that, through its *deliberate* conduct, the municipality was the "moving force" behind the injury alleged. Id. In determining whether a single action by a state actor will create a "policy" permitting liability to attach to the municipality, this Court should determine who has final policymaking authority by looking to state law, local ordinances, rules and regulations, and customs and practices having the force of law. Mandel v. Doe, 888 F.2d 783 (11th Cir. 1989).

Here, it is undisputed that there was no written policy or custom which prohibited the filming of City Council meetings or which mandated the removal of cameras from the Council chamber. (Gravitt Depo., p. 103). In fact, no one had ever previously tried to privately record a City Council meeting. (Gravitt Depo.,

pp. 69-70). Indeed, the City video tapes it own meetings. (Gravitt Depo., p. 62). Further, the Mayor was not setting or making a policy when he instructed the camera be removed. Rather, the Mayor was simply controlling the room. Indeed, the Mayor does not have authority to set a broad spectrum policy that can be attributed to the city. Section 20 of the City Charter defines the authority of the mayor to *enforce* existing policy and oversee meetings.

> He shall see that all laws, ordinances, resolutions, and rules of said city are faithfully, fully, and impartially executed and enforced . . . He shall have general supervision and jurisdiction of the affairs of said city, and shall preside at all meetings of the city council; and shall preserve order and decorum, *shall enforce the rules and regulations of the body*.

(City Charter)(emphasis added). In other words, the Charter does not explicitly confer the power to create new official policy concerning meetings, rather, it simply gives the Mayor authority to enforce the existing rules and policies. Id.

Because there was no policy or custom in place prohibiting the private filming of City Council meetings and because the City was not the moving force behind the damages plaintiff alleges, her causes of action against the City fail and the City is entitled to summary judgment on all of plaintiff's federal claims.

**C.**    **The Individual Defendants Did Not Violate Plaintiff's' Constitutional Rights**

Tisdale cannot support any of her constitutional claims based on the facts in the record. The Fourteenth Amendment claim can be disposed of before even getting to the facts. Further, the Mayor's decision to prohibit video recording was a reasonable time, place, and manner restriction, and Tisdale was not subjected to an unconstitutional seizure. For these reasons, Tisdale's claims fail.

    1.    Plaintiff's Fourteenth Amendment Claim, If Any, Fails Because Other Amendments Govern

Throughout her complaint, Tisdale mechanically alleges that her Fourteenth Amendment rights were violated. However, such a claim is encompassed in the claims brought pursuant to other constitutional claims. Specifically, Tisdale pled violations of her First and Fourth Amendment rights. Factually, plaintiff alleges her rights to free speech were violated when she was disallowed to privately record the meeting and that she was subjected to an unreasonable seizure when she was escorted to the back of the Council chamber. Because plaintiff's claims can be more specifically analyzed under these Amendments, the plaintiff's claims do not invoke the Fourteenth Amendment and defendants are entitled to summary judgment on that claim. See Graham v. Connor, 490 U.S. 386, 388 (1989).

2. Plaintiff's First Amendment Rights Were Not Violated Because Any Restriction on Video Recording Would be a Reasonable Time, Place, and Manner Restriction

Plaintiff did not have a First Amendment right to privately videotape the Council meeting from the center aisle of the Council chamber. The freedom of expression protected by the First Amendment is not inviolate; the Supreme Court has established that the First Amendment does not guarantee persons the right to communicate their views "at all times or in any manner that may be desired." Cleveland v. City of Cocoa Beach, Florida, 221 F. App'x 875, 877-78 (11th Cir. 2007). The Supreme Court has broadly discerned "three distinct (although not airtight) categories of government property for First Amendment purposes: traditional public fora, designated public fora, and limited public fora." Bloedorn v. Grube, 631 F.3d 1218, 1230 (11th Cir. 2011).

A limited public forum may be established when the government limits its property to use by certain groups or dedicates it solely to the discussion of certain subjects. Id. at 1231. Restrictions made on expressive activity in a limited public forum only must be reasonable and viewpoint neutral and need not be the most reasonable or only reasonable limitation. Id. A city council meeting is a limited use public forum. Cleveland v. City of Cocoa Beach, Florida, 221 F. App'x 875,

878 (11th Cir. 2007). On two occasions the courts of this circuit have addressed constitutional claims brought by individuals who were prohibited from filming.

The first case addressing first amendment claims in the context of filming is Blackston v. State of Ala., 30 F.3d 117 (11th Cir. 1994). In that case, individuals who wanted to speak out against an issue being addressed by a planning commission were prohibited from filming the meeting at which the matters were discussed. In Blackston, the Court acknowledged that it was permissible for the planning commission to establish content neutral time, place, and manner restrictions on actions which touched on expressive conduct if it was supported by a substantial government interest and did not unreasonably limit alternative avenues of communication. Id.[7] Despite these findings, in light of allegations that the restrictions on the plaintiffs' speech were content based (because the plaintiffs were speaking out against actions of the planning commission), the case was permitted to proceed beyond a motion to dismiss. Id. at 120.

The most recent Eleventh Circuit analysis concerning the constitutional rights to videotape comes from the case of Smith v. City of Cumming, 212 F.3d 1332 (11th Cir. 2000). Relying on Blackson, the Court found that plaintiffs "had a

[7]It is the defendants' position that the Eleventh Circuit should have applied the less restrictive limited use for a test as opposed to the public for a test, however, the restrictions placed on Tisdale's videotaping survive either standard.

12

First Amendment right, subject to reasonable time, manner and place restrictions, to photograph or videotape police conduct" on public property. Id. at 1333. In that case, however, the Court found no violation because the plaintiffs did not establish that the named defendants actually infringed any of those rights. Id.

Here, the facts are both similar to and distinguishable from Blackson and wholly distinguishable from Smith. In this case, the Mayor was controlling the decorum of the Council meeting and he announced that Tisdale would not be permitted to videotape the meeting. This restriction was both reasonable and content neutral.[8] There is no evidence that the Mayor targeted against Tisdale specifically. Indeed, the Mayor announced the restriction because he (and others present at the meeting) believed the location of Tisdale's camera could create a safety hazard and that the filming could be disruptive to the decorum of the meeting, as opposed to anything directed at the content of Tisdale's videotaping. (Gravitt Depo., pp. 85, 88; Hamby Depo., p. 22). Furthermore, this prohibition did not restrict access to the proceedings because audio recordings, still photographs, and note taking were allowed in addition to the City recording its own meetings. (Gravitt Depo., p. 62; Ex. 4).

---

[8] Defendants do not here address whether this announcement was a violation of Georgia's Open Meetings Act as that claim has been stayed by this Court pending resolution of the action brought by the Georgia Attorney General.

The result in <u>Blackston</u> was determined by the questionably content-based restriction placed on the plaintiffs as opposed to some blanket protection afforded to videotaping public meetings. Indeed, when applied to the facts of this case, the holding of <u>Blackson</u> demonstrates that the prohibition at issue here was constitutional as it was a reasonable content neutral restriction of the time, place, and manner in which Tisdale could record and it did not restrict the access to the meeting which was being otherwise recorded.

Additionally, the facts here are wholly distinguishable from <u>Smith</u>. <u>Smith</u> involved the action of filming the activity of police officers on public property. <u>Id</u>. at 1332. As discussed above, the standard applied to prohibitions on expressive activity in public use fora is more restrictive than the standard applied to limited use for such as the City Council meeting. <u>See</u> <u>Cleveland</u>, 221 F. App'x at 878. However, even <u>Smith</u> acknowledges that reasonable time, place, and manner restrictions are permissible, and the restrictions at issue here were reasonable for the reasons discussed further above.

3.    <u>Plaintiff's Fourth Amendment Rights Were Not Violated Because She Was Not Subjected to a Seizure</u>

First, plaintiff does not allege that the Mayor touched her, therefore, plaintiff's Fourth Amendment claim applies only to Chief Tatum and Deputy Chief Cook. However, even as to Chief Tatum and Deputy Chief Cook the act of

escorting Tisdale from the center aisle of the Council chamber to the back of the Council chamber (even if they had grabbed her arms to do so) does not constitute an unreasonable seizure in violation of the Fourth Amendment.

The Constitution, is not concerned with *de minimis* violations. <u>Porter v. Jewell</u>, 453 F. App'x 934, 937 (11th Cir. 2012). For there to be a seizure for purposes of the Fourth Amendment, there must be a "meaningful interference" with a person's liberty. <u>United States v. Jacobsen</u>, 466 U.S. 109, 113, 104 S. Ct. 1652, 1656, 80 L.Ed. 2d 85 (1984). A *de minimis* amount of interference does not rise to the level of a constitutional violation. <u>Porter</u>, 453 F. App'x at 937; <u>United States v. Hernandez</u>, 418 F.3d 1206, 1212, fn. 7 (11th Cir. 2005). Escorting Tisdale 15 feet should be viewed as a *de minimis* interference.

For example, as the Eleventh Circuit has held, a traffic stop which was extended by three minutes due to a request for criminal histories did not create an unconstitutional seizure. <u>United States v. Purcell</u>, 236 F.3d 1274, 1279 (11th Cir. 2001). Indeed, even a traffic stop which lasted seventeen minutes was likely not a sufficient intrusion to violate a driver's constitutional rights. <u>Hernandez</u>, 418 F.3d at 1212, fn. 7.[9]

---

[9] Further, even if Tisdale makes a claim with regard to the touching of her camera, the Fourth Amendment is not implicated by the movement of a person's personal property unless the movement impairs the person's possessory interest in the

Here, the entire exchange between Tisdale and Chief Tatum only lasted less than two minutes. (Gravitt Depo., Ex. 4). Tisdale's hands remained on her tripod the entire time while it was moved to the back of the room, and in fact her hand was on top of Chief Tatum's hands, so she was never out of possession of the camera. (Tisdale Depo., p. 71; Tatum Depo., pp. 55-56). Consequently, the moving of Tisdale from one location in the Council chamber to another was reasonable and did not constitute the type of "meaningful interference" which creates a constitutional violation.[10]

## D.     The Individual Defendants Are Entitled to Qualified Immunity

Qualified immunity shields a Section 1983 defendant from liability for harms arising from discretionary acts, so long as these acts do not violate clearly established federal statutory or constitutional rights of which a reasonable person would have known. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Only in exceptional cases will government actors have no shield against claims made against them in their individual capacities. Id. Put otherwise, "[q]ualified

---

property. United States v. Puglisi, 723 F.2d 779, 785-86 (11th Cir. 1984). Even if the interference results in minor damage to the property which can be easily repaired, the interference is too *de minimis* to rise to the level of a constitutional violation. Porter, 453 F. App'x at 937.

[10] See Cruz v. Davidson, Case No. 12-10894 (11th Cir. 2013) (finding an overnight detention of plaintiff for a crime which was not an arrestable offense was reasonable). A true and correct copy of the opinion is attached hereto.

immunity affords protection to all but the plainly incompetent or those who knowingly violate the law." <u>Bates v. Harvey</u>, 518 F.3d 1233, 1242 (11th Cir. 2008).

In order to overcome qualified immunity, a plaintiff has the burden to establish that a defendant's conduct violated a clearly established statutory or constitutional right. <u>Saucier v. Katz</u>, 533 U.S. 194, 201 (2001) (overturned on other grounds). To determine whether the law was clearly established, a court must look at whether the state of the law at the time of the action gave "fair and clear warning" to a reasonable person that their actions were unconstitutional. <u>Hope v. Pelzer</u>, 536 U.S. 730, 746 (2002); see also <u>United States v. Lanier</u>, 520 U.S. 259, 265 (1997) ("To make the warning fair, so far as possible the line should be clear.").

### 1. The Individual Defendants Were Engaging in Discretionary Acts

To be entitled to the protections of qualified immunity, the individual defendants must have been engaged in discretionary acts. In this Circuit, in deciding on whether an act is discretionary, a Court looks to whether the act was of a type which fell in the individual's job description. <u>Holloman ex rel. Holloman v. Harland</u>, 370 F.3d 1252, 1265-66 (11th Cir. 2004). The inquiry is two-fold: "whether the government employee was (a) performing a legitimate job-related

function (that is, pursuing a job-related goal), (b) through means that were within his power to utilize." Id.  The inquiry is not "whether it was within the defendant's authority to commit the allegedly illegal act," rather, "to pass the first step of the discretionary function test for qualified immunity, the defendant must have been performing a function that, *but for* the alleged constitutional infirmity, would have fallen with his legitimate job description." Id.  Maintenance of decorum by a person in charge has been recognized as a discretionary function.  Id. (teacher performing a legitimate job related function by maintaining decorum in classroom).  After determining whether the complained of action constituted a job-related function, the Court determines whether the method in which the official effectuated his function was within the "arsenal of powers" he has been granted. Id. at 1267.

Here, all of the individual defendants were engaged in actions which were within the scope of their jobs.  It is within the job function of the Mayor to lead and maintain safety and decorum at City Council meetings.  (City Charter, § 20). Additionally, it is within the job function of police officers to keep the peace and effectuate the commands of the Mayor.  The method by which this was accomplished, moving Tisdale and/or her camera from an aisle way to the back of the Council chamber, was an acceptable manner of effectuating this function.  For

these reasons, the individual defendants were engaged in discretionary acts which are entitled to the protections of qualified immunity.

> 2. The Individual Defendants Did Not Violate Plaintiff's Clearly Established Constitutional Rights

For the reasons explained in greater detail above, none of Tisdale's constitutional rights were violated. At the very least, there is no clearly established constitutional right to privately videotape a city council meeting. Further, there is no clearly established constitutional prohibition on an officer escorting an individual and/or her property from an aisle way of a room to the back of the room. Because the individual defendants' actions were constitutional, or at the very least did not violate any clearly established constitutional rights, for the reasons identified above, they are entitled to qualified immunity for the discretionary acts Tisdale complains of in this lawsuit.

## E. Plaintiff Has Not Met the Procedural Requirements to Bring State Law Claims Against the City

A statutory prerequisite to bringing claims for personal injury against a municipal corporation, such as the City of Cumming, is to provide written notice to the city within 6 months of the event "stating the time, place, and extent of the injury, as nearly as practicable, and the negligence which caused the injury." O.C.G.A. § 36-33-5. No cause of action will be entertained by the Court if such

notice has not been provided.  Id.  In other words, an ante litem notice is a condition precedent to the filing of any suit for which the law requires it.  Howard v. Miller, 222 Ga. App. 868, 871, 476 S.E.2d 636, 638-39 (1996).

Here, plaintiff failed to present the required notice by October 17, 2012, or at all.  Consequently, Tisdale's state law claims against the City are barred and the City is entitled to summary judgment on those claims.

**F.    Plaintiff's State Constitutional Claims Fail Because Those Claims Should Be Analyzed the Same as Her Federal Constitutional Claims**

There appear to be no cases in Georgia which analyze the degree of constitutional protection afforded the act of videotaping public officials. However, the Supreme Court of Georgia has recently acknowledged that there seems to be no solid reason to analyze the protections afforded to free speech by the Georgia constitution any differently than the protections afforded by the federal constitution.  Grady v. Unified Gov't of Athens-Clarke Cnty., 289 Ga. 726, 731, 715 S.E.2d 148, 151-52 (2011).  Therefore, for the reasons more fully described above, the federal free speech rights guaranteed to Tisdale have not been infringed.

Further, the Georgia constitution provides the same protections against unreasonable seizures as the federal constitution.  Wells v. State, 180 Ga. App. 133, 134, 348 S.E.2d 681, 683 (1986).  For the reasons identified above, Tisdale

was not subjected to an unconstitutional seizure pursuant to the federal constitution, therefore, her state constitutional rights have also not been violated. This Court should grant defendants summary judgment on plaintiff's state constitutional claims.

**G.** **The Criminal Statutes on Which Plaintiff Relies Do Not Provide a Private Civil Cause of Action**

The Court should dismiss Tisdale's state tort claims in the complaint as they are based on violations of criminal statutes. Criminal statutes do not automatically provide a private civil cause of action to the victims harmed by their violation. Anthony v. Am. Gen. Fin. Servs., Inc., 287 Ga. 448, 456, 697 S.E.2d 166, 172 (2010). If the language of the statute does not create a private civil cause of action, the Courts will not imply one. Id. This is because "criminal statutes, which express prohibitions rather than personal entitlements and specify a particular remedy other than civil litigation, are accordingly poor candidates for the imputation of private rights of action. The criminal statutes [ ] create rights in favor of the general public, not just individuals damaged by their violation." Id. at 457 (internal quotations omitted).

Here, Tisdale seeks to recover civilly for alleged violations of the penal statutes O.C.G.A. §§ 16-5-41, 16-5-42, and 16-5-23. (Complaint, ¶¶ 23-25). These statutes do not provide for a civil remedy for their violation. While

defendants deny that Tisdale was falsely imprisoned, battered, or falsely arrested, regardless, because these statutes do not provide a private cause of action, defendants are entitled to summary judgment on these claims.

**H.    The Individual Defendants Are Entitled to Official Immunity on Plaintiff's State Law Claims**

Official immunity provides that while public employees may be personally liable for negligent ministerial acts, they may not be held liable for discretionary acts unless they act with actual malice.  Banks v. Happoldt, 271 Ga. App. 146, 148, 608 S.E.2d 741, 744 (2004).  In the context of official immunity, "actual malice requires a deliberate intention to do wrong and denotes express malice or malice in fact."  Adams v. Hazelwood, 271 Ga. 414, 414-15 (1999) (internal citations and punctuation omitted).  A discretionary act "calls for the exercise of personal deliberation and judgment, which in turn entails examining the facts, reaching reasoned conclusions, and acting on them in a way not specifically directed."  Johnson v. Gonzalez, 223 Ga. App. 646, 647 (1996).  A ministerial act, on the other hand, is "simple, absolute, and definite" and requires that the actor merely exercise a specific duty.  Id.  Typically, law enforcement activities are considered discretionary.  Gish v. Thomas, 302 Ga. App. 854, 859, 691 S.E.2d 900, 904

(2010) (involving prisoner transport); <u>Cameron v. Lang</u>, 274 Ga. 122, 549 S.E.2d 341 (2001) (involving vehicle pursuit).

All of the individual defendant's actions here were discretionary. In applying this standard to Chief Tatum and Deputy Chief Cook, these officers were performing discretionary acts in carrying out Mayor Gravitt's instruction. They were forced to respond to the unusual situation created by Tisdale's outburst and initial refusal to obey the Mayor's instruction. With regard to the Mayor, his decision about how to maintain decorum in the meeting room was a discretionary act as well which was undertaken as part of his role in leading the City Council meetings. The Mayor was confronted with a situation which he believed created a safety hazard and had the potential to disrupt the meeting's decorum and, in the absence of a policy or rule instructing him what to do, he exercised his independent judgment to instruct that Tisdale's camera be removed. (Gravitt Depo., pp. 69-70; 85; 88; 103; Tatum Depo., p. 38).

Given that the actions of the individual defendants were discretionary in nature, Tisdale would need to establish actual malice to recover, however, there is no evidence in the record that any defendant acted with a deliberate intention to do wrong to her. For these reasons, defendants are entitled to the protections of official immunity, and summary judgment on Tisdale's state law claims.

# I.    Plaintiff Is Not Entitled to Declaratory Relief

For the reasons discussed above, prohibitions on filming City Council meetings do not violate any of plaintiff's constitutionally protected rights, therefore, she is not entitled to a declaration that such a prohibition is unconstitutional nor is she entitled to an injunction preventing such prohibitions in the future.[11]

## IV.   CONCLUSION

For the foregoing reasons, defendants are entitled to summary judgment as a matter of law on the above claims.

FREEMAN MATHIS & GARY, LLP

/s/ Dana K. Maine
Dana K. Maine
Georgia Bar No. 466580
dmaine@fmglaw.com
Kathleen Sullivan Dod
Georgia Bar No. 142475
kdod@fmglaw.com

100 Galleria Parkway
Suite 1600
Atlanta, Georgia  30339-5948
(770) 818-0000 (telephone)
(770) 937-9960 (facsimile)

---

[11] As mentioned above, at this time the Court need not address whether such a prohibition violates the Georgia Open Meetings Act as that claim has been stayed.

**MILES PATTERSON HANSFORD TALLANT, LLC**

Dana B. Miles
Georgia Bar No. 505613
dmiles@mphtlaw.com
Kevin J. Tallant
Georgia Bar No. 696690
ktallant@mphtlaw.com

202 Tribble Gap Road
Suite 200
Cumming, GA 30040-2540
(770) 781-4100 (telephone)
(770) 781-9191 (facsimile)          Attorneys for Defendants

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1(D), the undersigned counsel hereby certifies that the foregoing brief was prepared in Times New Roman 14-point font, in compliance with Local Rule 5.1(C).

This 10th day of January, 2014.

FREEMAN  MATHIS & GARY, LLP


*/s/ Dana K. Maine*
Dana K. Maine
Georgia Bar No. 466580
dmaine@fmglaw.com

100 Galleria Parkway
Suite 1600
Atlanta, Georgia 30339-5948
(770) 818-0000 (telephone)
(770) 937-9960 (facsimile)

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that I have this day electronically submitted the foregoing **MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** to the Clerk of Court using the CM/ECF system which will automatically send electronic mail notification of such filing to counsel of record who is CM/ECF.

Gerald R. Weber Jr., Esq.
Law Office of Gerald Weber
P.O. Box 5391
Atlanta, GA 31107

Hollie Manheimer, Esq.
150 E. Ponce de Leon Avenue
Suite 230
Decatur, GA 30030

This the 10th day of January, 2014.

/s/ Dana K. Maine
Dana K. Maine
Georgia Bar No. 466580
dmaine@fmglaw.com

FREEMAN MATHIS & GARY, LLP
100 Galleria Parkway
Suite 1600
Atlanta, Georgia  30339-5948
(770) 818-0000 (telephone)
(770) 937-9960 (facsimile)
914547