**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**GAINESVILLE DIVISION**

| | | |
|---|---|---|
| **NYDIA TISDALE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **CIVIL ACTION** |
| | ) | **NO. 2:12-CV-00145-RWS** |
| **v.** | ) | |
| | ) | |
| **MAYOR H. FORD GRAVITT, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

**BRIEF IN OPPOSITION TO PLAINTIFF'S**
**MOTION FOR PARTIAL SUMMARY JUDGMENT**

COME NOW, Defendants and file the following Brief in Opposition to Plaintiff's Partial Motion for Summary Judgment.

## I.   INTRODUCTION

On January 10, 2014, Defendants moved for summary judgment on all of Plaintiff's claims, except those as previously stayed by the Court.  (Doc. 74).  On that same day, Plaintiff moved for Partial Summary Judgment on her First and Fourth Amendment claims, as well as her Georgia Open Meetings Act claims. Notably, although Plaintiff asserts that she is moving for summary judgment on her Georgia Open Meetings Act Claims, these claims have been stayed.  (See Doc. 13). For the following reasons, the Court should deny Plaintiff's motion for summary

judgment on her claims for violations of the First Amendment, Fourth Amendment, and Georgia Open Meetings Act.

## II.   <u>STATEMENT OF FACTS</u>

Defendants hereby incorporate their Statement of Material Facts As To Which There is No Genuine Issue To Be Tried.  (Doc. 63, Ex. 4).  Accordingly, only a brief outline of the facts in this case are provided below.

Nydia Tisdale is a resident of Roswell, Georgia who travels to Forsyth County, Georgia for the purpose of filming public meetings and putting them on her webpage.  (Deposition of Nydia Tisdale ("Tisdale Depo."), pp. 6, 35-36).[1]  On April 17, 2012, Tisdale attended the Cumming City Council meeting.   (Tisdale Depo., p. 35).  She set up her tripod with a video camera in the middle of the center aisle of the Council chamber.   (Tisdale Depo., pp. 55-56, Ex. 1).   Before this incident, the City had no written policy on the video taping of Council meetings and prior to this meeting no other private citizen had attempted to film a meeting. (Gravitt Depo., pp. 69-70; 103; Deposition of Casey Tatum ("Tatum Depo."), p. 38).

Mayor H. Ford Gravitt witnessed the camera and believed its location in the middle of an aisle created a safety hazard and that Tisdale's act of filming could be disruptive to the decorum of the meeting.  (Gravitt Depo., pp. 85, 88).  At the start

---

[1] The depositions of Nydia Tisdale, H. Ford Gravitt, Casey Tatum, Walter Cook, Aldo Nahed, Karen Duffy, Patricia Hamby, and Jeff Davis were previously filed in this case.

of the meeting, Mayor Gravitt instructed that the camera be removed from the Council chamber. (Tisdale Depo., p. 42). Despite the instruction to remove the camera from the Council chamber, the Mayor indicated that Tisdale would be permitted to audio record the meeting and take notes of the meeting. (Gravitt Depo., Ex. 4).

Although the Mayor provided the instruction about video recording, pursuant to the City Charter, the Mayor is not the final policy maker. (City Charter, § 20).[2] Instead, the Charter provides the Mayor with the authority to enforce existing rules and policies, but does not give him the authority to create new rules or policies. (Id.).

In response to the Mayor's directive, Cumming Police Chief Casey Tatum approached Tisdale and put his hands on a leg of the tripod of her camera in order to move it. (Tisdale Depo., p. 43; Tatum Depo., pp. 53-55). During his exchange with Tisdale, Chief Tatum did not place his hands on Tisdale. (Tatum Depo., p. 58; Affidavit of Jeff Davis, ¶¶ 6-8; Deposition of Patricia Hamby, p. 18; Affidavit of Patricia Hamby, ¶¶ 6-7).

Deputy Chief Walter Cook approached Tisdale and Chief Tatum to see if he could be of assistance. Deputy Chief Cook did not place his hands on Tisdale. (Cook Depo., p. 24; Affidavit of Clyde Cook, ¶ 9; Affidavit of Jeff Davis, ¶¶ 6-8; Deposition of Patricia Hamby, p. 18; Affidavit of Patricia Hamby, ¶¶ 6-7). Chief

---

[2] A certified copy of the City Charter was previously filed in this case.

Deputy Cook, on the other hand, testified that he walked about a foot or two behind Chief Tatum and Tisdale as they both held the tripod of Tisdale's camera and walked to the back of the Council chamber. Tisdale was photographed placing her hand over top of Chief Tatum's hand on the tripod. (Tisdale Depo., pg. 71; Tatum Depo., pp. 55-56; Deposition of Aldo Nahed, Ex. 2). Tisdale had no bruising or marks from this alleged touching and required no medical treatment for it. (Tisdale Depo., p. 48, 93, 135).

Chief Tatum escorted Tisdale to the back of the room. (Tisdale Depo., p. 43; Exhibit 1). Tisdale placed the camera in the corner of the room, and she voluntarily left the Council chambers. (Tisdale Depo., pp. 44; 54). The entire exchange between Tisdale and Chief Tatum only lasted less than two minutes. (Gravitt Depo., Ex. 4). Tisdale's hands remained on her tripod the entire time while it was moved to the back of the room, and in fact her hand was on top of Chief Tatum's hands, so she was never out of possession of the camera. (Tisdale Depo., p. 71; Tatum Depo., pp. 55-56). Despite the allegations in her Complaint, Tisdale specifically admits that she was not personally "kicked out" of the meeting,

rather, she was simply not permitted to film. (Audio Recording of Tisdale).[3]

Tisdale then re-entered the Council chambers without incident where she was

allowed to stay despite her utilization of a different video camera. (Tisdale Depo.,

pp. 66-67).

### III.   **STANDARD OF REVIEW**

Summary judgment is appropriate only "if the pleadings, depositions,

answers to interrogatories, and admissions on file, together with the affidavits, if

any, show that there is no genuine issue as to any material fact and that the moving

party is entitled to a judgment as a matter of law." Fed. R. Civ.P. 56(c). In ruling

on the motion, the court must view the evidence in a light most favorable to the

non-movant. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 90 S.Ct. 1598,

1608, 26 L.Ed.2d 142 (1970). To prevail on its motion for summary judgment, the

movant must show that the evidence is insufficient to establish an essential element

of the non-movant's case. Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S.Ct.

2548, 2553, 91 L.Ed.2d 265 (1986). If reasonable minds could differ as to the

import of the evidence, and a reasonable interpretation of the evidence could lead

_____

[3] Tisdale produced in discovery an audio recording of herself after the City Council meeting at issue during which she admits that she was not personally removed from the meeting. Plaintiff's admission is around the 3:30 mark of the audio. A copy of this audio was previously submitted as an exhibit in support of Defendant's Motion for Summary Judgment. See Sklar v. Clough, CIVA 106-CV-0627-JOF, 2007 WL 2049698 (N.D. Ga. July 6, 2007) (finding that emails produced by an opposing party in discovery are deemed authenticated when proffered by a party opponent).

to a verdict for the non-movant, then summary judgment is inappropriate. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52, 106 S.Ct. 2505, 25111-12, 91 L.Ed.2d 202 (1986).

## IV. ARGUMENT AND CITATION TO AUTHORITY

Plaintiff argues that she is entitled to summary judgment on her claims of First and Fourth Amendment violations, as well as her Georgia Open Meetings Act claims. Because the evidence viewed in the light most favorable to defendants shows that Plaintiff's First and Fourth Amendment rights were not violated, Plaintiff's motion must be denied. Furthermore, because the Court previously stayed Plaintiff's Georgia Open Meetings Act claims, Plaintiff's request for summary judgment on this claim should also be denied.

## A. Plaintiff's Federal Claims Against the City Fail Because There Was No Policy, Practice, Custom or Procedure Which Prohibited Video Recording

It is well settled that a municipality cannot be liable for the actions of its officers under 42 U.S.C. § 1983 under the doctrine of *respondeat superior* unless the violation was inflicted pursuant to a governmental policy or custom. Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 691, 98 S. Ct. 2018, 2036, 56 L. Ed. 2d 611 (1978). In fact, it is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality. Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown, 520 U.S. 397, 404, 117 S. Ct. 1382, 1388, 137 L. Ed.

2d 626 (1997).  The plaintiff must also demonstrate that, through its *deliberate* conduct, the municipality was the "moving force" behind the injury alleged.  Id.

In determining whether a single action by a state actor will create a "policy" permitting liability to attach to the municipality, this Court should determine who has final policymaking authority by looking to state law, local ordinances, rules and regulations, and customs and practices having the force of law.   Mandel v. Doe, 888 F.2d 783 (11th Cir. 1989).

Here, it is undisputed that there was no policy or custom which prohibited the filming of City Council meetings or which mandated the removal of cameras from the Council chamber.  (Gravitt Depo., p. 103).  In fact, previously, no one had ever tried to privately record a City Council meeting.  (Gravitt Depo., pp. 69-70). Indeed, the City video tapes its own meetings.  (Gravitt Depo., p. 62).  Further, the Mayor was not setting or making a policy when he instructed the camera be removed.  Rather, the Mayor was simply controlling the room.  Indeed, the Mayor does not have authority to set a broad spectrum policy that can be attributed to the city.  Section 20 of the City Charter defines the authority of the mayor to *enforce* existing policy and oversee meetings.

> He shall see that all laws, ordinances, resolutions, and rules of said city are faithfully, fully, and impartially executed and enforced  .  .  .  He shall have general supervision and jurisdiction of the affairs of said city, and shall preside at all meetings of the city council; and shall preserve order and decorum, *shall enforce the rules and regulations of the body*.

(City Charter)(emphasis added). In other words, the Charter does not explicitly confer the power to create new official policy concerning meetings, rather, it simply gives the Mayor authority to enforce the existing rules and policies. Id.

Indeed, Section 3 of the Charter provides that:

> [T]he municipal government of said City of Cumming shall be vested in a mayor and five councilmen, that the mayor and the councilmen shall be collectively known as the "City Council of Cumming," and shall be the supreme governing body, exercising all powers herein conferred upon the corporation and not otherwise specifically delegated.

(City Charter). Additionally, Section 19 provides that:

> [T]he mayor or mayor pro tem and three councilman shall constitute a quorum for the transaction of business, and a majority of votes shall determine questions before them; provided, that the mayor or the mayor pro tem, is he is presiding in the place of the mayor, shall vote only in the case of a tie vote.

(City Charter). Thus, it is clear from the City Charter that all final City policies are determined by the City Council on a majority basis.

This case is similar to Cleveland v. City of Cocoa Beach, Florida, 2003 WL 25739839, at *5 (M.D. Fla. 2003), where the district court found that the mayor's decision to prohibit campaign speech in the city's commission meetings was not a First Amendment violation. Additionally, the district court considered whether the City could be held liable for the mayor's "policy" prohibiting campaign speech. The district court found that although the mayor "enjoyed some discretion in

governing commission meetings, the power to regulate meetings and maintain order does not equate to the power to establish policy under the Charter as written. This Court is unwilling to read § 1983 so broadly as to convert each and every meeting-regulating act into a City's official policy." Id. Similarly, here, Plaintiff cannot transform Mayor Gravitt's individual conduct during the April 17, 2012 City Council meeting into official City policy.

Furthermore, any argument that the City Council somehow ratified the Mayor's conduct is without merit. In Cleveland, the district court rejected the argument that the commission was required "to challenge a Mayor's spur-of-the-moment restrictions imposed in a public meeting." Id. at *5 n.15. Thus, the mere fact that other City Council members did not object to the unplanned decision of Mayor Gravitt to restrict Plaintiff's videotaping does not require a finding that the Mayor's conduct was an official City policy.

Consequently, although Plaintiff merely asserts that the Mayor was the final policy maker of the City, the City Charter demonstrates otherwise and Plaintiff's claims against the City fail.

**B.** **Plaintiff's First Amendment Rights Were Not Violated**

Plaintiff first erroneously argues that she is entitled to summary judgment on her First Amendment claim because the Eleventh Circuit has explicitly held that blanket bars on filming public officials in public places violates the First Amendment. (Doc. 69, Ex. 2 at 9, 14). Plaintiff, however, fails to demonstrate

that the content-neutral restriction imposed by Mayor Gravitt in the April 17, 2012 City Council meeting violated her First Amendment rights.

In this regard, Plaintiff did not have a First Amendment right to privately videotape the Council meeting from the center aisle of the Council chamber. The freedom of expression protected by the First Amendment is not inviolate; the Supreme Court has established that the First Amendment does not guarantee persons the right to communicate their views "at all times or in any manner that may be desired." Cleveland v. City of Cocoa Beach, Florida, 221 F. App'x 875, 877-78 (11th Cir. 2007). The Supreme Court has broadly discerned "three distinct (although not airtight) categories of government property for First Amendment purposes: traditional public fora, designated public fora, and limited public fora." Bloedorn v. Grube, 631 F.3d 1218, 1230 (11th Cir. 2011).

A limited public forum may be established when the government limits its property to use by certain groups or dedicates it solely to the discussion of certain subjects. Id. at 1231. A city council meeting is considered a limited use public forum. Cleveland, 221 F. App'x at 878. Restrictions made on expressive activity in a limited public forum only must be reasonable and viewpoint neutral and need not be the most reasonable or only reasonable limitation. Bloedorn, 631 F.3d at 1230.

## 1. The Restriction Was Not Based Upon Viewpoint or Content

Here, Plaintiff provides no evidence that the restriction preventing her from videotaping the City Council meeting was imposed based upon content or viewpoint. In this regard, Mayor Gravitt simply witnessed the camera and believed its location in the middle of an aisle could create a safety hazard and that Tisdale's act of filming could be disruptive to the decorum of the meeting. (Gravitt Depo., pp. 85, 88). There is no evidence presented that Mayor Gravitt disapproved of Plaintiff's message or viewpoint, or that he would have treated any other individual filming from the aisle differently. Furthermore, this prohibition did not restrict access to the proceedings because audio recordings, still photographs, and note taking were allowed in addition to the City recording its own meetings. (Gravitt Depo., p. 62; Ex. 4).

District courts have recognized that the need to maintain order at a city council meeting is a content-neutral restriction. Harris v. City of Valdosta, Ga., 616 F. Supp. 2d 1310, 1322 (M.D. Ga. 2009) (finding that the mayor's request to remove an attendee to maintain order at a city council meeting was a content-neutral restriction where there was no evidence that there was any animosity by the Mayor or the council members). Here, it is clear that the Mayor's restriction on Plaintiff's videotaping was not based upon any personal animosity or viewpoint and was a content-neutral restriction.

## 2.  The Restriction Was A Reasonable Limitation

In addition to being content neutral, the request to remove Plaintiff's camera from the center of the aisle to protect safety and preserve decorum was reasonable. Courts have consistently recognized that "[t]here is a significant governmental interest in conducting orderly, efficient meetings of public bodies." Rowe v. City of Cocoa, 358 F.3d 800, 803 (11th Cir. 2004); see also Jones v. Heyman, 888 F.2d 1328, 1332 (11th Cir. 1989) (finding that "the mayor certainly had an important interest in confining Jones to the topic at hand and in preventing disruption of the meeting"). Moreover, public entities have been found to have a significant interest in ensuring safety and order for persons using a specific forum. See Bloedorn, 631 F.3d t 1238 (finding that the university had a significant interest in ensuring safety and order on campus); Heffron v. International Soc. for Krishna Consciousness, Inc., 452 U.S. 640, 650 (1981) ("[A] State's interest in protecting the safety and convenience of persons using a public forum is a valid governmental objective.").

Accordingly, because Mayor Gravitt's request to remove the camera from the meeting was based on a safety concern and the desire to maintain decorum in the City Council meeting, both of which courts have recognized as legitimate governmental concerns, the restriction on videotaping was clearly a reasonable limitation. Based on the above, Plaintiff completely fails to demonstrate that

Mayor Gravitt's restriction preventing her from filming the April 17, 2012 City Council meeting was a violation of her First Amendment rights.[4]

Furthermore, although Plaintiff cites to Blackstone v. State of Ala., 30 F.3d 117 (11th Cir. 1994) and Smith v. City of Cumming, 212 F.3d 1332 (11th Cir. 2000) in support of her argument that Defendants violated her First Amendment rights, nothing in these cases indicates that a time, manner, or place restriction is unreasonable in all circumstances. In Blackstone, individuals who wanted to speak out against an issue being addressed by a planning commission were prohibited from filming the meeting at which the matters were discussed. The Eleventh Circuit acknowledged that it was reasonable for the planning commission to establish content neutral time, place, and manner restrictions on actions which touched on expressive conduct if it was supported by a substantial government interest and did not unreasonably limit alternative avenues of communication. 30 F.3d at 120. Likewise, in Smith, the Court found that plaintiffs "had a First Amendment right, subject to reasonable time, manner and place restrictions, to photograph or videotape police conduct" on public property. 212 F.3d at 1333 (emphasis added).

In sum, although Plaintiff makes the conclusory argument that these cases establish that the restriction imposed on Plaintiff preventing her from videotaping

---

[4] Defendants do not here address whether this announcement was a violation of Georgia's Open Meetings Act as that claim has been stayed by this Court pending resolution of the action brought by the Georgia Attorney General.

the April 17, 2012 City Council meeting was a clear violation of the First Amendment, the cases are not so broad. Indeed, the cases reinforce the long standing principal that reasonable restrictions may be placed on expressive conduct in limited use public fora. Plaintiff has failed to show that the restriction was based on viewpoint or content (it was based on safety and decorum concerns) or that it was unreasonable (other forms of recording were available). Based on the above, Plaintiff's claim still fails as a matter of law and defendants are entitled to summary judgment on her First Amendment claim.

## C.    <u>Plaintiff's Fourth Amendment Rights Were Not Violated</u>

The Constitution, is not concerned with *de minimis* violations. <u>Porter v. Jewell</u>, 453 F. App'x 934, 937 (11th Cir. 2012). For there to be a seizure for purposes of the Fourth Amendment, there must be a "meaningful interference" with a person's liberty. <u>United States v. Jacobsen</u>, 466 U.S. 109, 113, 104 S. Ct. 1652, 1656, 80 L.Ed. 2d 85 (1984). A *de minimis* amount of interference does not rise to the level of a constitutional violation. <u>Porter</u>, 453 F. App'x at 937; <u>United States v. Hernandez</u>, 418 F.3d 1206, 1212, fn. 7 (11th Cir. 2005). Escorting Tisdale 15 feet to the back of the room where she could put her video camera should be viewed as a *de minimis* interference.

Further, personal property "has no fourth amendment rights. The fourth amendment, accordingly, is implicated only when a police seizure of an item impairs a person's possessory interest . . . " <u>United States v. Puglisi</u>, 723 F.2d 779,

785-86 (11th Cir. 1984). Even if a police action would constitute trespass at common law, it does not necessarily constitute a "seizure." United States v. Karo, 468 U.S. 705, 712-13, 104 S. Ct. 3296, 3302, 82 L. Ed. 2d 530 (1984) (holding "[t]he existence of a physical trespass is only marginally relevant to the question of whether the Fourth Amendment has been violated, however, for an actual trespass is neither necessary nor sufficient to establish a constitutional violation").

Here, construing the facts in the light most favorable to Defendants, as is required on plaintiff's motion for summary judgment, neither Chief Tatum nor Deputy Chief Cook initiated contact with plaintiff.[5] Both Chief Tatum and Deputy Chief Cook deny grabbing plaintiff, other witnesses testified they witnessed the exchange with Plaintiff and did not see them initiate contact with Plaintiff, and it is undisputed that Plaintiff, in fact, placed her hand on top of Chief Tatum's. (Tatum Depo., p. 58; Cook Depo., p. 24; Tisdale Depo., pg. 71; Deposition of Aldo Nahed, Ex. 2; Affidavit of Clyde Cook, ¶ 9; Affidavit of Jeff Davis, ¶¶ 6-8; Deposition of Patricia Hamby, p. 18; Affidavit of Patricia Hamby, ¶¶ 6-7). To the extent Plaintiff argues that her initiating physical contact with Chief Tatum by placing her hand on top of his constitutes a seizure of her person by Chief Tatum, such is clearly an absurd position. Regardless, even the degree of touching plaintiff claims would not rise to the level of a seizure.

_____

[5] Plaintiff has made no allegation that she or her camera were touched by the Mayor and it has not been alleged that Deputy Chief Cook touched Plaintiff's camera or tripod.

Because the Court must assume that the officers did not grab Tisdale for purposes of her motion and because even the level of touching she testified to would not be a constitutional violation, the only remaining issue is whether Chief Tatum's contact with Plaintiff's camera and/or tripod constituted a "seizure." However, considering that Plaintiff maintained contact with her camera through the exchange and the exchange lasted less than two minutes, Chief Tatum's action of moving Plaintiff's camera and tripod from one location in the Council Chamber to the back corner of the Council Chamber cannot be said to have interfered with Plaintiff's possessory interest in the camera and tripod. (Tisdale Depo., p. 71; Tatum Depo., pp. 55-56;Gravitt Depo., Ex. 4). Even if this were deemed to be a trespass, such does not convert Chief Tatum's action in to a constitutional violation. Because the movement of Plaintiff's camera and tripod by Chief Tatum was not a "seizure", Plaintiff is not entitled to summary judgment on this claim.

**D.** **The Individual Defendants Are Entitled to Qualified Immunity**

Even if Plaintiff could demonstrate facts to support a constitutional violation, the individual Defendants are entitled to qualified immunity. Qualified immunity shields a Section 1983 defendant from liability for harms arising from discretionary acts, so long as these acts do not violate clearly established federal statutory or constitutional rights of which a reasonable person would have known. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Only in exceptional cases will

government actors have no shield against claims made against them in their individual capacities. Id. Put otherwise, "[q]ualified immunity affords protection to all but the plainly incompetent or those who knowingly violate the law." Bates v. Harvey, 518 F.3d 1233, 1242 (11th Cir. 2008).

In order to overcome qualified immunity, a plaintiff has the burden to establish that a defendant's conduct violated a clearly established statutory or constitutional right. Saucier v. Katz, 533 U.S. 194, 201 (2001) (overturned on other grounds). To determine whether the law was clearly established, a court must look at whether the state of the law at the time of the action gave "fair and clear warning" to a reasonable person that their actions were unconstitutional. Hope v. Pelzer, 536 U.S. 730, 746 (2002); see also United States v. Lanier, 520 U.S. 259, 265 (1997) ("To make the warning fair, so far as possible the line should be clear.").

For the law to be clearly established to the point that qualified immunity does not apply, the law must have earlier been developed in such a concrete and factually defined context to make it obvious to all reasonable government actors in the defendant's place that what he is doing violates the law. Jenkins by Hall v. Talladega City Bd. of Educ., 115 F.3d 821, 823 (11th Cir. 1997). When no prior court has analyzed the application of the law to factually similar circumstances to the one at issue, government actors are entitled to qualified immunity because they "are not obligated to be creative or imaginative in drawing analogies from

previously decided cases." Id. In fact a "reasonable official's awareness of the existence of an abstract right does not equate to knowledge that his conduct infringes the right. Thus, if case law, in factual terms, has not staked out a bright line, qualified immunity almost always protects the defendant." Coffin v. Brandau, 642 F.3d 999, 1015 (11th Cir. 2011) (citations and punctuation omitted). Further, the law which should be analyzed should be the law of the Supreme Court of the United States and the Eleventh Circuit, so even if an off circuit case is factually similar to the situation confronting the government official, it does not constitute clearly established law for purposes of qualified immunity. See Terrell v. Smith, 668 F.3d 1244, 1255 (11th Cir. 2012).

Because Plaintiff does not appear to contest in her motion that the individual defendants' actions were discretionary, the focus will be on whether their actions violated a clearly established constitutional right. For the reasons explained in greater detail above, none of Tisdale's constitutional rights were violated. At the very least, there was no clearly established constitutional right to privately videotape a city council meeting nor was there a clearly established constitutional right not to have your camera moved from one location to another within the same room.

With regard to Plaintiff's First Amendment claim, although Plaintiff contends that the Eleventh Circuit case law clearly established a First Amendment right to videotape public meetings and that preventing Plaintiff from filming the

meeting of the Cumming City Council violated Plaintiff's rights, she has failed to identify any case law identifying this specific right. Additionally, her reliance on the law of other circuits is not even persuasive as that law would provide no clear warning to a government official in Georgia that his actions violated plaintiff's constitutional rights.

With regard to Eleventh Circuit case law, Plaintiff relies on cases which involve the ***right to videotape police conduct in public spaces***. <u>See</u> <u>Smith v. City of Cumming</u>, 212 F.3d 1332, 1333 (11th Cir. 2013); <u>WSB-TV v. Lee</u>, 842 F.2d 1266 (11th Cir. 1988); <u>Abella v. Smith</u>, 522 Fed. Appx. 872, 874 (11th Cir. 2013). These cases are clearly factually distinguishable, as Plaintiff was not attempting to videotape police conduct and the City Council meeting was a limited public forum, not a public forum. Additionally, the City videotapes its own meetings and those videos are publicly available and Plaintiff was still permitted to audio record the meeting and take still photographs. Further, the <u>WSB-TV</u> case is inapposite because the holding in that case centered around whether the plaintiff was entitled to greater discovery before being forced to respond to a motion for summary judgment.

Additionally, although Plaintiff cites to <u>Blackstone</u> for the proposition that "this Circuit has already specifically held that citizens' right to film includes recording government meetings," a close reading of <u>Blackstone</u> reveals that the Eleventh Circuit made no such broad ruling. 30 F.3d at120. In <u>Blackstone</u>, the

Eleventh Circuit considered whether plaintiffs stated a claim for a violation of their First Amendment rights based upon a restriction preventing them from videotaping a state commission meeting.

In finding that the plaintiffs arguably stated a claim, the Eleventh Circuit first stated that the prohibition on videotaping the meeting "***touched*** on expressive conduct protected by the Free Speech Clause of the First Amendment." Id. (emphasis added). Furthermore, the Eleventh Circuit specifically noted "[w]hile there is scant authority on the subject, [the government actor's] actions ***may*** be regarded as a 'time, place, and manner' restriction on expressive conduct." Id. at 120 (emphasis added). Notably, the Eleventh Circuit provided the explicit caveat that "the parties have not presented in this appeal any issues concerning immunity or qualified immunity." Id. at 121 n.2.

The above referenced equivocal statements cannot be said to have established a right sufficient to give "fair and clear warning" to a reasonable government official that imposing a restriction on videotaping a government meeting was unconstitutional. Hope, 536 U.S. at 746. Thus, Plaintiff's argument that Eleventh Circuit case law clearly established a First Amendment right to record government meetings is without merit.

Additionally, as noted above, since the City Council meeting was a limited public forum and no viewpoint restriction was involved, Mayor Gravitt's conduct is subject to a reasonableness analysis. In Thomas ex rel. Thomas v. Roberts, 323

F.3d 950, 954 (11th Cir. 2003), the Supreme Court held that "where the applicable legal standard is a highly general one, such as 'reasonableness,' preexisting case law that has applied general law to specific circumstances will almost always be necessary to draw a line that is capable of giving fair and clear notice that an official's conduct will violate federal law." Here, there is no Supreme Court or Eleventh Circuit case law providing Defendants with fair notice that regardless of the specific facts involved in the situation they were presented with on April 17, 2012, their conduct infringed Plaintiff's free speech rights. Accordingly, Plaintiff's motion for summary judgment should be denied because all of the individual defendants are entitled to qualified immunity.

With regard to Plaintiff's Fourth Amendment claim, Plaintiff has identified no case law which clearly stands for the proposition that it was unreasonable for Chief Tatum to jointly move Plaintiff's camera from one location in the Council Chamber to another. Because Plaintiff cannot demonstrate that it was clearly established that any of the individual defendants' behavior violated her constitutional rights, they are entitled to qualified immunity and plaintiff is not entitled to summary judgment on her claims.

## IV.  CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Partial Summary Judgment should be denied.

**FREEMAN MATHIS & GARY, LLP**

*/s/ Kathleen Sullivan Dod*
Dana K. Maine
Georgia Bar No. 466580
dmaine@fmglaw.com
Kathleen Sullivan Dod
Georgia Bar No. 142475
kdod@fmglaw.com

100 Galleria Parkway
Suite 1600
Atlanta, Georgia  30339-5948
(770) 818-0000 (telephone)
(770) 937-9960 (facsimile)

**MILES PATTERSON HANSFORD
TALLANT, LLC**

Dana B. Miles
Georgia Bar No. 505613
dmiles@mphtlaw.com
Kevin J. Tallant
Georgia Bar No. 696690
ktallant@mphtlaw.com

202 Tribble Gap Road
Suite 200
Cumming, GA 30040-2540
(770) 781-4100 (telephone)
(770) 781-9191 (facsimile)          Attorneys for Defendants

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1(D), the undersigned counsel hereby certifies that the foregoing brief was prepared in Times New Roman 14-point font, in compliance with Local Rule 5.1(C).

This 12th day of February, 2014.

FREEMAN  MATHIS & GARY, LLP


*/s/ Kathleen Sullivan Dod*
Kathleen Sullivan Dod
Georgia Bar No. 142475
kdod@fmglaw.com

100 Galleria Parkway
Suite 1600
Atlanta, Georgia 30339-5948
(770) 818-0000 (telephone)
(770) 937-9960 (facsimile)

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that I have this day electronically submitted the foregoing **BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT** to the Clerk of Court using the CM/ECF system which will automatically send electronic mail notification of such filing to counsel of record who is CM/ECF.

Gerald R. Weber Jr., Esq.
Law Office of Gerald Weber
P.O. Box 5391
Atlanta, GA 31107

Hollie Manheimer, Esq.
150 E. Ponce de Leon Avenue
Suite 230
Decatur, GA 30030

This the 12th day of February, 2014.

*/s/ Kathleen Sullivan Dod*
Kathleen Sullivan Dod
Georgia Bar No. 142475
kdod@fmglaw.com

FREEMAN MATHIS & GARY, LLP
100 Galleria Parkway
Suite 1600
Atlanta, Georgia  30339-5948
(770) 818-0000 (telephone)
(770) 937-9960 (facsimile)