IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

| | | |
|---|---|---|
| NYDIA TISDALE, | * | |
| | * | |
| Plaintiff, | * | CIVIL ACTION |
| | * | NO. 2:12-CV-00145-RWS |
| v. | * | |
| | * | |
| MAYOR H. FORD GRAVITT, | * | |
| individually and in his official capacity, | * | |
| CITY OF CUMMING, GEORGIA and | * | |
| POLICE CHIEF CASEY TATUM, | * | |
| individually and in his official capacity | * | |
| as Chief of Police for the City of | * | |
| Cumming, DEPUTY POLICE CHIEF | * | |
| WALTER COOK, individually, | * | |
| | * | |
| Defendants. | * | |
| | * | |

**PLAINTIFF'S REPLY BRIEF IN SUPPORT OF PARTIAL SUMMARY JUDGMENT ON FIRST AND FOURTH AMENDMENT AND OPEN MEETING ACT CLAIMS AGAINST ALL DEFENDANTS**

Plaintiff, Nydia Tisdale (Tisdale) files this Reply Brief on her motion for partial summary judgment as to liability of First and Fourth Amendment claims, as well as Open Meetings Act claims.

**I. MAYOR GRAVITT HAD THE POWER TO SET, AND DID SET, A POLICY BARRING FILMING OF PUBLIC MEETINGS**

Defendants repeat their argument that Mayor Gravitt's order to "remove the camera" because "[w]e don't allow filming inside of city hall" was not a

statement of policy or custom for municipal liability purposes. *Defs. Response S/J* at 6-9.

As previously noted, Charter Section 20 designates broad authority to the Mayor as "Chief Executive Officer" including sole authority to "preside at all meetings of the council" and set policies to "preserve order and decorum." Defendants have previously stated that he was doing just that when he barred filming. *Defs. S/J Brf.* at 13 ("Mayor was controlling the decorum of the Council meeting and he announced that Tisdale would not be permitted to videotape the meeting."). Mayor Gravitt viewed a "gray area" about whether videotaping was permitted, and made a self-described "policy" decision in the face of that gray area of the law under his sole authority over "decorum." *Id.* at 89, 104 (Q: "I believe you used the word 'policy' of the city to not allow cameras. Where did that policy derive from? A: It derived from me. It was my policy.") ("Q: And you were empowered to make that policy as Mayor overseeing the meeting, correct? A. I felt like I was."). And when Mayor Gravitt announced the new policy, he used language of general applicability: ""We don't allow filming." *Pls. Response S/J* at 2-5. No councilperson questioned (or has questioned) the new policy, or the process of its creation. *See Pembauer v. City of Cincinnati*, 475 U.S. 469, 483 (1986) (Phone-call instruction to "go in and get the witness" a policy decision).

Defendants do not attempt to even distinguish the decision in *Thompson v. City of Clio,* 765 F.Supp. 1066, 1068-71 (M.D. Ala. 1991) rejecting a City's motion for summary judgment in a similar case where a mayor barred taping of a council meeting was found to be a policy decision. *Id.* ("First, …mayor a[s] chair of the council, [had] the power to determine the rules and procedures that governed council sessions. Second, …. the council effectively ratified Cox's specific policy against Thompson's use of a tape recorder at council meetings…. Several if not all members of the council other than Cox and Thompson were present during these altercations, and apparently none objected to the proscription on Thompson's tape machine."). Defendants' silence is jarring as this Circuit cited the *Thompson* decision approvingly in *Smith v. City of Cumming*, 212 F.3d 1332, 1333 (11th Cir. 2000) ("The First Amendment protects the right to gather information about what public officials do on public property, and specifically, a right to record matters of public interest.") (*citing Thompson*).

Defendants instead cite *Cleveland v. City of Cocoa Beach, Florida*, in support of their argument that there was no custom of policy. 2003 WESTLAW 25739839 (M.D. Fla. 2003). The entire portion relied upon by Defendants is explicitly dicta. *Id.* at *4 n. 11 ("[T]he Court need not reach questions concerning custom or policy, immunity and punitive damages. Nevertheless, the Court will do so for

the sake of completeness."). In that case, the Mayor mistakenly stated that there was a "campaign free-zone" that prohibited the wearing of campaign shirts during the meeting. *Id.* at 4 ("It is clear as a matter of law that the Commission had never established a policy or custom prohibiting the display, in City Hall or at commission meetings, of visual campaign messages supporting candidates for city office.") Moreover, unlike here where the Mayor had several important powers including explicitly all policy-making to maintain "decorum," the Cocoa Beach Charter vested "[a]ll powers of the city … in the Commission…." *Id.*

Because Mayor Gravitt acted in an area for which he had sole authority under the Cumming Charter, because all witnesses testified that he had sole "policy" authority in that area, and because the council implicitly ratified his policy stated as "we don't allow filming;" Defendant-Cumming is subject to municipal liability.

## II. DEFENDANTS VIOLATED TISDALE'S FIRST RIGHT TO FILM BY PREVENTING FILMING AND SEIZING TISDALE AND HER CAMERA

Defendants argument as to the First Amendment repeats their then claim that the bar on filming was a mere "place" restriction under time, place and manner analysis. *Defs. Response S/J* at 9-14. Not so. "Although prohibitions foreclosing entire media may be completely free of content or viewpoint

discrimination, the danger they pose to the freedom of speech is readily apparent-by eliminating a common means of speaking, such measures can suppress too much speech." *City of Ladue v. Gilleo*, 512 U.S. 43, 55 (1994). As previously noted, the videotapes of the incident and testimony both show a bar on filming: (1) Mayor Gravitt issued a blanket bar on filming "(we don't allow filming"), (2) the officers took Tisdale to an area behind a wall where she could not film, (3) when she reentered and tried to film from a seat she was again barred, and (4) no one ever told her that location was a problem or offered her an alternative location. *Pls. Response S/J* at 5-10. Mayor Gravitt did not raise his "location" concern in media interviews, but somehow dreamed that rationale up by the time he was deposed. Given that the Mayor's testimony contradicts both his statements at the meeting and his interviews thereafter, he cannot now defeat summary judgment by dreaming up an alternative after-the-fact rationale. Nor can he succeed on time, place and manner analysis anyway as his restriction was not reasonable, and he did not offer up any alternative locale to film. *See Crowder v. Housing Auth. City of Atlanta*, 990 F.2d 591, 593 (11th Cir. 1993) (barring speaker's free speech activity from public fora not narrow tailoring).

Finally, as previously briefed, Eleventh Circuit case law clearly establishes a First Amendment right to film public meetings, and the order barring such

filming violated Tisdale's rights. Qualified immunity is no bar here. *Pls. S/J Brf.* at 9-15; *Pls. Response S/J* at 10-11. *See also Glik v. Cunniffe*, 655 F.3d 78 (1st Cir. 2011).

## II. DEFENDANTS VIOLATED TISDALE'S FOURTH AMENDMENT RIGHTS BY PREVENTING FILMING AND SEIZING TISDALE AND HER CAMERA

Defendants repeat their Fourth Amendment arguments that there was no seizure of Tisdale or her camera. They again concede a complete absence of even arguable probable cause as there was no crime alleged and the filming was specifically allowed under the Georgia Open Meetings Act. *Defs. Response S/J* at 14-16.

As previously argued, the camera was seized because, without any cause, it was rendered unable to fulfill its intended purpose by being dragged and taken to a location where Tisdale could not film the meeting. *Pls. S/J Brf.* at 15-18; *Pls. Response S/J* at 11-15. *See Thompson*, 765 F.Supp. at 1073 ("the complete lack of justification for the seizure, coupled with the fact that it denied Thompson an important use of his property, leads the court to conclude that Ramsey's removal of Thompson's tape recorder rose to the level of a violation of Thompson's fourth amendment rights). In this regard, it is important to note that Tisdale cameras were first moved to an area where she could not film, and then upon her re-entry

she was again barred from filming in a new, seated location.

As to the seizure of her person, Tisdale's prior briefing fully addresses the issue, and her prior briefing also fully addresses the factually similar Eleventh Circuit case law that involves seizure or persons and their property when trying to film and take down information on public officials in public places. *Pls. S/J Brf.* at 15-18; *Pls. Response S/J* at 11-17. *See Williamson v. Mills*, 65 F.3d 155 (11th Cir. 1995); *Thorton v. City of Macon*, 132 F.3d 1395, 1399-1400 (11th Cir. 1998); *Glik*, 655 F.3d at 88; *Childs v. Dekalb Cty.*, 286 Fed.Appx. 687 (11th Cir. 2008).

## CONCLUSION

For all the foregoing reasons, Plaintiff requests that her motion for partial summary judgment be granted.

DATED: This the 25th day of February, 2014.

Respectfully submitted,

/s Gerald Weber
Gerald Weber
Georgia Bar No.: 744878

Law Offices of Gerry Weber, LLC
Post Office Box 5391
Atlanta, Georgia 31107
(404) 522-0507/(404) 932-5845

/s Hollie Manheimer
Hollie Manheimer
Georgia Bar No. 468880

150 East Ponce de Leon Avenue
Suite 230
Decatur, Georgia 30030
(404) 377-0485

Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that I have this day electronically submitted the foregoing **PLAINTIFF'S REPLY BRIEF IN SUPPORT OF PARTIAL SUMMARY JUDGMENT ON FIRST AND FOURTH AMENDMENT AND OPEN MEETING ACT CLAIMS AGAINST ALL DEFENDANTS** to the Clerk of Court using the CM/ECF system which will automatically send electronic mail notification of such filing to counsel of record who are CM/ECF.

Dana K. Maine dmaine@fmglaw.com
James M. Dervin jdervin@fmglaw.com
Freeman Mathis & Gary, LLP
100 Galleria Pkwy., Suite 1600
Atlanta, Georgia 30339-5948

Dana B. Miles dmiles@mphtlaw.com
Kevin J. Tallant ktallant@mphtlaw.com
202 Tribble Gap Road, Suite 200
Cumming, GA 30040-2540

DATED: This the 25th day of February, 2014.

/s Gerald Weber

Gerald Weber