# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# GAINESVILLE DIVISION

| | | |
|---|---|---|
| NYDIA TISDALE, | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION |
| | ) | NO. 2:12-CV-00145-RWS |
| v. | ) | |
| | ) | |
| MAYOR H. FORD GRAVITT, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## DEFENDANTS' REPLY MEMORANDUM OF LAW
## IN SUPPORTOF MOTION FOR SUMMARY JUDGMENT

COME NOW defendants and file this reply brief in further support of their motion for summary judgment and show the Court as follows:

## I. INTRODUCTION

In her attempt to avoid summary judgment, plaintiff unsuccessfully attempts to distinguish case law negative to her case, misstates the language of the City Charter and the powers it grants to the Mayor, inappropriately relies on the case law of other districts or circuits in her attempt to defeat qualified immunity, and attempts to belatedly amend her pleadings through a brief. Even assuming all facts

in plaintiff's favor, she still has not established that she is entitled to avoid summary judgment against her.[1]

## II. ARGUMENT AND CITATION TO AUTHORITY

**A.    The City Is Entitled to Summary Judgment Because The Mayor Does Not Have Authority to Make a Policy About Video Recording**

It is well settled that a municipality cannot be liable for the actions of its officers under 42 U.S.C. § 1983 under the doctrine of *respondeat superior* unless the violation was inflicted pursuant to a governmental policy or custom. Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 691, 98 S. Ct. 2018, 2036, 56 L. Ed. 2d 611 (1978). In fact, it is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality. Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown, 520 U.S. 397, 404, 117 S. Ct. 1382, 1388, 137 L. Ed. 2d 626 (1997). The plaintiff must also demonstrate that, through its *deliberate* conduct, the municipality was the "moving force" behind the injury alleged. Id.

Indeed, even the case relied upon by plaintiff, Pembaur v. City of Cincinnati, 475 U.S. 469, 481-84, 106 S. Ct. 1292, 1299-300 (1986), holds that "[m]unicipal liability attaches only when the decision-maker possesses final authority to establish municipal policy with respect to the action ordered."

---

[1] Defendants incorporate by reference all facts and arguments presented in their principal brief as well as their opposition to plaintiff's motion for summary judgment.

Plaintiff's response confuses and conflates two issues: (1) whether the Mayor told plaintiff she could not video record the meeting; and (2) whether the Mayor had the "final authority" to establish a policy that video recording of meetings was disallowed. It is undisputed that the Mayor instructed plaintiff not to video record the meeting and that he even believed he had the authority to do so. (Deposition of Nydia Tisdale ("Tisdale Depo."), p. 42; Deposition of H. Ford Gravitt ("Gravitt Depo.,"), p. 83).[2] It is also undisputed that prior to this meeting there was no formal or informal policy adopted regarding the video recording of meetings. (Compare Defendants' Statement of Material Facts as to Which There is No Genuine Issue to Be Tried ("Defendants' Statement"), ¶ 6; Plaintiff's Response to Defendants' Statement of Material Facts as to Which There is No Genuine Issue to Be Tried ("Plaintiff's Response Statement"), ¶ 6).

Although plaintiff denied that this was the first time anyone had ever attempted to video record the meeting, she cites no record evidence which actually supports such denial. (Compare Defendants' Statement, ¶ 7; Plaintiff's Response Statement, ¶ 7). Consequently, even though the Mayor loosely used the term "policy" when addressing plaintiff, the presence of a private video camera was a novel situation being addressed ad hoc by the Mayor in the moment.

---

[2] All depositions cited in this brief were previously filed with this Court. [Docs. 66-68, 74-76, 78-79].

3

Plaintiff would have this Court believe that the Mayor's opinion about the scope of his powers indeed defines the scope of his powers rather than the City Charter.[3] Even more far-fetched, plaintiff suggests that the impressions of those present at the meeting is in some way relevant to the actual scope of the Mayor's powers. Either the Mayor or the citizens of Cumming could misunderstand the scope of the Mayor's power and it would be absurd if such misunderstanding served to amend the clearly contrary terms of the City Charter. Here, the City Charter outlines and limits the Mayor's powers. Section 20 of the City Charter defines the authority of the mayor to *enforce* existing policy and oversee meetings. Plaintiff repeatedly states that the Charter grants the Mayor authority to "set policies to 'preserve order and decorum,'" but a review of the actual language does not support such a reading.

> He shall see that all laws, ordinances, resolutions, and rules of said city are faithfully, fully, and impartially executed and enforced . . . He shall have general supervision and jurisdiction of the affairs of said city, and shall preside at all meetings of the city council; and shall preserve order and decorum, *shall enforce the rules and regulations of the body*.

(City Charter)(emphasis added).

Indeed, Section 3 of the Charter provides that:

---

[3] A certified copy of the City Charter was previously filed with this Court. [Doc 63-2].

4

> [T]he municipal government of said City of Cumming shall be vested in a mayor and five councilmen, that the mayor and the councilmen shall be collectively known as the "City Council of Cumming," and shall be the supreme governing body, exercising all powers herein conferred upon the corporation and not otherwise specifically delegated.

(City Charter). Additionally, Section 19 provides that:

> [T]he mayor or mayor pro tem and three councilman shall constitute a quorum for the transaction of business, and a majority of votes shall determine questions before them; provided, that the mayor or the mayor pro tem, is he is presiding in the place of the mayor, shall vote only in the case of a tie vote.

(City Charter). Thus, it is clear from the City Charter that all final City policies are determined by the City Council on a majority basis. Contrary to plaintiff's assertion, there is nothing to support her conclusion that the Mayor has the ability to adopt policies, of any nature, which have not been voted on by the City Council. Despite the Mayor's poor word choice in referencing a "policy," plaintiff's attempt to construe the terms of the Charter to grant the Mayor policy-making authority is simply not supported by the text of the Charter.

Because, per the terms of the City Charter, the Mayor cannot establish a policy regarding video recording, no liability attaches to the City of Cumming for the Mayor's actions and the City is entitled to summary judgment on plaintiff's claims.

5

## B. The Individual Defendants Are Entitled to Qualified Immunity on Plaintiff's First Amendment Claim

Plaintiff did not have a First Amendment right to privately videotape the Council meeting from the center aisle of the Council chamber. The freedom of expression protected by the First Amendment is not inviolate; the Supreme Court has established that the First Amendment does not guarantee persons the right to communicate their views "at all times or in any manner that may be desired." Cleveland v. City of Cocoa Beach, Florida, 221 F. App'x 875, 877-78 (11th Cir. 2007). Restrictions can be placed on the time, place, and manner of speech. Id.[4] There are three categories of fora, and a city council meeting is designated as a limited use public fora. Id. While defendants contend that plaintiff's First Amendment rights were not violated, even if they were, the defendants are entitled to qualified immunity unless the government officials violated clearly established federal statutory or constitutional rights of which a reasonable person would have known. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).

---

[4] Defendants admit that the Mayor's restriction was a complete prohibition on the manner of videotaping the meeting, but it was not an absolute prohibition on the time, place or manner because plaintiff was permitted to audio record the meeting and take still photographs of it. (Gravitt Depo., Ex. 4). Further, it is undisputed the City was recording the meeting itself. (Compare Defendants' Statement, ¶ 2; Plaintiff's Response Statement, ¶ 2).

For the law to be clearly established to the point that qualified immunity does not apply, the law must have earlier been developed in such a concrete and factually defined context to make it obvious to all reasonable government actors in the defendant's place that what he is doing violates the law. Jenkins by Hall v. Talladega City Bd. of Educ., 115 F.3d 821, 823 (11th Cir. 1997).

Regardless of the level of scrutiny applied, plaintiff has not cited to any Eleventh Circuit or Supreme Court case law which clearly establishes a constitutional right to video tape a city council meeting. See Terrell v. Smith, 668 F.3d 1244, 1255 (11th Cir. 2012) (holding that the law which should be analyzed should be the law of the Supreme Court of the United States and the Eleventh Circuit, so even if an off circuit case is factually similar to the situation confronting the government official, it does not constitute clearly established law for purposes of qualified immunity).[5] The only on-circuit cases to which plaintiff refers involved prohibitions of filming on public streets, which do not have the "limited

---

[5] An important fact which distinguishes the (non-binding) case of Thompson v. City of Clio is that the plaintiff in that case was prohibited from recording the meeting in any fashion and the prohibition was content based and targeted to the plaintiff given a perception that he used the recording in a misleading fashion. 765 F.Supp 1066 (M.D. Ala. 1991). Here, plaintiff was informed she could audio record the meeting and take still photographs and there is no evidence that the restriction was targeted against Tisdale or her message. (Gravitt Depo., Ex. 4). Further, it is undisputed the City was recording the meeting itself. (Compare Defendants' Statement, ¶ 2; Plaintiff's Response Statement, ¶ 2).

7

use" designation that a city council meeting has. Consequently, it was not clearly established pursuant to Eleventh Circuit or Supreme Court law that plaintiff had a right to video tape in a limited use public fora. For this reason, not only were plaintiff's First Amendment rights not violated, defendants are entitled to qualified immunity on plaintiff's First Amendment claim.

C.  **The Individual Defendants Are Entitled to Qualified Immunity as to Plaintiff's Fourth Amendment Claim**

The Constitution is not concerned with *de minimis* violations. Porter v. Jewell, 453 F. App'x 934, 937 (11th Cir. 2012). For there to be a seizure for purposes of the Fourth Amendment, there must be a "meaningful interference" with a person's liberty. United States v. Jacobsen, 466 U.S. 109, 113, 104 S. Ct. 1652, 1656 (1984). A *de minimis* amount of interference does not rise to the level of a constitutional violation. Porter, 453 F. App'x at 937; United States v. Hernandez, 418 F.3d 1206, 1212, fn. 7 (11th Cir. 2005). Plaintiff argues that the cases relied upon by defendants to establish that any intrusion on her constitutional rights was *de minimis* are inapposite because the cases did not involve "touching, or repeated orders and here there was a clear submission to officer demands." There is nothing in these cases to indicate that the holding was dependent on the lack of these elements, so plaintiff's distinction is one which makes no difference.

Further, the case upon which plaintiff primarily relies to establish that the law was clearly established that plaintiff's camera could not be removed from the Council chamber is from the Middle District of Alabama, however, the only case law which is appropriate for this Court to consider for purposes of qualified immunity is Supreme Court and Eleventh Circuit case law. Terrell, 668 F.3d at 1255. Plaintiff has still pointed to no such case law which clearly establishes that her Fourth Amendment rights were violated by defendants, therefore, they are entitled to qualified immunity on plaintiff's Fourth Amendment claim.[6]

## D. Defendants Are Entitled to Summary Judgment on Plaintiff's State Law Tort Claims

### 1. Defendants Did Not Receive a Timely Ante Litem Notice

In order for ante litem notice to be compliant, it must be addressed to and received by the municipality or one of its departments or officials. Chiles v. City of Smyrna, 146 Ga. App. 260, 263, 246 S.E.2d 117, 120 (1978). Here, in response to defendants' motion for summary judgment, plaintiff attached an unsigned letter

---

[6] Plaintiff has pointed to no binding case law which instructs that the Mayor is responsible for any Fourth Amendment violations committed by the officers. The only case from this Circuit upon which plaintiff relies is an excessive force case which is distinguishable because it is clearly established that an excessive use of force violates a person's constitutional rights. Skritch v. Thorton, 280 F.3d 1295 (11th Cir. 2000). Indeed, "[i]t is well established in this circuit that supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of *respondeat superior* or vicarious liability." Smith ex rel. Smith v. Siegelman, 322 F.3d 1290, 1295 (11th Cir. 2003).

9

purportedly transmitted to the Mayor providing notice of her claim. The Mayor, however, has no recollection of receiving this document and a review of the City's records and the Mayor's records did not turn up this document. (Declaration of H. Ford Gravitt).[7] This document was never produced in discovery even though it was responsive to requests served by both plaintiff and defendants. Had plaintiff served such a document, defendants would have realized there was a dispute as to the issue of ante litem notice. Additionally, the fact that defendants did not produce such a document should have instructed plaintiff that defendants did not receive the ante litem notice.[8] Because the City did not receive any ante litem notice from plaintiff, defendants are entitled to summary judgment on those claims.

### 2. **Plaintiff Did Not Plead State Law Claims Which Provide a Civil Recovery**

On September 13, 2012, this Court entered a Scheduling Order which included deadlines for amending the pleadings. [Doc 15]. Although this Scheduling Order was amended as to discovery and briefing schedules, it was never amended as to the deadline by which the pleadings must be amended. Plaintiff never filed a motion with this Court seeking permission to amend her complaint. In her complaint, plaintiff clearly identifies criminal statutes under

---

[7] The Declaration of H. Ford Gravitt is attached as an exhibit hereto.
[8] Defendants' counsel are not contending that plaintiff's counsel is being dishonest with the Court, rather defendants are simply stating that the letter was not received.

which she attempts to seek civil remedies. Indeed, plaintiff's claim that these statutes were identified simply for "reference" rings hollow as plaintiff re-stated the criminal statutes and omitted the civil statutes in her Initial Disclosures. [Doc. 17]. Now that defendants moved for summary judgment on these claims as a result of her reliance on law which provides no civil remedy, she attempts to amend her pleadings by way of her response brief and for the first time identifies new statutes upon which she seeks to base her recovery.

Plaintiff's complaint clearly identifies the law upon which she bases her claim and this Court should not permit plaintiff to belatedly amend her complaint without seeking leave of this Court through a brief in opposition to a motion for summary judgment.[9] In fact, even if this Court construes plaintiff's response as a motion to amend, it should be denied given the belated phase of the litigation. See e.g. S. Grouts & Mortars, Inc. v. 3M Co., 575 F.3d 1235, 1239-40 (11th Cir. 2009); Smith v. Sch. Bd. of Orange Cnty., 487 F.3d 1361, 1367 (11th Cir. 2007) (both cases finding no error in denying motion to amend complaint which was filed after motion for summary judgment). Because the state laws relied upon by plaintiff do

---

[9] To the extent this Court permits plaintiff to amend her complaint to assert statutory bases of relief which were never previously identified, defendants would seek leave of this Court to file an additional brief addressing the substance of those belated claims.

not provide for a civil remedy, defendants are entitled to summary judgment on those claims.

**E.**     **The Individual Defendants Are Entitled to Official Immunity**

Official immunity provides that while public employees may be personally liable for negligent ministerial acts, they may not be held liable for discretionary acts unless they act with actual malice. Banks v. Happoldt, 271 Ga. App. 146, 148, 608 S.E.2d 741, 744 (2004). In the context of official immunity, "actual malice requires a deliberate intention to do wrong and denotes express malice or malice in fact." Adams v. Hazelwood, 271 Ga. 414, 414-15 (1999) (internal citations and punctuation omitted). The phrase "actual intent to cause injury" has been defined in a tort context to mean an actual intent to cause harm to the plaintiff, not merely an intent to do the act purportedly resulting in the claimed injury. Selvy v. Morrison, 292 Ga. App. 702, 705, 665 S.E.2d 401, 405 (2008). This definition of intent contains aspects of malice, perhaps a wicked or evil motive. Id. While ill will may be an element of actual malice in many factual situations, its presence alone cannot pierce official immunity; rather, ill will must also be combined with the intent to do something wrongful or illegal. Payne v. DeKalb County, 414 F. Supp. 2d 1158, 1183 (N.D. Ga. 2004) (internal citations omitted). Even conduct

exhibiting a reckless disregard for the safety of others does not equate with the actual malice necessary to defeat a claim of official immunity. Id.

Plaintiff does not contend the individual defendants' actions were ministerial, rather she only argues that there was evidence of malice on the part of the individual defendants. However, the record evidence belies plaintiff's contention. Indeed, all of the individual defendants testified about their lack of malice at the time of their encounter with plaintiff as they all believed they were acting within the confines of the law. Mayor Gravitt mistakenly believed he was permitted to create a policy which restricted plaintiff's video recording. (Gravitt Depo., pg. 83). Chief Tatum also believed at the time that he had been given a lawful order by the Mayor to remove the camera. (Deposition of Casey Tatum ("Tatum Depo."), pp. 45-46). In fact, none of the individual defendants had ever reviewed the Open Meetings Act prior to the incident. (Gravitt Depo., pp. 71, 89; Deposition of Walter Cook ("Cook Depo."), pp. 8, 29-30; Tatum Depo., pp. 35-36). Not only were the defendants unfamiliar with the Open Meetings Act, both the Mayor and Chief Tatum testified that they were unfamiliar with plaintiff prior to the date of the incident as neither of them had any prior contact with her, let alone animosity. (Gravitt Depo., pg. 64; Tatum Depo., pg. 30).

Further, both Chief Tatum and Deputy Chief Cook were clear that if they believed they had been given an unlawful directive, they likely would have discussed it with the Mayor before abiding by the directive (which did not happen here), which further evidences the lack of malice towards plaintiff. (Cook Depo., pp. 14-15; Tatum Depo., pp. 65-66). Simply put, regardless of whether the individual defendants had the authority to act in the manner they did, they all believed they were acting lawfully towards her and there is no evidence they had any ill will towards plaintiff.

Plaintiff is correct that she belatedly is attempting to assert intentional civil state law torts against the individual defendants, however, the record evidence does not demonstrate any malice that is required to overcome the individual defendants' official immunity defense. For this reason, they are entitled to summary judgment on plaintiff's attempted state law tort claims.

### III. CONCLUSION

For the foregoing reasons, defendants are entitled to summary judgment as a matter of law on all of plaintiff's claims.

**FREEMAN MATHIS & GARY, LLP**

*/s/ Kathleen Sullivan Dod*
Dana K. Maine
Georgia Bar No. 466580
dmaine@fmglaw.com

Kathleen Sullivan Dod
Georgia Bar No. 142475
kdod@fmglaw.com

100 Galleria Parkway
Suite 1600
Atlanta, Georgia 30339-5948
(770) 818-0000 (telephone)
(770) 937-9960 (facsimile)

**MILES PATTERSON HANSFORD TALLANT, LLC**

Dana B. Miles
Georgia Bar No. 505613
dmiles@mphtlaw.com
Kevin J. Tallant
Georgia Bar No. 696690
ktallant@mphtlaw.com

202 Tribble Gap Road
Suite 200
Cumming, GA 30040-2540
(770) 781-4100 (telephone)
(770) 781-9191 (facsimile)    Attorneys for Defendants

# CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1(D), the undersigned counsel hereby certifies that the foregoing brief was prepared in Times New Roman 14-point font, in compliance with Local Rule 5.1(C).

This 3rd day of March, 2014.

FREEMAN MATHIS & GARY, LLP


*/s/ Kathleen Sullivan Dod*
Kathleen Sullivan Dod
Georgia Bar No. 142475
kdod@fmglaw.com

100 Galleria Parkway
Suite 1600
Atlanta, Georgia 30339-5948
(770) 818-0000 (telephone)
(770) 937-9960 (facsimile)

# CERTIFICATE OF SERVICE

I hereby certify that I have this day electronically submitted the foregoing **DEFENDANTS' REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** to the Clerk of Court using the CM/ECF system which will automatically send electronic mail notification of such filing to counsel of record who is CM/ECF.

> Gerald R. Weber Jr., Esq.
> Law Office of Gerald Weber
> P.O. Box 5391
> Atlanta, GA 31107
>
> Hollie Manheimer, Esq.
> 150 E. Ponce de Leon Avenue
> Suite 230
> Decatur, GA 30030

This the 3rd day of March, 2014.

> */s/ Kathleen Sullivan Dod*
> Kathleen Sullivan Dod
> Georgia Bar No. 142475
> kdod@fmglaw.com

FREEMAN MATHIS & GARY, LLP
100 Galleria Parkway
Suite 1600
Atlanta, Georgia 30339-5948
(770) 818-0000 (telephone)
(770) 937-9960 (facsimile)
914547