# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## GAINESVILLE DIVISION

NYDIA TISDALE,                                  :
                                                :
    Plaintiff,                          :
                                                :
    v.                                  :    CIVIL ACTION NO.
                                                :    2:12-CV-00145-RWS
MAYOR H. FORD GRAVITT,                          :
both individually and in his official           :
capacity, CITY OF CUMMING,                      :
GEORGIA and POLICE CHIEF                        :
CASEY TATUM, both                               :
individually and in his official                :
capacity as Chief of Police for the             :
City of Cumming, DEPUTY                         :
POLICE CHIEF WALTER                             :
COOK, individually,                             :
                                                :
    Defendants.                         :

## <u>ORDER</u>

    This case comes before the Court on Defendants' Motion for Summary

Judgment [63], Plaintiff's Motion for Partial Summary Judgment on First and

Fourth Amendment and Open Meeting Act Claims Against All Defendants [69],

and Plaintiff's Consent Request for Redaction [84]. As an initial matter, the

Request for Redaction [84] is **GRANTED**.

**Background**

This case arises out of an incident that took place when Plaintiff attended a meeting of the Cumming City Council on April 17, 2012 (the "City Council Meeting"). The facts in this case are largely undisputed. Plaintiff attended the City Council meeting planning to video record the proceedings to post on her website, AboutForsyth.com. Plaintiff set up her video camera and tripod in the center aisle of the auditorium in City Hall. (Defs.' Statement of Material Facts ("SOMF"), Dkt. [63-4] ¶ 4.)

When the meeting began, Defendant Mayor Ford Gravitt asked Defendant Police Chief Casey Tatum to remove Plaintiff's video camera from the auditorium, announcing, "We don't allow filming inside of the city hall here unless it's specific reasons, so if you would remove the camera." (Pl.'s SOMF, Dkt. [69-1] ¶ 5; Defs.' SOMF, Dkt. [63-4] ¶ 10.) Plaintiff did not immediately comply; she attempted to explain that Georgia law permits video recording meetings and requested that Mayor Gravitt consult the City Attorney. (Pl.'s SOMF, Dkt. [69-1] ¶ 6.) Mayor Gravitt replied that filming was not up for discussion, and again directed that the camera be removed. (Id.)

AO 72A
(Rev.8/82)

Police Chief Tatum then grabbed Plaintiff's tripod in order to remove the camera from the auditorium.  (Defs.' SOMF, Dkt. [63-4] ¶ 15.)   While it is clear that at this point an altercation took place between Plaintiff and Tatum, the facts regarding the altercation are largely in dispute.  According to Plaintiff, Tatum also grabbed Plaintiff's arm.  (Pl.'s SOMF, Dkt. [69-1] ¶ 9.)  Defendants deny that Tatum touched Plaintiff.  (Defs.' SOMF,  Dkt. [63-4] ¶ 19.)  Tatum, followed by Deputy Police Chief Walter Cook, escorted Plaintiff to the back of the room.  (Pl.'s SOMF, Dkt. [69-1] ¶ 15; Defs.' SOMF,  Dkt. [63-4] ¶ 23.)  Then, Plaintiff exited the council chamber.  (Pl.'s SOMF, Dkt. [69-1] ¶ 18; Defs.' SOMF,  Dkt. [63-4] ¶ 27.)  Plaintiff remained outside the council chamber for a short time, and then reentered the council chamber while the meeting was still in progress.  (Defs.' SOMF, Dkt. [63-4] ¶ 29.)

Plaintiff took a seat in the front row of the council chamber.  (Tisdale Depo., Dkt. [66] at 66-67.)  She began audio recording the meeting and took still photographs with a smaller camera.  (Id. at 67.)  Plaintiff also took some moving images with her smaller camera.  (Id.; Pl.'s SOMF, Dkt. [69-1] ¶ 30.)  At that point, Deputy Police Chief Cook again told Plaintiff to stop recording, per the Mayor's earlier direction.  (Tisdale Depo., Dkt. [66] at 66-67; Cook

3

Depo., Dkt. [73-4] at 33-34.)  Plaintiff remained in her seat for the remainder of the meeting.  (Defs.' SOMF, Dkt. [63-4] ¶ 29.)

Plaintiff initiated this action, raising federal and state law claims against the entity Defendant the City of Cumming, Georgia, and the following individual Defendants: (1) Mayor H. Ford Gravitt, individually and in his official capacity as Mayor of the City of Cumming, Georgia; (2) Police Chief Casey Tatum, individually and in his official capacity as Police Chief for the City of Cumming, Georgia; and (3) Deputy Police Chief Walter Cook, individually.  (Compl., Dkt. [1].)

Against the foregoing Defendants, Plaintiff asserts the following claims for relief.  Pursuant to 42 U.S.C. § 1983, Plaintiff raises claims for violation of freedom of speech as protected by the First and Fourteenth Amendments and violation of the Fourth and Fourteenth Amendments' prohibition against unreasonable search and seizure.  (Id. ¶¶ 21-22.)  Plaintiff also raises claims under the provisions of the Georgia Constitution pertaining to free speech and unreasonable seizure.  (Id.)  Additionally, Plaintiff raises claims under Georgia law for false imprisonment; false imprisonment under color of legal process; battery; and violation of the Georgia Open Meetings Act.  (Id. ¶¶ 20, 23-25.)

Finally, Plaintiff seeks declaratory and injunctive relief allowing her to attend and film Cumming City Council meetings. (Id. ¶ 26.)

In a case in Georgia Superior Court arising out of the same incident at the April 17, 2012 Cumming City Council meeting, the Georgia Attorney General filed a complaint against Mayor Gravitt, individually and in his official capacity as Mayor of the City of Cumming, and the City of Cumming for violations of the Georgia Open Meetings Act, O.C.G.A. § 50-14-1 *et seq.*. (See Pl.'s Notice of Supp. Auth., Dkt. [91].) The Forsyth Superior Court granted Summary Judgment in favor of the Attorney General, holding that Mayor Gravitt and the City of Cumming violated the Open Meetings Act in three separate acts: "(1) they wrongfully prevented [Plaintiff] from video recording a meeting at the start of the meeting; (2) they wrongfully removed [Plaintiff] from the meeting when she had done nothing wrong; and (3) they wrongfully prevented [Plaintiff] from later videotaping the meeting, without sound, using a different camera.". (See id. at 8. (Olens v. Gravitt, 12-CV-1205 (Forsyth Sup. Ct. Aug. 8, 2014)).)

Defendants now move for summary judgment on each count in the present case [63], and Plaintiff moves for summary judgment on liability for First and Fourth Amendment and Open Meetings Act violations [69]. After

5

setting out the legal standard governing motions for summary judgment, the Court considers the parties' respective motions in turn.

## Discussion

## I.      Legal Standard - Summary Judgment

Federal Rule of Civil Procedure 56 requires that summary judgment be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  "The moving party bears 'the initial responsibility of informing the . . . court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'"  Hickson Corp. v. N. Crossarm Co., 357 F.3d 1256, 1259 (11th Cir. 2004) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal quotations omitted)).  Where the moving party makes such a showing, the burden shifts to the non-movant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257  (1986).

6

The applicable substantive law identifies which facts are material. Id. at

248. A fact is not material if a dispute over that fact will not affect the outcome

of the suit under the governing law. Id. An issue is genuine when the evidence

is such that a reasonable jury could return a verdict for the non-moving party.

Id. at 249-50.

In resolving a motion for summary judgment, the court must view all

evidence and draw all reasonable inferences in the light most favorable to the

non-moving party. Patton v. Triad Guar. Ins. Corp., 277 F.3d 1294, 1296 (11th

Cir. 2002). But, the court is bound only to draw those inferences which are

reasonable. "Where the record taken as a whole could not lead a rational trier

of fact to find for the non-moving party, there is no genuine issue for trial."

Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997) (quoting

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

"If the evidence is merely colorable, or is not significantly probative, summary

judgment may be granted." Anderson, 477 U.S. at 249-50 (internal citations

omitted); see also Matsushita, 475 U.S. at 586 (once the moving party has met

its burden under Rule 56(a), the nonmoving party "must do more than simply

show there is some metaphysical doubt as to the material facts").

AO 72A
(Rev.8/82)

Finally, the filing of cross-motions for summary judgment does not give rise to any presumption that no genuine issues of material fact exist. Rather, "[c]ross-motions must be considered separately, as each movant bears the burden of establishing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law." Shaw Constructors v. ICF Kaiser Eng'rs, Inc., 395 F.3d 533, 538-39 (5th Cir. 2004).

**II.     Plaintiff's Federal Law Claims**

As stated in the Background section, *supra*, Plaintiff raises claims against Defendants for violation of her right to freedom of speech under the First Amendment and violation of the Fourth Amendment's prohibition against unreasonable search and seizure, as well as Georgia constitutional claims and state law claims for false imprisonment, battery, and violations of the Open Meetings Act. Defendants move for summary judgment on all claims; Plaintiff moves for summary judgment on Defendants' liability for her federal constitutional and her Georgia Open Meetings Act claims. The Court first considers Plaintiff's federal law claims before turning to her state law claims.

8

A.    Plaintiff's First Amendment Claims

Pursuant to 42 U.S.C. § 1983, Plaintiff claims a right under the First

Amendment to film the Cumming City Council meetings.  Under 42 U.S.C. §

1983,

> Every person who, under color of any statute, ordinance,
> regulation, custom, or usage, of any State or Territory or the
> District of Columbia, subjects, or causes to be subjected, any
> citizen of the United States or other person within the jurisdiction
> thereof to the deprivation of any rights, privileges, or immunities
> secured by the Constitution and laws, shall be liable to the party
> injured in an action at law, suit in equity, or other proper
> proceeding for redress . . .

"In order to prevail in a civil rights action under Section 1983, 'a plaintiff must

make a prima facie showing of two elements: (1) that the act or omission

deprived plaintiff of a right, privilege or immunity secured by the Constitution

or laws of the United States, and (2) that the act or omission was done by a

person acting under color of law.'"  Marshall Cnty. Bd. of Educ. v. Marshall

Cnty. Gas Dist., 992 F.2d 1171, 1174 (11th Cir. 1993) (quoting Bannum, Inc.

v. City of Ft. Lauderdale, 901 F.2d 989, 996-97 (11th Cir. 1990)).

Relying on WSB-TV v. Lee, 842 F.2d 1266 (11th Cir. 1988) and Smith

v. City of Cumming, 212 F.3d 1332 (11th Cir. 2000), Plaintiff asserts that

filming public officials in public places is a protected form of expression. Plaintiff argues that Mayor Gravitt's "blanket bar" on filming violated the First Amendment.  (See Pl.'s MSJ Br., Dkt. [69-2] at 14.)

Defendants respond that any restriction on video recording at the City Council meeting was a reasonable time, place, and manner restriction.  (Defs.' Mem. of Law in Support of MSJ ("MSJ Br."), Dkt. [63-1] at 11.)  Defendants contend that Defendant Gravitt's restriction on filming was reasonable and content neutral, and as such did not violate Plaintiff's constitutional rights.  (Id. at 13.)  For the reasons provided below, the Court concludes that Plaintiff has provided sufficient evidence to create a genuine issue of material fact whether Defendants' restriction on video recording unconstitutionally abridges speech in violation of the First Amendment.

As an initial matter, the Court agrees that Plaintiff has a First Amendment interest in filming public officials at a public meeting.  Smith v. City of Cumming, 212 F.3d 1332, 1333 (11th Cir. 2000) ("The First Amendment protects the right to gather information about what public officials do on public property, and specifically, a right to record matters of public interest.").  Prohibiting Plaintiff from video recording the meeting–even while permitting

her to attend the meeting, take notes, or make audio recordings–impacted how she was able to obtain access to and present information about the City Council and its proceedings.  See Blackston v. State of Ala., 30 F.3d 117, 120 (11th Cir. 1994).

As the Eleventh Circuit has consistently recognized, "[t]he freedom of expression protected by the First Amendment is not inviolate."  Rowe v. City of Cocoa, Fla., 358 F.3d 800, 802 (11th Cir. 2004).  "[T]he First Amendment does not guarantee persons the right to communicate their views 'at all times or in any manner that may be desired.'"  Jones v. Heyman, 888 F.2d 1328, 1331 (11th Cir. 1989) (quoting Heffron v. Int'l Soc'y for Krishna Consciousness, 452 U.S. 640, 647 (1981)).  The Eleventh Circuit has held that city council meetings are "limited" public fora.  Rowe, 358 F.3d at 802.  "[T]he government may restrict access to limited public fora by content-neutral conditions for the time, place, and manner of access, all of which must be narrowly tailored to serve a significant government interest."  Id. at 803 (citing Perry Educ. Ass'n v. Perry Local Educators Ass'n, 460 U.S. 37, 46 n. 7 (1983)) (other internal citations omitted).  Additionally, the Eleventh Circuit has consistently recognized that

AO 72A
(Rev.8/82)

the government has a significant interest in "conducting orderly, efficient meetings of public bodies." Id. (citing Jones, 888 F.2d at 1332).

Nevertheless, the Court finds that Plaintiff has presented sufficient evidence to create an issue of fact as to whether the restriction on video recording was narrowly tailored to serve the City of Cumming's significant government interest. To meet the narrow tailoring requirement, the regulation of speech "need not be the least restrictive or least intrusive means of doing so. Rather, the requirement of narrow tailoring is satisfied so long as the regulation promotes a substantial government interest which would be achieved less effectively absent the regulation." One World One Family Now v. City of Miami Beach, 175 F.3d 1282, 1287 (11th Cir. 1999) (quoting Ward v. Rock Against Racism, 491 U.S. 781, 781(1989)) (internal modifications omitted). However, "this does not mean that a time, place, or manner regulation may burden substantially more speech than is necessary to further the government's legitimate interests." Id. (quoting Ward, 491 U.S. at 799).

Based on this record, the Court finds that a reasonable jury could conclude that Mayor Gravitt's restrictive policy announced at the April 17, 2012 meeting was a total ban on filming in City Council meetings. If the

12

restriction was a total ban, it burdens more speech than necessary to further the City's interest in maintaining order and efficiency at its City Council meetings; consequently, the restriction was not narrowly tailored to serve the government interest. Because Plaintiff–the non-moving party for the purposes of Defendants' Motion for Summary Judgment–has presented evidence that could allow a reasonable jury to conclude that Mayor Gravitt announced a total ban, the Court cannot conclude as a matter of law that Defendants did not violate Plaintiff's First Amendment rights. To the extent that Defendants move for summary judgment on grounds that no constitutional violation occurred, Defendants' Motion for Summary Judgment must be **DENIED**.

Turning to Plaintiff's Motion for Partial Summary Judgment, if Mayor Gravitt's policy limited Plaintiff only from filming in the center aisle–in light of his belief that the location of Plaintiff's tripod could create a safety hazard and that her filming could disrupt the decorum of the meeting–the restriction may have been a constitutional time, place, and manner regulation. (See Defs.' MSJ, Dkt. [63] at 13.) "[T]ime, place, and manner regulations must contain 'narrowly drawn, reasonable and definite standards' 'to guide the official's decision and render it subjective to effective judicial review.'" Burk v.

Augusta-Richmond Cnty., 365 F.3d 1247, 1256 (11th Cir. 2004) (quoting

Thomas v. Chicago Park Dist., 534 U.S. 316, 324 (2002)).  While Defendants

take the position that Mayor Gravitt was not a policymaker such to confer

municipal liability under Monell v. Dep't of Social Servs., 436 U.S. 658 (1978),

discussed *infra* at Part II.B.2, they concede "the absence of a policy or rule

instructing him what to do."  (Defs.' MSJ, Dkt. [63-1] at 23.)

Consequently, if Mayor Gravitt applied "narrowly drawn, reasonable and

definite standards," the restriction on filming announced at the April 17, 2012

meeting is constitutional as a time, place, and manner restriction.  Burk, 365

F.3d at 1256 (quoting Thomas, 534 U.S. at 324).  Here, Plaintiff was prevented

from filming when she attempted to use a tripod and stood in the center aisle.

When Plaintiff returned to the meeting, she sat in a seat and took more video

using a handheld camera.  (See Pl.'s SOMF, Dkt. [69-1] ¶ 30.)  While Plaintiff

claims that Deputy Police Chief Cook "ordered her to stop using the smaller

video camera and to stop recording," Defendants contend that Cook "simply

reminded her that the Mayor asked that she not record the meeting."  (Id.;

Defs.' Resp. to Pl.'s SOMF, Dkt. [83-1] at 18.)  Neither party alleges that

Plaintiff at that point stopped filming with her smaller camera.  The record and

the pleadings reflect that Plaintiff remained seated in the council chamber for the remainder of the meeting. Defendants, therefore, have presented sufficient evidence such that a reasonable jury could conclude that the restriction on filming was a time, place, and manner restriction.

The Court, on the present record, cannot conclude that Plaintiff's First Amendment rights were violated as a matter of law. Accordingly, Plaintiff's Motion for Partial Summary Judgment on Defendants' First Amendment liability is **DENIED**.

Finally, Defendants also move for summary judgment on the alternative basis that even if Plaintiff's First Amendment rights were violated, no named Defendant can be held liable for the violation. The Court now considers whether any named Defendant can be held liable for a First Amendment violation arising from the restriction on filming at the City Council meeting, considering first the individual Defendants' claimed defense of qualified immunity before turning to the City Defendant's argument against municipal liability.

AO 72A
(Rev.8/82)

*1.     Qualified Immunity*

The individual Defendants in this case seek summary judgment on Plaintiff's claims against them in their individual capacities, claiming the affirmative defense of qualified immunity.  The doctrine of qualified immunity protects government officials performing discretionary functions from being sued in their individual capacities.  <u>Wilson v. Layne</u>, 526 U.S. 603, 609 (1999).  Officials are shielded "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982).  "To receive qualified immunity, a government official first must prove that he was acting within his discretionary authority."  <u>Cottone v. Jenne, II</u>, 326 F.3d 1352, 1357 (11th Cir. 2003).  Once the government official has satisfied this initial burden, the burden shifts to the plaintiff to show that the official is not entitled to qualified immunity.  <u>Id.</u> at 1358.

As a threshold matter, the parties do not dispute that the individual defendants in this case– Mayor Gravitt, Police Chief Tatum, and Deputy Police Chief Cook–were performing duties within the scope of their respective discretionary authorities when they prevented Plaintiff from video recording the

April 17, 2012 City Council meeting.  In determining whether a government

official was acting within his or her "discretionary authority," courts in this

Circuit are to focus on whether the acts at issue "are of a type that fell within

the employee's job responsibilities."  Holloman ex rel. Holloman v. Harland,

370 F.3d 1252, 1265 (11th Cir. 2004).  The inquiry is two-fold: the Court must

consider "whether the government employee was (a) performing a legitimate

job-related function (that is, pursuing a job-related goal), (b) through means that

were within his power to utilize."  Id.  The inquiry is not, however, whether the

defendant had the authority to commit the allegedly unconstitutional act.  Id.

"In applying each prong of the test, [courts] look to the general nature of the

defendant's action, temporarily putting aside that it may have been committed

for an unconstitutional purpose, in an unconstitutional manner, to an

unconstitutional extent, or under constitutionally inappropriate circumstances."

Id.  As the Court will discuss further in its analysis, *infra*, of Plaintiff's claims

against the City, Mayor Gravitt's powers include the authority to preside at city

council meetings and to preserve order and decorum at those meetings.  And

neither party disputes that maintaining order and enforcing the City's policies

were part of the "legitimate job-related functions" of the police defendants in

17

this case.  Accordingly, all three individual defendants were engaged in discretionary acts.

Whether an official engaged in a discretionary act is entitled to qualified immunity is determined by a two-step inquiry.  One inquiry is "whether the plaintiff's allegations, if true, establish a constitutional violation."  Barnett v. City of Florence, 409 F. App'x 266, 270 (11th Cir. 2010) (citing Hope v. Pelzer, 536 U.S. 730, 736 (2002)).  "If the facts, construed . . . in the light most favorable to the plaintiff, show that a constitutional right has been violated, another inquiry is whether the right violated was 'clearly established.'"  Id. (citing Saucier v. Katz, 533 U.S. 194, 201 (2001)).  "Both elements of this test must be present for an official to lose qualified immunity, and this two-pronged analysis may be done in whatever  order is deemed most appropriate for the case."  Id. (citing Pearson v. Callahan, 555 U.S. 223, 241 (2009)).

As stated above, the parties have presented a genuine issue of material fact as to whether the restriction announced at the City Council meeting was a total ban against filming.  Now, assuming that the restriction announced *was* a total ban in violation of Plaintiff's rights, the Court must consider whether such a ban violates rights clearly established at the time.

18

A constitutional right is clearly established "only if its contours are 'sufficiently clear that a reasonable official would understand what he is doing violates that right.'" <u>Vaughan v. Cox</u>, 343 F.3d 1323, 1329 (11th Cir. 2003) (quoting <u>Anderson v. Creighton</u>, 483 U.S. 635, 640 (1987)). The inquiry of whether a constitutional right was clearly established "must be undertaken in light of the specific context of the case, not as a broad general proposition"; thus, the salient question is "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted . . . ." <u>Battiste v. Sheriff of Broward County</u>, 261 F. App'x 199, 202 (11th Cir. 2008) (internal quotes and citations omitted). "In most cases, fact specific precedents are necessary to give an officer fair warning of the applicable law." <u>Id.</u> (citing <u>Vineyard v. Wilson</u>, 311 F.3d 1340, 1351-52 (11th Cir. 2002)). <u>See also</u> <u>Youmans v. Gagnon</u>, 626 F.3d 557, 563 (11th Cir. 2010) ("[T]he preexisting law must make it obvious that the defendant's acts violated the plaintiff's rights in the specific set of circumstances at issue."). Accordingly, "[m]ore than a general legal proposition—for example, to act reasonably—is usually required[.]" <u>Id.</u> In some circumstances, however, a plaintiff may rely on a general rule, provided it is "obvious that the general rule applies to the specific

19

situation in question." Id.  Finally, a plaintiff bears the burden of establishing

that the constitutional right at issue was clearly established at the time of the

violation.  Id. at 562.

The Court now must inquire whether Plaintiff's right to film the City

Council meeting was clearly established on April 17, 2012.  Courts in the

Eleventh Circuit look "only to binding precedent—cases from the United States

Supreme Court, the Eleventh Circuit, and the highest court of the state under

which the claim arose—to determine whether the right in question was clearly

established at the time of the violation."  Coffin v. Brandau, 642 F.3d 999, 1013

(11th Cir. 2011).  Plaintiff may carry her burden of proof to "demonstrate that

the contours of the right were clearly established in one of three ways."  Loftus

v. Clark-Moore, 690 F.3d 1200, 1204 (11th Cir. 2012) (internal modifications

and citations omitted).  First, Plaintiff "may show that a materially similar case

has already been decided."  Id.  Second, Plaintiff may identify "a broader,

clearly established principle that should control the novel facts of the situation."

Id.  "[T]he unlawfulness must be apparent" so that the pre-existing law would

alert "every objectively reasonable government official facing the

circumstances" that his conduct would violate constitutional law.  Id. at 1204-

05. Third, Plaintiff can show that "the conduct involved in the case . . . so obviously violate[s] the constitution that prior case law is unnecessary." Id. at 1205. This third category of cases will be very "narrow". Id.

First, the Court finds that a First Amendment right to film a public meeting was clearly established when Plaintiff attended the Cumming City Council meeting on April 17, 2012. While no United States Supreme Court, Eleventh Circuit, or Supreme Court of Georgia case explicitly recognized a First Amendment right to film city council meetings, the case law that existed in April 2012 recognized a general right to film public officials, subject to reasonable time, place, and manner restrictions. The Eleventh Circuit recognized in Blackston v. State of Ala. that a restriction on filming in public meetings "touche[s] on expressive conduct protected by the Free Speech Clause of the First Amendment." 30 F.3d 117, 120 (11th Cir. 1994) (addressing a prohibition that may not have been "content-neutral"). Plaintiff identifies other Eleventh Circuit cases involving free speech rights to film public officials. See, e.g., Smith v. City of Cumming, 212 F.3d 1332 (11th Cir. 2000) (recognizing "a First Amendment right, subject to reasonable time, manner and place restrictions, to photograph or videotape police conduct"); WSB-TV v. Lee, 842

AO 72A
(Rev.8/82)

F.2d 1266 (11th Cir. 1988) (recognizing reporters' First Amendment interest in gathering and reporting news relating to rumors of a sherriff's use of inmate labor on private property). The First Amendment protects filming public officials, and the Court finds that "broad, clearly established principle" to control the facts of the situation in this case.

But while the law in the Eleventh Circuit clearly established that filming public officials is protected speech, it also indicated that a content-neutral time, place, and manner restriction on filming may be a permissible restriction on such expressive conduct. Blackston, 30 F.3d at 120.

As the Court recognized in its discussion, *supra*, of the merits of Plaintiff's First Amendment claim, the law in this Circuit is well established that the government may place reasonable time, place, and manner restrictions on speech in limited public fora. See, e.g., Perry Educ. Ass'n v. Perry Local Educators Ass'n, 460 U.S. 37 (1983); Rowe v. City of Cocoa, Fla., 358 F.3d 800 (11th Cir. 2004). The Court has found, on this record, a genuine issue of material fact about whether Mayor Gravitt's regulation of Plaintiff's filming was a total ban on filming. But, even if the restriction were a total ban on filming, the Court cannot reject Defendants' qualified immunity defense solely

on that basis.  Rather, the unlawfulness of a total restriction on speech in a

limited public forum must be so apparent that any reasonable government

official would be alerted to the illegality of his conduct.  As such, the Court

must consider whether the law also clearly established that the government

cannot restrict the right to film public officials, except for reasonable time,

place, and  manner restrictions.

The Court again looks to the Eleventh Circuit precedent addressing this

issue.  In <u>Blackston v. State of Alabama</u>, the court recognized that a content-

neutral time, place, and manner restriction is permissible "if it is supported by a

substantial government interest and does not unreasonably limit alternative

avenues of communication."  30 F.3d at 120 (citing <u>City of Renton v. Playtime</u>

<u>Theatres, Inc.</u>, 475 U.S. 41, 47 (1986); <u>U.S. v. Yonkers Bd. of Educ.</u>, 747 F.2d

111, 114 (2d Cir. 1984)).  In <u>Blackston</u>, the court reversed the district court's

dismissal on grounds that a prohibition against tape recording "may not have

been 'content-neutral.'"  <u>Id.</u>  In <u>Rowe v. City of Cocoa, Florida</u>, the Eleventh

Circuit upheld a rule that imposed a residency requirement for speakers during

city council meetings.  358 F.3d 800 (2004).  There, the court reiterated that

viewpoint neutral restrictions on speech in a limited public forum are

permissible in light of the "significant governmental interest in conducting orderly, efficient meetings of public bodies." Id. at 802-03.  Again in Cleveland v. City of Cocoa Beach, Florida, the Eleventh Circuit upheld a ban on campaign messages at city council meetings, holding that the restriction on speech was permissible as content-based but viewpoint-neutral.  221 F. App'x 875, 878-79 (11th Cir. 2007).

Here, even if the restriction on video recording was a blanket ban on filming, the restriction was both content- and viewpoint-neutral.  Because Plaintiff has failed to identify controlling authority that would have put the officials on notice that a content- or viewpoint-neutral restrictive policy would violate Plaintiff's constitutional rights, the individual Defendants are entitled to qualified immunity.  Accordingly, Defendants' motion for summary judgment on the defense of qualified immunity is **GRANTED** as to qualified immunity from  Plaintiff's First Amendment claim.

### 2.    *Municipal Liability*

Even if Plaintiff is able to prove at trial that the restriction announced at the City Council meeting was a total ban on filming in violation of her First Amendment rights, she may not sustain a claim against the City of Cumming

AO 72A
(Rev.8/82)

under Section 1983 simply on the basis that Mayor Gravitt, Police Chief Tatum, and Deputy Police Chief Cook were employed by or acting on behalf of the city.[1]

Local government units such as cities constitute "persons" subject to suit under Section 1983.  Monell v. Dep't of Social Servs., 436 U.S. 658, 690 (1978).  At the same time, however, the Supreme Court "has placed strict limitations on municipal liability under [Section] 1983."  Grech v. Clayton Cnty., Ga., 335 F.3d 1326, 1329 (11th Cir. 2003).  In Monell, the Supreme Court held that "a municipality cannot be held liable under [Section] 1983 on a respondeat superior theory."  436 U.S. at 691.  On the contrary, the Court held that local governing bodies, such as cities, can be sued under Section 1983 only where "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers."  Id. at 690.  In other words, to hold a municipality liable under Section 1983 for actions, a plaintiff must show that a

---

[1] As a threshold matter, to the extent Plaintiff asserts liability against Mayor Gravitt and Police Chief Tatum in their official capacities, these claims are tantamount to claims against the City of Cumming and therefore are governed by the analysis set forth in this part.  See, e.g., Kentucky v. Graham, 473 U.S. 159, 165 (1985) ("Official capacity suits . . . generally represent only another way of pleading an action against an entity of which an officer is an agent.") (internal quotation and citation omitted).

municipal employee or policymaker committed the constitutional violation, and did so pursuant to an official municipal policy or custom. Id. at 694; Grech, 335 F.3d at 1329. This requirement of a policy or custom "is intended to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action *for which the municipality is actually responsible*." Grech, 335 F.3d at 1329 n.5 (emphasis in original) (citing cases). In that regard, claims based on a theory of direct liability, rather than a theory of *respondeat superior*, can be based on acts of an actor with "final policy-making authority." Pembaur v. City of Cincinnati, 475 U.S. 469, 481-82 (1986).

"[W]hether a particular official has 'final policymaking authority' is a question of state law" for the Court's determination. Jett v. Dallas Indep. Sch. Dist., 491 U.S. 701, 737 (1989) (quoting St. Louis v. Praprotnik, 485 U.S. 112, 123 (1988) (plurality opinion)). "Once those officials who have the power to make official policy on a particular issue have been identified, it is for the jury to determine whether their decisions have caused the deprivation of rights at issue by policies which affirmatively command that it occur." Id. (citing Monell, 436 U.S. at 661, n.2).

26

First, the Court must determine whether Mayor Gravitt had "final policymaking authority" to regulate filming at City Council meetings. The Court initially looks to Cumming's City Charter. (See Dkt. [63-2].) Section 3 of the City Charter states that "the mayor and councilmen shall be collectively known as the 'City Council of Cumming,' and shall be the supreme governing body, exercising all the powers ... conferred upon the corporation *and not otherwise specifically delegated.*" (Id. at 8. (emphasis added).) Section 20 provides, however, that the mayor "shall preside at all meetings of the city council; and shall preserve order and decorum." (Id. at 13.) The Court finds that the City Charter explicitly and specifically delegated policymaking authority to regulate city council meetings to Mayor Gravitt. In determining the final policymaker, however, "the court should examine not only the relevant positive law, including ordinances, rules and regulations, but also the relevant customs and practices having the force of law." Mandel v. Doe, 888 F.2d 783, 793 (11th Cir. 1989) (citing Jett, 491 U.S. at 737). To this end, the Court's finding based on the plain text of the City Charter is bolstered by Mayor Gravitt's understanding of his own authority. (See Gravitt Depo., Dkt. [74-5] at 103:9-16 ("Q: You said it was the -- I believe you used the word "policy" of the

city to not allow cameras. Where did that policy derive from? A. It derived from me. It was my policy. Q. And you were empowered to make that policy as Mayor overseeing the meeting, correct? A. I felt like I was.").)  The Court thus concludes that Mayor Gravitt was the final policymaker for purposes of regulating filming at City Council meetings.

Second, the Court considers whether the policy against filming, announced by Mayor Gravitt, "affirmatively command[ed]" that the deprivation of Plaintiff's rights occur. Jett, 491 U.S. at 737.  While this is ordinarily an issue for the jury's determination, the Court finds here that no reasonable jury could find that the deprivation of Plaintiff's rights was not caused by Defendants' policy against filming.  See Allen, 121 F.3d at 646.  Mayor Gravitt "instructed that the camera be removed from the Council chamber."  (Defs.' SOMF, Dkt. [63-4] ¶ 10.)  "In response to the Mayor's directive," Police Chief Tatum moved Plaintiff's camera and he and Deputy Police Chief Cook "escorted" Plaintiff out of the room.  (Id. at ¶ 15-28.)  After Plaintiff reentered the room and again began filming from her seat, Deputy Cook asked Plaintiff to stop filming pursuant to the Mayor's earlier directive.  (Cook Depo., Dkt. [74-1] at 33:18-19 ( "I just leaned over the bench and said, the mayor asked not to be

recorded.").)  Accordingly, because any deprivation of Plaintiff's rights was caused by an official municipal policy that affirmatively commanded that deprivation occur, Plaintiff is entitled to judgment as a matter of law on both prongs of the municipal liability inquiry.  If the jury finds that the policy announced by Mayor Gravitt violated Plaintiff's First Amendment rights, then the City of Cumming can be held municipally liable.

**B.**    Plaintiff's Fourth Amendment Claims

Plaintiff also asserts Section 1983 claims against Police Chief Tatum and Deputy Police Chief Cook for violations of the search and seizure clause of the Fourth Amendment.[2]  Plaintiff claims she has a Fourth Amendment right not to have her person or camera seized while gathering information in a public place. She claims a constitutional violation based on Chief Tatum's removal of Plaintiff and her video camera from the City Council meeting.  (Pl.'s MSJ Br., Dkt. [69-2] at 15-19.)  Defendants seek summary judgment on the Fourth Amendment claims on grounds that Plaintiff was not unreasonably seized in violation of the Fourth Amendment.  (Def.'s MSJ Br., Dkt. [63-1] at 15.)

---

[2]  The Court notes that while Plaintiff did not identify in her Complaint which Defendant each claim is levied against, the parties have addressed only Police Chief Tatum and Deputy Police Chief Cook's conduct for purposes of summary judgment on Plaintiff's Fourth Amendment claim.  (See Defs.' MSJ Br., Dkt. [63-1] at 14.)

AO 72A
(Rev.8/82)

In determining whether a law enforcement officer unconstitutionally seized an individual, the Court must engage in a multi-step inquiry. Because "not every encounter between a police officer and a citizen is an intrusion requiring an objective justification," United States v. Mendenhall, 446 U.S. 544, 553 (opinion of Stewart, J.), the Court first must decide if and when the individual was "seized" for purposes of the Fourth Amendment. See United States v. Perez, 443 F.3d 772, 777 (11th Cir. 2006). If the Court concludes the individual was "seized," it then determines whether the law enforcement officer had adequate justification to support the seizure. Terry v. Ohio, 392 U.S. 1, 20–22 (1968). Finally, in Section 1983 cases, even if a seizure runs afoul of the Fourth Amendment, a plaintiff may not be able to obtain relief if the defendant is entitled to qualified immunity. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).

    *1.    Seizure*

"A 'seizure' triggering the Fourth Amendment's protections occurs only when government actors have, 'by means of physical force or show of authority, . . . in some way restrained the liberty of a citizen.' " Graham v. Connor, 490 U.S. 386, 395 n.10 (1989) (quoting Terry v. Ohio, 392 U.S. 1, 19

30

n.16 (1968)).  Three types of encounters between police and citizens implicate

the Fourth Amendment: "(1) police-citizen exchanges involving no coercion or

detention; (2) brief seizures or investigatory detentions; and (3) full-scale

arrests. . . . [A]n encounter that does not involve coercion or detention does not

implicate Fourth Amendment scrutiny."  Miller v. Harget, 458 F.3d 1251, 1257

(11th Cir. 2006) (quoting Perez, 443 F.3d at 777) (internal quotation marks

omitted).  A show of authority can be a seizure if the subject yields to that

authority.  California v. Hodari D., 499 U.S. 621, 625-26 (1991).  "Whenever

an officer restrains the freedom of a person to walk away, he has seized that

person."  West v. Davis, No. 13-14805, 2014 WL 4402116 (11th Cir. Sept. 8,

2014) (quoting Tennessee v. Garner, 471 U .S. 1, 7 (1985) (internal

modifications omitted).  "If a reasonable person would feel free to terminate the

encounter, then he or she has not been seized."  Miller, 458 F.3d at 1257

(quoting Perez, 443 F.3d at 777–78 (emphasis omitted)).

    In determining whether a plaintiff has been seized, the Court considers

the totality of the circumstances.  Id. at 1258 (citing Perez, 443 F.3d at 778).

"Certain circumstances might indicate a seizure, even where the person did not

attempt to leave, including the display of a weapon by an officer or the use of

language or tone of voice indicating that compliance with the officer's request might be compelled." United States v. House, 684 F.3d 1173, 1199 (11th Cir. 2012), cert. denied, 133 S. Ct. 1633 (U.S. 2013) (quoting Mendenhall, 446 U.S. at 554) (internal quotations and modifications omitted).

The parties dispute whether Chief Tatum grabbed Plaintiff's wrist. (See Defs.' Resp. to Pl.'s SOMF, Dkt. [83-1] ¶ 9.) But even if Chief Tatum did not physically restrain Plaintiff, a show of authority may be sufficient to constitute a seizure. "Absent the use of physical force, a seizure requires both a show of authority and 'submission to [that] assertion of authority.'" United States v. Dolomon, 13-13063, 2014 WL 2854491 (11th Cir. June 24, 2014) (quoting California v. Hodari D., 499 U.S. 621, 626 (1991)). At the City Council meeting, Police Chief Tatum was armed and in uniform when he approached Plaintiff. (Pl.'s SOMF, Dkt. [69-1] ¶ 9.) Chief Tatum told Plaintiff to leave the room and "escorted" her to the back of the room. (Id. ¶ 20; Defs.' SOMF, Dkt. [63-4] ¶ 25.) Accordingly, the inquiry is whether Chief Tatum's appearance, approach to, and contact with Plaintiff, combined with the directions given to Chief Tatum by Mayor Gravitt, would leave a reasonable person in Plaintiff's

32

position feeling that she could terminate the encounter.[3]  The Court finds that this inquiry presents a genuine issue of material fact and as such is not suitable for resolution by summary judgment.  The Court now turns to the second prong of the Fourth Amendment inquiry: if the jury determines that Plaintiff was seized, whether that seizure was reasonable.

### 2.      *Reasonableness of Seizure*

The Court next considers whether, if the jury determines that Plaintiff was in fact seized, such seizure was unreasonable and thus unconstitutional. "Whenever a police officer accosts an individual and restrains his freedom to walk away, he has seized that person, and the Fourth Amendment requires that the seizure be reasonable." U.S. v. Brignoni-Ponce, 422 U.S. 873, 878 (1975) (quoting Terry, 392 U.S. at 16) (internal quotations and modifications omitted). The level of Fourth Amendment scrutiny applied in the reasonableness inquiry

---

[3] Plaintiff claims that Defendants violated her Fourth Amendment rights by seizing her video camera, which was "rendered unable to fulfill its intended purpose by being dragged and taken to a location where Tisdale could not film the meeting." (Pl.'s Reply Br., Dkt. [86] at 6.)  Defendants argue that moving Plaintiff and her camera "from one location in the Council chamber to another was reasonable and did not constitute the type of 'meaningful interference' which creates a constitutional violation."  (Defs.' MSJ Br., Dkt. [63-1] at 16.)  Chief Tatum's movement of the camera is, however, only one factor to be considered in light of the totality of the circumstances.

depends on the category of the police-citizen encounter.  <u>U.S. v. Perkins</u>, 348 F.3d 965, 969 (11th Cir. 2003).  Here, Plaintiff's encounter with Police Chief Tatum and Deputy Police Chief Cook falls within the second category: a brief seizure or investigatory detention that requires "an objective, reasonable suspicion of criminal activity."  See <u>Terry</u>, 392 U.S. at 20; <u>U.S. v. Purcell</u>, 236 F.3d 1274, 1277 (11th Cir. 2001).

Defendants seem to concede an absence of reasonable suspicion.  Police Chief Tatum testified that he believes Plaintiff was not violating any law at the time.  Defendants cannot show that, even if Plaintiff was seized, the seizure was reasonable.  Thus, Defendants are not entitled to summary judgment on the basis of the reasonableness of any seizure.  The Court now turns to the third prong of the Fourth Amendment inquiry: whether Defendants are entitled to qualified immunity.

### 3.    *Qualified Immunity*

Defendants also move for summary judgment on Plaintiff's on the alternative grounds of the affirmative defense of qualified immunity.  As set forth above in the Court's discussion in Part II.A.1, *supra*, whether an official engaged in a discretionary act is entitled to qualified immunity is determined by

34

a two-step inquiry: first, whether the plaintiff can establish a constitutional violation; and second, whether the right violated was clearly established. Barnett, 409 F. App'x at 270 (internal citations omitted). As noted above, the parties have presented sufficient evidence to create a genuine issue of material fact whether Plaintiff was seized in violation of the Fourth Amendment and Defendants have not presented evidence to justify any seizure. The Court must now inquire whether, if Plaintiff's Fourth Amendment rights were violated, those rights were clearly established on April 17, 2012.

Defendants argue that "there is no clearly established constitutional prohibition on an officer escorting an individual and/or her property from an aisle way of a room to the back of the room." (Defs.' MSJ Br., Dkt. [63-1] at 19.) The Court agrees–however, if a reasonable person in Plaintiff's position would have felt that she was not at liberty to ignore the officer, then the officer is no longer "escorting" Plaintiff within the room, but rather "seizing" her within the meaning of the Fourth Amendment. And there is a clearly established constitutional prohibition on an officer seizing an individual–even briefly–without reasonable suspicion. Terry, 392 U.S. at 21; Reid v. Georgia, 448 U.S. 438, 440 (1980); Clark v. City of Atlanta, 544 F. App'x 848, 853

(11th Cir. 2013) (the reasonable suspicion standard applies to "any curtailment of a person's liberty by the police") (quoting <u>Jackson v. Sauls</u>, 206 F.3d 1156, 1166 n.12 (11th Cir. 2000). The Eleventh Circuit has noted that "[w]hile 'reasonable suspicion' is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence, the Fourth Amendment requires at least a minimal level of objective justification for making the stop." <u>United States v. Lindsey</u>, 482 F.3d 1285, 1290 (11th Cir. 2007) (quoting <u>Illinois v. Wardlow</u>, 528 U.S. 119 (2000).

Because Defendants are the moving party for summary judgment based on qualified immunity, the facts must be considered in the light most favorable to Plaintiff, the non-moving party. On this record, the Court cannot conclude that Defendants are entitled to qualified immunity. Defendants simply have not shown that they are entitled to judgment as a matter of law on the "justification" or "immunity" prongs of the Fourth Amendment inquiry. And because the Court finds a genuine issue of material fact as to the "seizure" prong, Plaintiff's and Defendants' motions for summary judgment on Fourth Amendment liability are **DENIED**.

36

**III.** **Plaintiff's State Law Claims**

       A.    Plaintiff's Tort Claims

Defendants move for summary judgment on Plaintiff's state law tort claims, contending that Plaintiff cannot successfully bring state constitutional or statutory claims against the individual Defendants Mayor Gravitt, Police Chief Tatum, or Deputy Police Chief Cook because the Defendants are entitled to official immunity.

The doctrine of official immunity offers public officers and employees limited protection from suit in their personal capacity. Cameron v. Lang, 549 S.E.2d 341, 344 (Ga. 2001). Official immunity in Georgia turns on the type of function the official is engaged in, whether it is a ministerial act or discretionary act. A ministerial act is one that is simple, absolute, and definite arising under conditions admitted or proved to exist and requiring merely the execution of a specific duty. Carter v. Glenn, 548 S.E.2d 110, 112-13 (Ga. Ct. App. 2001). By contrast, a discretionary act calls for the exercise of personal judgment including examining the facts; reaching reasoned conclusions; and acting on them in a way that is not specifically directed. Id.

AO 72A
(Rev.8/82)

Under Georgia law, an officer "may be liable for injuries and damages caused by the negligent performance of, or negligent failure to perform, their ministerial functions and may be liable for injuries and damages if they act with actual malice or with actual intent to cause injury in the performance of their official functions."  Ga. Const. art. 1, § 2, ¶ IX(d); see O.C.G.A. § 36-33-4.  An official function is "any act performed within the officer's or employee's scope of authority, including both ministerial and discretionary acts."  Gilbert v. Richardson, 452 S.E.2d 476, 483 (Ga. 1994).  Therefore, while an officer may be personally liable if in the performance of a ministerial duty if he acts with negligence, actual malice or an intent to injure, an officer may only be liable for the performance of a discretionary function if he acts with actual malice or an intent to injure.  Cameron, 549 S.E.2d at 345.  Plaintiff has not alleged that Defendants Gravitt, Tatum, and Cook were performing ministerial acts when they prevented Plaintiff from filming at the April 17, 2012 City Council Meeting.  Defendants, therefore, are entitled to official immunity unless Plaintiff shows that they acted with actual malice or an intent to injure Plaintiff.  See Taylor v. Waldo, 709 S.E.2d 278 (Ga. Ct. App. 2011).

Actual malice or intent to injure has been defined in Georgia as "a deliberate intention to do a wrongful act," <u>Adams v. Hazelwood</u>, 520 S.E.2d 896, 898 (Ga. 1999), and intent to cause the harm suffered by the plaintiff. <u>Taylor</u>, 709 S.E.2d 278. This presents a high bar for plaintiffs seeking damages from officials; "[e]ven conduct exhibiting a reckless disregard for the safety of others does not equate with the actual malice necessary to defeat a claim of official immunity." <u>Payne v. DeKalb Cnty.</u>, 414 F. Supp. 2d 1158, 1183 (N.D. Ga. 2004) (citing <u>Williams v. Solomon</u>, 242 Ga. App. 807, 809 (Ga. Ct. App. 2000). The Court finds that Plaintiff has not met her burden here. Plaintiff asserts that, because Defendants lacked probable cause to seize Plaintiff and her camera, they possessed the requisite intent to harm Plaintiff. (Pl.'s Resp., Dkt. [82] at 19-20). Further, Plaintiff claims that because false imprisonment is an intentional tort, Plaintiff's tort claims must survive summary judgment. The Court, however, finds that Plaintiff has not presented sufficient evidence such that a reasonable jury could conclude that the Defendants acted with actual malice or intent to injure Plaintiff. Accordingly, Defendants' Motion for Summary Judgment on Plaintiff's state law tort claims[4] is **GRANTED**.

---

[4] The Court does not reach the issue of whether Plaintiff improperly pleaded her False Imprisonment, Battery, and False Arrest claims based on criminal statutes.

AO 72A
(Rev.8/82)

B.    Georgia Open Meetings Act Claims

The Superior Court of Forsyth County granted summary judgment against Defendants Mayor Ford Gravitt and Defendant City of Cumming on claims brought pursuant to the Open Meetings Act, O.C.G.A. § 50-14-1 *et seq*. Olens v. Gravitt et al., No. 12-cv-1205 (Ga. Sup. Ct. Aug. 21, 2014) (attached as Ex. 1 to Pl.'s Not. of Supp. Auth., Dkt. [91-1]).   As a result of the decision of the Superior Court and the fines levied on Defendants in that case, this Court finds that Plaintiff's Open Meetings Act claim under O.C.G.A. § 50-14-6 is moot and as such is **DISMISSED**.

## Conclusion

In accordance with the foregoing, Defendants' Motion for Summary Judgment [63] is **GRANTED, in part** and **DENIED, in part**.  It is **GRANTED** with respect to Defendants Mayor H. Ford Gravitt, Police Chief Casey Tatum, and Deputy Police Chief Walter Cook's immunity from First Amendment liability and **GRANTED** with respect to Plaintiff's state tort claims, but **DENIED** with respect to Defendants' liability for Plaintiff's First and Fourth Amendment claims.  Plaintiff's Motion for Partial Summary Judgment [69] is

AO 72A
(Rev.8/82)

**DENIED**. Plaintiff's Consent Request for Redaction [84] is **GRANTED**.

Finally, Plaintiff's Georgia Open Meetings Act claim is **DISMISSED as moot.**

      **SO ORDERED**, this  30th  day of September, 2014.


**RICHARD W. STORY**
United States District Judge

AO 72A
(Rev.8/82)